FILED
2023 Nov-07 PM 08:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

Michelle Dove

8/18/2023

**Page 1**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CASE NUMBER
2:22-CV-01489-ACA

SHARON DORSEY,

    Plaintiff,

vs.

I.C. SYSTEM, INC.,

    Defendant.


DEPOSITION TESTIMONY OF:
MICHELLE DOVE

COURT REPORTER:
JENNIFER LEE, ACCR-97

**Page 2**

1
2    The reading and signing of this
3  deposition has not been waived.
4
5
6  S T I P U L A T I O N S :
7
8    IT IS STIPULATED AND AGREED by and
9  between the parties through their
10  respective counsel that the deposition of
11  MICHELLE DOVE may be taken before Jennifer
12  Lee, Certified Shorthand Reporter and
13  Notary Public, State at Large, via Zoom,
14  on August 18, 2023, commencing at
15  approximately 8:30 a.m.
16    IT IS FURTHER STIPULATED AND
17  AGREED that the signature to and the
18  reading of the deposition by the witness
19  is not waived.
20    IT IS FURTHER STIPULATED AND
21  AGREED that it shall not be necessary for
22  any objections to be made by counsel to
23  any questions, except as to form or

**Page 3**

1  leading questions, and that counsel for
2  the parties may make objections and assign
3  grounds at the time of trial or at the
4  time said deposition is offered in
5  evidence, or prior thereto.
6    In accordance with Rule 5(d) of
7  the Alabama Rules of Civil Procedure, as
8  amended, effective May 15, 1988, I,
9  Jennifer Lee, am hereby delivering to
10  W. Whitney Seals the original transcript
11  of the oral testimony taken.
12    Please be advised that this is
13  the same and not retained by the Court
14  Reporter, nor filed with the Court.
15
16
17
18
19
20
21
22
23

**Page 4**

1  A P P E A R A N C E S :
2
3
4  FOR THE PLAINTIFF:
5    W. Whitney Seals, Esq.
6    COCHRUN & SEALS, LLC
7    300 Richard Arrington Jr. Boulevard
8    Suite 400
9    Birmingham, Alabama 35203
10
11    John Hubbard, Esq.
12    P.O. Box 953
13    Birmingham, Alabama 35203
14
15
16  FOR THE DEFENDANTS:
17    Dale T. Golden, Esq.
18    GOLDEN, SCAZ, GAGAIN, PLLC
19    1135 Marbella Plaza Drive
20    Tampa, Florida 33619
21
22
23

1 (Pages 1 to 4)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4**

Page 5

1                INDEX:
2
3
4    EXAMINATION BY:              PAGE NO.
5    Mr. Seals              7
6
7
8
9
10        INDEX OF EXHIBITS:
11
12
13    FOR THE PLAINTIFF:          PAGE NO.
14    1 - Notice of Deposition        12
15    2 - Account History Notes        28
16    3 - Answers to Interrogatories      72
17    4 - Information Reported to CRAs    80
18    5 - Dispute Letter          96
19    6 - Request for Admissions      106
20    7 - AT&T Response          110
21    8 - AT&T Availability Form        112
22    9 - Account Summary          115
23

Page 6

1
2
3          I, Jennifer Lee, a Certified
4    Shorthand Reporter of Birmingham, Alabama,
5    and a Notary Public for the State of
6    Alabama at Large, acting as Commissioner,
7    certify that on this date, pursuant to the
8    Alabama Rules of Civil Procedure and the
9    foregoing stipulation of counsel, there
10   came before me via Zoom, commencing at
11   approximately 8:30 a.m. on August 18, 2023,
12   MICHELLE DOVE, witness in the above cause,
13   for oral examination, whereupon the
14   following proceedings were had:
15
16
17          MICHELLE DOVE,
18     having been first duly sworn, was
19   examined and testified as follows:
20
21
22
23

Page 7

1
2          THE COURT REPORTER:  Usual
3    stipulations?
4          MR. SEALS:  Fine by me.
5          MR. GOLDEN:  Okay.
6
7    EXAMINATION BY MR. SEALS:
8      Q.    Good morning, Ms. Dove.  How are
9    you?
10     A.    I'm well.  Thank you.
11     Q.    Good.  My name is Whitney Seals,
12   and I am an attorney that represents Ms.
13   Sharon Dorsey in a case that she has
14   brought against I.C. System.  Have you ever
15   given a deposition before today?
16     A.    Yes.
17     Q.    How many times?
18     A.    I don't know.
19     Q.    Okay.  So you're familiar at
20   least with the format, question and answer
21   format.  Please allow me to finish my
22   question before you answer, those sorts of
23   things; is that correct?

Page 8

1      A.    Yes.
2      Q.    Okay.  Excellent.  You told me
3    your name is Michelle Dove.  What is your
4    current employer, and what is your job
5    title?
6      A.    I.C. System, Inc., my title is
7    general counsel and chief compliance
8    officer.
9      Q.    All right.  And how long have you
10   been with I.C. System, Inc.?
11     A.    Since February of 2014.
12     Q.    All right.  And what is your --
13   what are your job duties as general counsel
14   and chief compliance officer, please?
15     A.    I handle litigation involving the
16   company.  I review contracts.  I am
17   responsible for oversight of the compliance
18   and risk management system.
19     Q.    All right.  As part of that, do
20   you have a hand in preparing or reviewing
21   policy as it applies to I.C. System's
22   employees?
23     A.    Yes.

BIRMINGHAM REPORTING SERVICE
(205) 326-4444
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

Michelle Dove                                          8/18/2023

Page 9

1     Q.    Okay.  You said you're general
2  counsel as well.  Are you an attorney?
3     A.    Yes.
4     Q.    All right.  Are you licensed up
5  in Minnesota?
6     A.    Yes.
7     Q.    Got you.  All right.  Prior to
8  I.C. System, did you have any work in the
9  collection industry?
10    A.    I worked for a law firm, but I
11  worked with collection agencies.
12    Q.    Okay.  All right.  Other than
13  general counsel and chief compliance
14  officer, have you held any other titles
15  with I.C. System?
16    A.    I am the corporate secretary and
17  a vice president.
18    Q.    All right.  How many employees
19  does I.C. System have?
20    A.    Approximately, 500.  It might be
21  closer to 450, between 450 and 500.
22    Q.    Yes, ma'am.  And I note that
23  y'all are up in Minnesota.  Do you have

Page 10

1  locations in other states or around the
2  country?
3     A.    Yes.
4     Q.    Okay.  Where else are y'all
5  located?
6     A.    Onalaska, Wisconsin.
7     Q.    Okay.  So Wisconsin and
8  Minnesota, is that primarily the base of
9  operations for y'all?
10    A.    Yes.
11    Q.    Got you.  Okay.  And what exactly
12  is the nature of I.C. System's business?
13    A.    We collect unpaid accounts for
14  third parties.
15    Q.    Okay.  Does I.C. System collect
16  any accounts on its behalf, or is it
17  strictly collecting for other creditors?
18    A.    Well, if we have unpaid AR, we
19  attempt to collect it.
20    Q.    Sure.  But does I.C. System act
21  as any kind of debt buyer, or is it just a
22  collection agency?
23    A.    We do not purchase debts.

Page 11

1     Q.    Okay.  All right.  And you
2  understand that I.C. System has designated
3  you as the corporate representative to
4  answer my questions today and that your
5  answers to my questions are binding on I.C.
6  System?
7     A.    Yes.
8     Q.    Okay.  So I sent over some
9  exhibits to Mr. Golden.  Did he provide
10 those to you?
11    A.    I believe so.
12    Q.    Okay.  Have you had a chance to
13 take a look at those before today?
14    A.    I glanced at a few of them.  I
15 didn't spend a lot of time on them.
16    Q.    I got you.  And as an attorney,
17 you know I cannot invade attorney/client
18 privilege, so none of my questions seek to
19 do that.  But putting that to the side, did
20 you review anything specifically in
21 preparation for today?
22    A.    Yes.
23    Q.    What did you look at?

Page 12

1     A.    I looked at communications from
2  counsel.  I looked at account notes.  Like
3  I said, I glanced at some of the exhibits.
4     Q.    Okay.
5     A.    And, excuse me, I reviewed some
6  of the pleadings as well.
7     Q.    Okay.  That works for me.
8  Plaintiff's Exhibit 1 that I want to offer
9  is the deposition notice that I filed in
10 this case.
11
12        (Plaintiff's Exhibit 1 was
13         marked for identification.)
14
15    Q.    Had you had a chance to take a
16 look at that?
17    A.    I looked at it when it was
18 received.  I haven't spent a lot of time on
19 it since then.
20    Q.    I understand, and we'll get to
21 the topics in there in a moment.  But is
22 it -- may I assume that you are the person
23 that can provide testimony on those topics?

3  (Pages 9 to 12)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

Michelle Dove                                      8/18/2023

Page 13

1   There's not going to be a second 30(b)(6)
2   witness?
3       A.    I'm the best you've got.
4       Q.    Best we've got, that's fine.  Did
5   you happen to listen to the two phone call
6   recordings that were produced by I.C.
7   System in this case?
8       A.    I listened to them during
9   discovery production, and I haven't
10  reviewed them since.
11      Q.    Okay.  All right.  I know that a
12  couple of names popped up, and if I
13  pronounce these incorrectly, please feel
14  free to correct me.  Barbara Hauke; is that
15  correct?
16      A.    Yes.
17      Q.    And Lori Bagniewski?
18      A.    That sounds correct.
19      Q.    Sounds right.  Okay.  Did you
20  ever speak with either Ms. Hauke or Ms.
21  Bagniewski in preparation for today?
22      A.    I did not.
23      Q.    All right.  Do you know, is

Page 14

1   Barbara Hauke still employed at I.C.
2   System?
3       A.    I believe so.
4       Q.    Okay.  And how about Ms.
5   Bagniewski?
6       A.    I believe so.
7       Q.    All right.  And since you have
8   looked at the pleadings, does I.C. System
9   understand that my client has brought
10  claims against it under the Fair Debt
11  Collection Practices Act, or FDCPA, and
12  Fair Credit Reporting Act, FCRA?
13      A.    Yes.
14      Q.    Okay.  Are you familiar with the
15  FDCPA?
16      A.    Yes.
17      Q.    Are you familiar with that
18  through your experience?  So do you have to
19  do continuing education on that particular
20  statute?
21      A.    Both.
22      Q.    Both.  All right.  And I think we
23  talked about it, but I'll put a finer point

Page 15

1   on it.  Do you have any hand in drafting or
2   reviewing FDCPA compliance policy as it
3   relates to I.C. System's employees?
4       A.    Yes.
5       Q.    Is that the same with FCRA
6   compliance?
7       A.    Yes.
8       Q.    Okay.  So I'm clear, I.C. System
9   is a debt collector that collects debts
10  owed or alleged to be owed to others; is
11  that right?
12      A.    Yes.
13      Q.    All right.  And it also -- as
14  part of that, it sends reports on consumers
15  or at least credit reports on consumers
16  that it's collecting debts from; is that
17  also correct?
18      A.    I don't understand your question.
19      Q.    Sure.  Does I.C. System provide
20  information to credit bureaus, such as
21  balance information, account information,
22  that sort of thing, in and about its
23  business as a debt collector?

Page 16

1       A.    I.C. System furnishes data to the
2   credit reporting agencies.
3       Q.    Okay.  And I.C. System does that
4   as a tool to help it collect debts, does it
5   not?
6       A.    I'm not sure I would describe it
7   that way.
8       Q.    Then why would I.C. System
9   furnish that information on behalf of the
10  creditors it's collecting for?
11      A.    Oftentimes, that is a very
12  valuable way for us to contact consumers.
13  Oftentimes, debts are placed that don't
14  have updated addresses or contact
15  information.  And so when we credit report
16  the debt, that often drives consumers to
17  contact I.C. System about the account.
18      Q.    You also send letters to those
19  consumers as part of the process, do you
20  not?
21      A.    Sometimes.
22      Q.    Okay.  But would you agree that
23  credit reporting also is helpful in

BIRMINGHAM REPORTING SERVICE
(205) 326-4444

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

Michelle Dove                                          8/18/2023

Page 17

1    collecting the debt?
2        A.    Sometimes.
3        Q.    Okay.  If a consumer like Ms.
4    Dorsey disputes some information I.C.
5    System is reporting on a debt with a credit
6    reporting agency like TransUnion, would you
7    agree that I.C. System is required to
8    conduct an investigation of that dispute if
9    they're notified about it?
10       MR. GOLDEN:  Form.
11       A.    Yes.
12       Q.    And the way it works is that a
13   credit reporting agency, once it's notified
14   of a consumer's dispute, will then notify
15   I.C. System of that dispute typically; is
16   that right?
17       A.    Typically.
18       Q.    Typically.  Okay.  And the way
19   that's done I've seen is through what's
20   called an automated consumer dispute
21   verification form or ACDV; is that right?
22       A.    That's one way we can be notified
23   of a dispute.

Page 18

1        Q.    Okay.  That works through --
2    explain how that works.  If you receive
3    notification through an ACDV, how does that
4    happen on I.C. System's end?
5        MR. GOLDEN:  Form.
6        A.    We receive dispute information
7    through an automated process called
8    e-OSCAR.  The dispute is received.  I.C.
9    System investigates the information related
10   to the dispute and then reports the results
11   of the investigation back to the credit
12   bureaus.
13       Q.    Got you.  And getting that ACDV
14   will trigger I.C. System to then conduct
15   its own investigation of the dispute; is
16   that right?
17       A.    Correct.
18       Q.    Okay.  Do you agree that I.C.
19   System's investigation of a dispute must be
20   reasonable?
21       MR. GOLDEN:  Form.
22       A.    Yes.
23       Q.    According to I.C. System, what

Page 19

1    would constitute a reasonable investigation
2    of a consumer dispute?
3        MR. GOLDEN:  Form.
4        A.    The nature of the investigation
5    needs to be commensurate with the nature of
6    the dispute.  So depending on the
7    information that we receive in the dispute,
8    that will then dictate the nature of the
9    investigation.
10       Q.    That makes sense.  If a consumer
11   sent in a letter -- and there's multiple
12   ways to dispute; agreed?  Online, phone
13   call, written letter, that sort of thing;
14   would you agree with that?
15       A.    Yes.
16       Q.    If a consumer sent a letter in to
17   the credit reporting agency disputing an
18   account, would a reasonable investigation
19   include reading the dispute letter so that
20   you can make sure you know what the nature
21   of the dispute is?
22       MR. GOLDEN:  Form.
23       A.    It may.

Page 20

1        Q.    All right.  Is there any time
2    when an I.C. System's employee
3    investigating a dispute would not read a
4    letter that's sent along with the dispute?
5        MR. GOLDEN:  Form.
6        A.    There are times when information
7    is provided to the credit reporting
8    agencies regarding a dispute and that
9    information isn't passed on to I.C. System.
10       Q.    Okay.  I got you.  But if you'll
11   assume with me that the credit reporting
12   agency includes a copy of the consumer's
13   letter with the ACDV, would you agree it's
14   reasonable to read the letter as well as
15   part of the investigation?
16       MR. GOLDEN:  Form.
17       A.    Yes.
18       Q.    All right.  Now, when I.C. System
19   investigates a dispute, would you agree
20   that typically there are three outcomes?
21   It's either verified, the information can't
22   be verified, or it's deleted as inaccurate;
23   would you agree with that?

BIRMINGHAM REPORTING SERVICE
(205) 326-4444
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

Michelle Dove                                                    8/18/2023

---

Page 21

1    A.   I'm not sure if those are the
2  only three outcomes.
3    Q.   Are you aware of any other
4  outcomes other than verify, can't be
5  verified, or delete as inaccurate?
6    A.   I'm not sure the full menu of
7  outcomes regarding an ACDV dispute.
8    Q.   Okay.  If I.C. System gets a
9  dispute from a consumer through an ACDV
10  like we've been talking about and I.C.
11  System doesn't already have evidence
12  establishing that an item of disputed
13  information is true, does I.C. System then
14  seek out and obtain that information before
15  reporting the information is verified?
16    MR. GOLDEN:  Form.
17    A.   I'm sorry.  You lost me there.
18    Q.   I'll go through it again, and you
19  are doing a great job.  If I ask something
20  that doesn't make sense, don't answer it
21  until you understand.  That's fine.
22        So let me walk through this.  If
23  I.C. System gets a dispute through the ACDV

---

Page 22

1  process, okay, and then the employee at
2  I.C. System does not have evidence or can't
3  find anything establishing that that
4  disputed information is true, is the policy
5  then to seek out some information to make
6  sure that it can be verified or what
7  happens at that point?
8    MR. GOLDEN:  Form.
9    A.   Well, again, it's going to depend
10  on the nature of the dispute and the
11  information in the dispute.  If we get a
12  dispute that's what we would call a generic
13  or a simple dispute that just says not
14  mine, that is easy.  We can answer the
15  dispute by looking at the demographic
16  information in the ACDV and comparing it to
17  the information in our account.  If the
18  name, if the address, sometimes date of
19  birth, social, if that information matches,
20  then we have enough information in our
21  system to verify back to the bureaus that
22  it actually is the correct consumer.
23        If a consumer provides

---

Page 23

1  information like a police report or a fraud
2  packet, then that obviously would require a
3  higher level of investigation.  And there
4  are times when the consumer provides
5  information that we can't verify using our
6  collections software.  And in that case, we
7  would go back to the creditor and request
8  additional information.
9    Q.   Thank you.  That's helpful.  So
10  if there's something that the employee at
11  I.C. System might need that the creditor
12  might have, they would go back to the
13  creditor and request it; fair?
14    MR. GOLDEN:  Form.
15    A.   If the information is required in
16  order to answer the dispute that we've
17  received.
18    Q.   Okay.  And would that sort of
19  information include underlying account
20  documents, like account applications or
21  bills for an account?
22    A.   It may.
23    Q.   Per its policy, I.C. System can't

---

Page 24

1  guess at whether disputed information is
2  accurate before it verifies it; correct?
3    MR. GOLDEN:  Form.
4    A.   I'm sorry.  Could you ask that
5  again?
6    Q.   If I.C. System verifies
7  information is correct that's been
8  disputed, that verification needs to be
9  based on something; right?
10    MR. GOLDEN:  Form.
11    A.   I don't understand your question.
12    Q.   Okay.  So someone writes in and
13  says, hypothetically, the balance is wrong.
14  Okay.  For whatever reason, the balance is
15  wrong.  It says $500, and I think it's
16  $400.  All right.  I.C. System has to do
17  something to verify that the balance is
18  correct.  It can't just rubber stamp and
19  say, no, it's correct; do you agree with
20  that?
21    MR. GOLDEN:  Form.
22    A.   Well, in that case, we would look
23  in our collections system and see the

---

                              6  (Pages 21 to 24)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4**

Michelle Dove                                          8/18/2023

---

Page 25

1    balance that is reported by the creditor.
2    And because our creditors update our
3    account information in realtime, the
4    information that they are providing, we
5    rely on that as the amount that's
6    accurately due -- excuse me, validly
7    due and owing.
8        Q.   Sure.  But my point, I guess,
9    that I'm trying to make sort of awkwardly
10   is that I.C. System, when it verifies
11   information, relies upon information that's
12   been provided to it?  It doesn't just make
13   it up as it goes; fair?
14       A.   Correct.  I.C. System relies on
15   the information provided by the creditor.
16       Q.   All right.  And if I.C. System
17   cannot verify some piece of information,
18   what happens in that instance?
19       MR. GOLDEN:  Form.
20       A.   If we don't have the information
21   in our collection software to verify the
22   validity of the debt, then we request that
23   information from the creditor.

Page 26

1        Q.   If the creditor cannot provide
2    that to I.C. System, what's I.C. System's
3    policy at that point?
4        A.   It depends on the nature of the
5    dispute.
6        Q.   Okay.
7        A.   If the creditor will no longer
8    stand behind the validity of the debt, then
9    we will stop reporting and stop collecting
10   the account.
11       Q.   Okay.  At that point, does I.C.
12   System request that the tradeline be
13   deleted?
14       A.   If the creditor is no longer able
15   to verify the debt, yes.
16       Q.   All right.  Let's talk about the
17   account that I.C. System was collecting
18   from Ms. Dorsey.  Okay?
19       A.   Sure.
20       Q.   Based on what I have seen, I.C.
21   System was trying to collect an AT&T
22   U-verse account from Ms. Dorsey.  Is that
23   your understanding?

Page 27

1        A.   Yes.
2        Q.   All right.  Do you know what AT&T
3    U-verse is?
4        A.   A telephone service.
5        Q.   Sure.  I think --
6        A.   It may be cable as well.
7        Q.   I think it's like a whole
8    package, internet, phone, that sort of
9    thing.  Is that your understanding?
10       A.   Yes.  AT&T provides
11   telecommunication services.
12       Q.   Got it.  Does I.C. System
13   regularly attempt to collect debts alleged
14   to be owed to AT&T?
15       A.   Yes.
16       Q.   As part of the policies and
17   procedures, I.C. System maintains account
18   history notes for the debts it attempts to
19   collect; is that correct?
20       A.   I.C. System uses collection
21   software that is continuously being updated
22   by AT&T.
23       Q.   What is the term that I.C. System

Page 28

1    uses for the printout of that data?  I have
2    seen collection notes, account notes.  What
3    does I.C. System say?
4        A.   We call a printout of the
5    collection account notes either the account
6    summary or the account history.
7        Q.   Okay.  What I would like to mark
8    as Exhibit 2 is a document Bates labeled
9    ICS 4 through 15.
10
11       (Plaintiff's Exhibit 2 was
12       marked for identification.)
13
14       Q.   It looks to be in reverse order,
15   but this appears to be the account -- what
16   did you call it again?  Forgive me.
17       A.   Can we share the document?  I'm
18   not sure what we're looking at.
19       Q.   Sure.  Hang on.  Do you have it
20   in front of you by any chance?
21       A.   I don't.
22       Q.   Okay.  Give me just a second
23   here.  I wasn't prepared to do that.  Can

BIRMINGHAM REPORTING SERVICE
(205) 326-4444
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

Page 29

1  you give me just one moment?
2      A.   Of course.
3      Q.   Hang on.  Okay.  Let me see if I
4  can get this up for you.  All right.  Tell
5  me if you see what I've got.
6      A.   I see Exhibit 2.
7      Q.   Okay.  All right.  Let me zoom
8  this out just a touch, so this -- and it's
9  blurry.  I'll grant you that.  This is how
10 it was produced to me.  As I said, it's --
11 do you see at the bottom ICS 4?
12     A.   Yes.
13     Q.   And then it goes to ICS 15.  Do
14 you see that as well?
15     A.   Yes.
16     Q.   All right.  It starts on December
17 the 20th, 2020.  Do these appear to be the
18 account history notes that we've been
19 talking about?
20     A.   Yes.
21     Q.   All right.
22          MR. GOLDEN:  Hey, Whitney?
23          MR. SEALS:  Yes, sir.

Page 30

1          MR. GOLDEN:  I just want to jump
2  in because I have no understanding of why
3  those notes would look like that.  Really,
4  I feel bad that they were produced to you
5  looking like that.  It almost looks like
6  they were faxed, and they weren't.  I mean,
7  they come to us as basically a PDF
8  document, and so I'm at a loss to
9  understand why they look like that.
10         MR. SEALS:  I was kind of the
11 same way.  And, normally, I would ask for a
12 clearer copy.  I'm not sure why that didn't
13 happen in this case.  Dale, if you have a
14 clearer copy and wanted to shoot it, I'll
15 pull it up.  I'm happy to.
16         MR. GOLDEN:  Yeah.  Why don't we
17 take like a five-minute break?
18         MR. SEALS:  All right.  Yeah.
19 That'll make it better.
20
21          (Break taken.)
22
23     Q.   Okay.

Page 31

1      A.   Can we just look at the Bates
2  numbers?  Sorry.  I just want to make sure
3  that there -- it seemed like maybe there
4  were two different sets of numbers there.
5      Q.   Sure.  Sure.
6      A.   It shouldn't be, but I just want
7  to make sure.  I thought you said you were
8  starting at four.
9      Q.   Yes.  One moment.  Let me screen
10 share what I just got.  I will be happy to
11 do it.  All right.  Do you see that, ma'am?
12     A.   Yes.
13     Q.   All right.  This doesn't appear
14 to be Bates labeled.
15         MR. GOLDEN:  Yeah.  It --
16     Q.   At the top -- okay.  All right.
17 12 -- now, I have -- we started at four on
18 mine.  This one starts at one.  Does that
19 make sense?  I think it's --
20         MR. SEALS:  Dale, you're shaking
21 your head.
22         MR. GOLDEN:  I mean, I don't know
23 why that would be on there.  Again, this is

Page 32

1  what --
2      Q.   If there's something in here
3  that's missing that I was going to ask you
4  about, I can go back to the other one, but
5  I feel pretty confident this is it and
6  we'll use this.  This is a document,
7  Exhibit 2, that's Bates stamped ICS 1
8  through 12; is that correct?
9      A.   Yes.
10     Q.   All right.  And these appear to
11 be a better copy of the account notes than
12 the one we just looked at; is that correct?
13     A.   Yes.
14     Q.   Okay.  All right.  So in looking
15 at these, they look like they go in reverse
16 order and start at 12/28/20 and end in
17 October of '22.  So I'll start down here on
18 page 12.  Looking at this or can you tell
19 from here when the account was placed with
20 I.C. System by AT&T?
21     A.   Yes.
22     Q.   When would that have been?
23     A.   December 28th, 2020, at 3:10 p.m.

8  (Pages 29 to 32)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4**

Michelle Dove                                          8/18/2023

Page 33

1     Q.   All right.  And do you know what
2   information AT&T provided to I.C. System
3   when it placed this account for collection?
4     A.   Yes.
5     Q.   What information was provided to
6   I.C. System by AT&T?
7     A.   All of the information that has
8   the word added in the third column.
9     Q.   All right.  So if we look at
10   this, it looks like an email, a name, an
11   address, and some telephone numbers.  Does
12   that --
13     A.   Debt number has to do more with
14   internal labeling of the account.  Those
15   aren't telephone numbers.
16     Q.   Got you.  Okay.  So forgive me.
17   I meant telephone number right here where
18   it says unknown.  It's redacted, but
19   there's something there.  Does that appear
20   to be a phone number that would've been
21   provided?
22     A.   Yes.  Sorry.  I was confused.
23     Q.   That's okay.  That's okay.  So

Page 34

1   we've got an email, name, address, a bill.
2   Is that what that is?  And I'm sort of
3   pointing at it here.
4     A.   It looks like a secondary
5   address.
6     Q.   Okay.
7     A.   Oh, excuse me.  It looks like the
8   billing address is the same as the address
9   that was provided.  So sometimes there are
10   multiple addresses, but it looks like the
11   P.O. Box is the billing address.
12     Q.   Understood.  Understood.  And
13   then I want to scroll slowly through this,
14   and if you see anything else that AT&T
15   provided other than the email address,
16   name, and billing address, stop me.  Okay?
17     A.   Yes.
18     Q.   And you said the debt number
19   things are internal recordkeeping; right?
20     A.   Correct.
21     Q.   And then here, what are we
22   looking at here?  31044 debt number,
23   balance line item, what is that?

Page 35

1     A.   I believe that would be
2   information about the amount due and owing.
3     Q.   Okay.  And then there's another
4   one above that.  Is that the same thing or
5   something different?
6     A.   I'm not sure.
7     Q.   All right.  And then if we move
8   up, there are -- there's a warning.  Do you
9   know what that is?
10     A.   It looks like the phone number
11   has an invalid prefix.  And so it's just
12   flagging that number as likely being a bad
13   number.
14     Q.   All right.  And then we see
15   status change from batch entered to active.
16   Is that simply activating the account to be
17   collected?
18     A.   I believe it's moving into the
19   next phase of collections.  Yes.
20     Q.   Okay.  And then current linked
21   debt phase, state ID changed from nothing
22   to a number.  Do you know what that is?
23     A.   It's another internal

Page 36

1   administrative number.  I'm not sure what
2   it means.
3     Q.   Okay.  And it looks like 4/17, it
4   was assigned to I.C. house collector.  Is
5   that like a queue that they choose from?
6     A.   It's going into a group of agents
7   who may be eligible to work the account.
8     Q.   Okay.  And then what is the next
9   one here that starts with owner team
10   change?  What are you communicating there?
11     A.   This, again, is similar.  It's
12   going into the house global, so it's going
13   into a pool of debt collectors.
14     Q.   All right.  And then any
15   significance for the top two?
16     A.   It's just more internal coding.
17     Q.   Okay.  And then any significance
18   here with these first two on I.C. System --
19   let me get the page -- ten?
20     A.   Just more internal coding, I
21   believe.
22     Q.   Okay.  Anything else that you see
23   on that date that is of significance to the

9  (Pages 33 to 36)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

Michelle Dove                                                    8/18/2023

Page 37

1    collection efforts?
2        A.    Well, the batch processing is
3    applying some of our collection strategies.
4    So like the letter only debt numbers and
5    preprocessing debt, you can see then it's
6    applying a letter plan, and then it's
7    applying some of the initial scrubs.  And
8    so at 41726, I guess there's a lot of those
9    numbers.  But vendor data, a pin request,
10   now it's starting scrubs and so it's going
11   to look for bankruptcy.  It's going to look
12   for, DEC is deceased, so some of these
13   scrubs are now starting just to make sure
14   that our information is valid.
15       Q.    Got you.  Is this -- this top
16   one, is this the collection strategy you
17   just mentioned?
18       A.    Yes.
19       Q.    We're going to ICS 9 and we're
20   still on 12/28/20.  Anything significant
21   that you see on the screen here for these
22   first one, two, three, four, five, six,
23   seven entries?

Page 38

1        A.    Well, so the fourth row up from
2    the bottom now is assigning it to the AT&T
3    team.
4        Q.    Okay.
5        A.    And then it's talking about
6    intensive phase, so that really is
7    describing the method of collection.  I
8    should note that in order to credit report
9    an account, the creditor would provide I.C.
10   System with either the social or the date
11   of birth.  I don't believe that either of
12   those pieces of information appear in the
13   account history just because of the
14   sensitive nature of the information.
15       Q.    Okay.
16       A.    But that also would have been
17   provided.
18       Q.    All right.  So you make a good
19   point.  While we don't see that, I don't
20   have any reason to doubt they provided the
21   social security number and date of birth to
22   you.  Otherwise, you wouldn't credit
23   report; right?

Page 39

1        A.    Correct.
2        Q.    Okay.  So they -- AT&T provided
3    the social security number, date of birth,
4    name, billing address, and at least a
5    telephone number.  Did I get that correct?
6        A.    Yes.  And I believe there's
7    other -- and we can see notes about the
8    balance, but they would have provided the
9    balance, payment history.  The service
10   address usually comes over on the file.  So
11   this is a summary of the account history.
12   There may be more information in the actual
13   collection software that's not produced on
14   these notes.
15       Q.    Okay.  So we're not -- can you
16   look at this and do you know exactly what
17   was provided, or is it what you would've
18   expected to be provided?
19       A.    Well, I know all of the
20   information that says added as account
21   information that we got from AT&T, but
22   there may be additional information that
23   doesn't appear on these history notes.

Page 40

1        Q.    What sort of information would
2    that be typically, that wouldn't appear
3    here, that was provided by AT&T?
4        A.    Well, I kind of went over it, but
5    it's social security number, date of birth,
6    balance information, service address.  And
7    I'm not sure if that comes over in the
8    original placement file or if there's a
9    supplemental file that AT&T provides.  We
10   work off of -- AT&T has its own collection
11   software that I.C. System has to work off
12   of.  And so some of the account information
13   may be in the Karma software that's owned
14   by AT&T.
15       Q.    Okay.  The sixth from the bottom,
16   it says score value change, 0 to 279.  What
17   is score value and what does that mean?
18       A.    We use a vendor who helps us --
19   it's a propensity to pay score.  And so we
20   run our debts through -- by a vendor, I
21   guess, and they give us -- they score the
22   debt and return that score to us.
23       Q.    Okay.  What is the significance

                                    10  (Pages 37 to 40)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4**

Michelle Dove                                          8/18/2023

Page 41

1    of the scores, if you know?
2        A.    I don't know a lot about it. I
3    know that our operations system uses the
4    scores to determine which debts we should
5    focus on and which debts are likely not
6    collectible. So, for example, if someone
7    had recently filed bankruptcy, their score
8    would be very low. You know, if they had a
9    good credit history or propensity to pay,
10   the score may be higher.
11       Q.    Okay. So the higher the score,
12   the more likely collection would be
13   successful; is that sort of the summary?
14       A.    I believe that's how it works.
15       Q.    Okay. All right. Because I saw
16   through this, it changes up and down a lot
17   and I wasn't sure how that worked. Am I
18   understanding you're not exactly 100
19   percent sure how that algorithm works as
20   well, or can we talk about that?
21       A.    I'm not familiar with the
22   algorithm. I believe it's like a credit
23   score where the CRAs are very secretive

Page 42

1    about how the number is generated, what the
2    formula is.
3        Q.    Sure.
4        A.    It's proprietary information that
5    we don't have. We just understand that
6    it's a propensity to pay scoring model.
7        Q.    That's fine. I was just curious
8    about it, but I think that's good enough
9    for our purposes today. This was a
10   consumer debt, was it not?
11            MR. GOLDEN: Form.
12       A.    I believe so, yes.
13       Q.    Okay. I just say that because
14   she's referred to as consumer consistently
15   in here. Is that your understanding?
16       A.    Yes.
17       Q.    Okay. All right. Let me move up
18   a little more. It looks like as we go to
19   the top half of ICS 9, it looks like there
20   are attempts to start calling and letters
21   sent. Does that appear to be correct?
22       A.    Yes.
23       Q.    Do you know what live line update

Page 43

1    is here at 1/4/21 at 5:59:27 p.m.?
2        A.    Live line is showing that
3    information was received from the creditor
4    and updated into our system.
5        Q.    Okay. Do you know what that
6    information is, or do I need to scroll up?
7        A.    Portfolio is U-verse. I don't
8    know what PR means for channel.
9        Q.    Okay. All right. Moving up to
10   ICS 8. Do you know what this means at the
11   bottom here at 6:17:39, OCA name, AFNI?
12       A.    I believe it means that the debt
13   was previously placed with another agency
14   called AFNI.
15       Q.    Okay. All right. And the same
16   with FCS, would that have been a different
17   agency as well?
18       A.    I believe so.
19       Q.    All right. It looks like there's
20   some letters or at least a letter request,
21   score value is changing, which I know we
22   talked about we're not sure precisely what
23   that is. We move up. It looks like there

Page 44

1    are attempts to collect or call at least.
2    There's an answering machine and no contact
3    on two different numbers. Am I reading
4    that correctly?
5        A.    Yes, two different attempts.
6        Q.    Yes, ma'am. And then there's a
7    viewed by Casi Quinonez. Is there any
8    significance there, or is she the person
9    that was working and dialing at this point?
10       A.    It looks like she viewed the
11   account, but it -- my understanding is she
12   may have viewed the account in relation to
13   the attempt at 9:47 on January 7. It looks
14   like a one-second call, so I would assume
15   the call wasn't connected.
16       Q.    I got you.
17       A.    But it was such a short call.
18   There's no account update. My
19   understanding is there's no contact --
20   there's nothing to update.
21       Q.    Understood. All right. If we
22   move up to ICS 7, it looks like more
23   attempts to call and then score values

BIRMINGHAM REPORTING SERVICE
(205) 326-4444
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4**

Michelle Dove                                          8/18/2023

Page 45

1  change again; is that fair?
2      A.   Yes.
3      Q.   Okay.  It looks like more
4  attempts to call as we go through the
5  middle of January of '21.  Does that seem
6  accurate to you?
7      A.   Yes.
8      Q.   All right.  And then if we move
9  on, more calls.  Move to ICS 6.  Again,
10  more attempts to call and score date
11  changes; is that fair?
12      A.   Yes.
13      Q.   2/1/21, it looks like another
14  letter was requested to be sent?
15      A.   Yes.
16      Q.   Sorry.  We have a fire truck
17  going by.  Okay.  And then the next one I'm
18  curious about, if we go up here, current
19  linked debt phase, state ID changed.  Is
20  that internal recordkeeping?
21      A.   Yes.
22      Q.   And then any significance to
23  working team changed from AT&T to corporate

Page 46

1  attorney referral?
2      A.   If you could, scroll up a little
3  bit more.
4      Q.   Yes, ma'am.  You want me to keep
5  going?
6      A.   So, no, it's enough.  Once we
7  have exhausted collections, so we have made
8  a certain number of phone attempts that
9  have been unanswered, we have sent a
10  certain number of letters, then the next
11  phase in our collection strategy is to move
12  it to our internal corporate attorney
13  referral representative, whose name is Eric
14  Anderson.  He does --
15      Q.   Right there?
16      A.   Yes.  He does end -- really end
17  of intensive collection, reach out to try
18  one more time to contact the consumer.
19      Q.   Okay.
20      A.   So that's just showing it moving
21  to that phase.
22      Q.   Okay.  I'll move back up.  It
23  looks like it is referred.  Then it's sent

Page 47

1  to corporate pre-litigation.  So I guess
2  that's just another phase; is that right?
3      A.   That's part of the same phase.
4      Q.   Okay.  Got you.  And then any
5  significance here, collector assigned
6  changed?  I assume that's internal
7  notations?
8      A.   Correct.
9      Q.   And then working team changed
10  from corporate litigation to AT&T warehouse
11  house, do you know what that means?
12      A.   It looks like to the extent it
13  was in the litigation phase, it was there
14  for a few seconds and then just went into a
15  warehouse phase.  So I'm not sure that any
16  work effort was done in pre-litigation.  It
17  may have just kind of moved to that phase
18  very quickly and then went to the warehouse
19  phase.
20      Q.   Got you.  Got you.  Okay.  So
21  then again, if we move up, it looks like an
22  internal note, working team changed to
23  U-verse seconds phase.  And given the time,

Page 48

1  it may have just gone through several
2  phases very quickly; is that fair?
3      A.   Correct.
4      Q.   All right.  And then it looks
5  like -- what does this credit monitor, add
6  monitoring mean?  ICS 5 -- excuse me.  Just
7  so I'm clear on the record, ICS 5 at
8  2/19/21, 11:59:59.
9      A.   We use a vendor who just -- that
10  monitors credit scores or credit
11  information.  And so if something changes,
12  like a bankruptcy, we will be immediately
13  notified.  Really, it's more of an inactive
14  phase where the vendor is kind of
15  monitoring the credit history for any
16  changes, but it's more an inactive
17  collections phase.
18      Q.   Okay.  And then these batch
19  processing, is this all internal stuff
20  again?
21      A.   Correct.
22      Q.   Now, we're moving on to ICS 4.
23  Again, batch processing simply is internal

12  (Pages 45 to 48)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4**

Michelle Dove                                          8/18/2023

---

Page 49

1    things; right?
2         A.   Correct.
3         Q.   We move up.  It looks like more
4    attempts to call are made February 20th and
5    23rd of 2021; is that right?
6         A.   Yes.
7         Q.   Okay.  Now, we get to March 3rd,
8    2021, at 9:54 p.m.  Do you see that?
9         A.   Yes.
10        Q.   All right.  And there's an
11   account note, and Ms. Barbara Hauke's name
12   is there; right?
13        A.   Yes.
14        Q.   Okay.  According to these notes,
15   it looks like she called and spoke with Ms.
16   Dorsey; is that right?
17        A.   It looks like Ms. Dorsey called
18   and spoke with Barbara Hauke.
19        Q.   So Ms. Dorsey called in.
20   Thank you for that.  And I think I got it
21   wrong.  It looks like it's 2:09:54 p.m.,
22   not 9:54 p.m.; is that right?
23        A.   Correct.

---

Page 50

1         Q.   Okay.  Y'all weren't calling her
2    at 10:00 at night, I hope; right?
3         A.   No.
4         Q.   Or she wasn't calling you, I
5    hope, rather.  Can you translate the
6    shorthand right here in 3/3/21 at 9:54 p.m.
7    that says account note for me?
8         A.   Sure.  It starts with 20560.
9    That indicates the number that she called
10   in from.
11        Q.   Okay.
12        A.   I don't know what the redacted
13   part is.
14        Q.   Sure.
15        A.   If I look at the account note
16   above, I would assume that it's just the
17   end of the complete phone number, the last
18   four of the phone number perhaps.
19        Q.   Okay.
20        A.   VIC is verified the identity of
21   the consumer.  MM is mini Miranda, and then
22   it says Ms. disputes.  So she is disputing
23   the account.  AT&T could not provide

---

Page 51

1    service at that time, never had service,
2    not available in area at that time.  And
3    then a rep ends the call by verifying her
4    address and email and phone number.
5         Q.   All right.  And then above that,
6    it looks like verified with a telephone
7    number and then she changes the dispute
8    flag from not disputed to, yes, disputed;
9    is that correct?
10        A.   Correct.
11        Q.   Okay.  And then if we move up a
12   little more, the bill-to address reason is
13   changed, I guess, based on the verification
14   of the phone call; would that be correct?
15        A.   I'm sorry.  Can you ask that
16   again?
17        Q.   Of course.  It says updated --
18   and I will highlight it -- bill-to address
19   reason changed, nothing to verify it.  I
20   assume that's because it was verified on
21   the telephone where it says verified addy?
22        A.   Correct.
23        Q.   Okay.  All right.  So we talked

---

Page 52

1    about I.C. System recorded this telephone
2    call; is that right?
3         A.   Yes.
4         Q.   And I know that you haven't
5    listened to it in the very recent past, but
6    you have heard that call, have you not?
7         A.   Correct.
8         Q.   In the call, Ms. Hauke tells Ms.
9    Dorsey I.C. System does not credit report.
10   Do you recall her saying that in the call?
11        A.   I recall her saying something to
12   that effect.
13        Q.   But I.C. System does credit
14   report debts, does it not?
15        A.   Correct.
16        Q.   Okay.  In fact, I.C. System
17   reported Ms. Dorsey's debt to TransUnion;
18   is that correct?
19        A.   I believe that's correct.
20        Q.   Okay.  Sorry.  One second.  It
21   sounds like the Birmingham firefighters are
22   busy this morning.  All right.  According
23   to the notes and your memory of the call,

---

13  (Pages 49 to 52)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

Michelle Dove                                              8/18/2023

Page 53

1    Ms. Dorsey told Ms. Hauke AT&T couldn't
2    provide her with U-verse service and that
3    she never had the service because it wasn't
4    available is at least what she said; is
5    that right?
6         A.    I believe she said something like
7    that.
8         Q.    And that's reflected in the notes
9    here, is it not?
10        A.    Correct.
11        Q.    Does I.C. System dispute that
12   AT&T U-verse internet service was not
13   available at her home?
14             MR. GOLDEN:  Form.
15        A.    I am not aware of where AT&T
16   provides internet service.
17        Q.    Okay.  So, again, does I.C.
18   System have any reason to dispute that or
19   does it not know either way?
20        A.    Well, the fact that AT&T placed
21   the debt, we rely on that as the
22   representation that the debt is validly due
23   and owing.

Page 54

1         Q.    I understand that.  But I.C.
2    System has no independent knowledge as to
3    whether U-verse service is available at Ms.
4    Dorsey's address or not, does it?
5         A.    I'm not sure.  I would tell you
6    that because they placed the account, we
7    would assume that they did provide the
8    service.
9         Q.    Okay.  But that's just an
10   assumption y'all made because they placed
11   the account; right?
12        A.    Well, they represent and warrant
13   to I.C. System that they only place debts
14   that are validly due and owing.  So it's
15   our experience that when they realize maybe
16   the service wasn't provided or that the
17   debt is inaccurate or not due and owing,
18   they will recall the debt or pull it out of
19   our active collection inventory.  That
20   didn't happen here at this time.
21        Q.    Okay.  All right.  Ms. Dorsey --
22   do you recall Ms. Dorsey saying that she
23   was not going to pay the debt on the phone

Page 55

1    call?
2         A.    I don't recall.
3         Q.    Do the notes -- and I can scroll
4    up some, sorry, if you need me to.  For
5    3/3/21, I'm looking to see if there's
6    anything else other than I.C. -- yeah.  So
7    it looks like it's verified information
8    that Ms. Hauke viewed the account.  Does
9    that look correct and that it was updated?
10        A.    Correct.
11        Q.    And then the next is March 17th
12   of '21 when another letter was requested.
13   It looks like a settlement offer letter; is
14   that right?
15        A.    Yes.
16        Q.    All right.  Do the notes indicate
17   that Ms. Hauke or anyone at I.C. System
18   contacted AT&T to see if what Ms. Dorsey
19   was saying about the U-verse service not
20   being available was true?
21        A.    The dispute would have been
22   updated back to AT&T through our collection
23   software.

Page 56

1         Q.    All right.  And what would that
2    have looked like?  Would they have gotten
3    the same information we're looking at here,
4    or does it -- how is that done?
5         A.    They would have gotten something
6    similar just saying that she disputed that
7    the service was provided.
8         Q.    All right.  Other than sending
9    that notification, is there any instance
10   that you can see in the notes or that
11   you're aware of that anyone at I.C. System
12   contacted AT&T to ask if the service was
13   available or not?
14        A.    Well, I should back up by saying
15   that we had previously sent this consumer
16   an initial notice, 1692G notice.  And
17   within the 30-day validation period after
18   receiving that notice, she had not
19   contacted I.C. System to dispute the debt
20   or otherwise request information.  Had she
21   done so, the debt would go into an
22   answer-required status where AT&T would
23   have to provide additional validation of

14  (Pages 53 to 56)

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4

Michelle Dove                                                    8/18/2023

Page 57

1    the debt in order for collections to
2    continue. So had she disputed within the
3    FDCPA's three-day time period, the account
4    would have been handled differently. She
5    did not. And so that's just an additional
6    reason why I.C. System relies on the
7    validity of the debt.
8            To answer your question, the
9    dispute would have been communicated to
10   AT&T had she, you know, provided something
11   in writing or a fraud packet or a police
12   report. That would have also been an
13   additional investigation. But here, she
14   just said she didn't receive the service.
15   AT&T said she did. And so that's kind of
16   where this leaves off.
17       Q.   I understand that a letter was
18   sent and I.C. System's position is that she
19   didn't dispute it within the 30 days of the
20   date of the letter. I understand that.
21   However, she does dispute it March the 3rd,
22   2021, does she not?
23       A.   Correct. And even though it was

Page 58

1    only a verbal dispute, we do update our
2    account records to reflect the dispute and
3    then communicate that to the credit
4    reporting agencies and to the creditor.
5        Q.   Sure. When you said that if she
6    disputes it within the 30-day time period,
7    that triggers a request for additional
8    validation; is that right?
9        A.   Correct.
10       Q.   She disputed it here. Was any
11   request for additional validation made in
12   response to her dispute of the debt
13   verbally on March 3rd, 2021?
14       A.   No. We didn't require any to
15   continue our collection activity.
16       Q.   Why would that be? What's the
17   significance within the 30 days, rather
18   than when she finally calls in and disputes
19   it? She doesn't -- or you don't request
20   additional validation?
21       A.   The FDCPA.
22       Q.   Okay. So you're basing the
23   policy on the FDCPA, and it's I.C. System's

Page 59

1    position that unless she disputes it within
2    those 30 days, I.C. System isn't going to
3    request additional validation?
4            MR. GOLDEN: Form.
5        A.   Well, not necessarily. I'm just
6    telling you that if she had provided a
7    written dispute within the first 30 days,
8    our requirements under the FDCPA are
9    different than if she calls in outside of
10   that validation period and provides a
11   verbal dispute, which is what she did here.
12   Here, because she provided a verbal dispute
13   and just said, I didn't get the services,
14   we communicated that dispute back to AT&T,
15   who I believe received the dispute. They
16   didn't recall the debt or withdraw the
17   debt, so we continued to collect.
18       Q.   Okay. Let me ask you this: As
19   part of her job, if Ms. Hauke had wanted to
20   for whatever reason, is she permitted to
21   contact AT&T to verify what Ms. Dorsey was
22   saying about not having the U-verse
23   service?

Page 60

1            MR. GOLDEN: Form.
2        A.   She is not prohibited from
3    contacting them, but based on the nature of
4    this dispute, I don't think there was any
5    reason to.
6        Q.   I understand. But had she wanted
7    to, how is that typically done? Is it a
8    phone call? Is it through the software?
9    How does that work?
10       A.   There's a variety of ways that we
11   can contact AT&T. She could have escalated
12   it to her supervisor, who would have
13   requested the information. Our consumers
14   affairs group can request the information.
15   If we receive a dispute in writing, our
16   correspondence team or our consumer affairs
17   team can contact AT&T. We have account
18   managers who can contact AT&T. So if the
19   dispute warrants additional communication,
20   we certainly have a number of ways that we
21   can do that.
22       Q.   If that had happened, if someone
23   at I.C. System had contacted AT&T to ask if

15  (Pages 57 to 60)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4**

Michelle Dove                                                    8/18/2023

Page 61

1    what Ms. Dorsey was saying was true, would
2    that be reflected in the account notes?
3        A.    Yes.
4        Q.    Are all contacts with the
5    creditor reflected here in the account
6    notes as best you know?
7        A.    No. I believe that there are
8    additional communications that may occur
9    that are in our collections software that
10   aren't necessarily printed on the notes.
11       Q.    Had --
12       A.    Excuse me. We send combined
13   messages to our clients. I think typically
14   when a rep sends a combined message, they
15   would indicate CM and then 38 or 42 or
16   whatever the combined message. It's
17   usually kind of format text. Here, there
18   is no indication that a combined message
19   was sent.
20       Q.    I got you. And you also said
21   that AT&T would have been notified that Ms.
22   Dorsey disputed the debt. Did I hear you
23   correct?

Page 62

1        A.    Correct. The dispute was
2    updated. You can see there's an entry, I
3    think, that said dispute from no to yes.
4    And so that dispute flag is communicated to
5    AT&T and to the CRAs.
6        Q.    All right. So the notes don't
7    show a specific contact to AT&T. But if I
8    read disputed flag change no to yes, is it
9    I.C. System's testimony that AT&T would
10   have been notified in that process?
11       A.    Yes. The dispute is updated in
12   that Karma system, that live line file.
13   There's a communication back to AT&T. They
14   would've been notified at that time.
15       Q.    All right. I.C. System agrees it
16   can't attempt to collect debts that are not
17   actually owed; is that right?
18            MR. GOLDEN: Form.
19       A.    If I.C. System receives
20   information that a debt is not actually due
21   and owing, we will stop collections.
22       Q.    Got you. Is I.C. System reliant
23   on the creditor to provide that sort of

Page 63

1    information or does I.C. System
2    independently try to verify if a debt is
3    owed or not?
4        A.    I.C. System relies on the
5    creditor and the consumer to provide that
6    information.
7        Q.    Okay. If what Ms. Dorsey said
8    was true, that she had never had the
9    service and that it was not ever available
10   at her home, does I.C. System agree that
11   she wouldn't owe AT&T money for that
12   service she never got?
13            MR. GOLDEN: Form.
14       A.    I.C. System isn't the FBI. We're
15   not really in a position to make that
16   determination. So if she provided proof to
17   I.C. System that she didn't owe the debt to
18   AT&T, we would rely on that evidence. But
19   here, we just have a short phone call and
20   nothing more. So we communicated that
21   dispute back to AT&T, and they continued to
22   verify the accuracy of the debt.
23       Q.    If we can look up -- let's see

Page 64

1    here. All right. Do you see October 6,
2    2021, at around 6:39 in the morning?
3        A.    Yes.
4        Q.    All right. There are some
5    indications here. There are two blocks for
6    that day or two entries. The first is
7    updated. The second is ACDV. Can you
8    explain what happened in these two blocks
9    here or entries for October the 6th, 2021?
10       A.    Sure. It looks like we received
11   an ACDV from TransUnion, and the consumer
12   claimed that she had paid the debt. Our
13   system reviewed the account information
14   from AT&T to see that the debt had not been
15   paid, and we provided that information back
16   to the CRA.
17       Q.    I haven't seen any letter or
18   anything like that. Do you know how that
19   dispute was communicated to TransUnion?
20       A.    Yes. It's through the e-OSCAR.
21   There's a file transfer process. So we
22   receive the ACDV on a file, and then we
23   communicate back through an electronic file

                                    16 (Pages 61 to 64)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4**

Michelle Dove                                              8/18/2023

Page 65

1    exchange.
2        Q.   Sure.  And I understand that, but
3    I'm asking if you know.  Do you know how
4    Ms. Dorsey communicated her dispute to
5    TransUnion that's reflected here, that was
6    investigated on October the 6th?
7        A.   I do not know.
8        Q.   Okay.  I don't either.  That's
9    why I was wondering.  Okay.  If we go back,
10   the next set of entries looks like October
11   the 21st.  It looks like more attempts to
12   contact Ms. Dorsey?
13       A.   Yes.
14       Q.   And then it looks like more
15   contacts through October 26th, 29th,
16   November 1st.  Does that look right?
17           MR. GOLDEN:  Form.
18       A.   It looks like we made a number of
19   attempts, and she never answered.
20       Q.   Got you.  And then finally on
21   November 1st, 2021, the first entry here on
22   ICS 3, there's an account note.  And Lori
23   Bagniewski and Barbara Hauke are both

Page 66

1    written here.  Can you translate what
2    happened here on November the 1st, 2021, at
3    1:44 in the afternoon?
4        A.   Sure.  So the redacted part, I'm
5    assuming is the last four digits of her
6    phone number, just to identify that it's an
7    inbound call.  VIC is verify the identity
8    of consumer.  MM is mini Miranda.  Ms. said
9    was never installed in home, service was
10   never installed in home.  October 2018, I'm
11   assuming is the service date.  Client says
12   was to remove bill.  So I think she's
13   claiming that AT&T said they would not bill
14   her.  Client services are not available in
15   her area.  It looks like our rep offered
16   her a settlement to take care of this.  Ms.
17   said not paying.  And we verified her
18   address, phone number, and email.
19       Q.   Does it reflect -- do you know,
20   did she call in here, she being Ms. Dorsey,
21   or did she answer a call from Ms.
22   Bagniewski?  Do you know?
23       A.   Because the first four of the

Page 67

1    phone number appear as the beginning of the
2    entry, that indicates it's an inbound call
3    from that phone number ending in the last
4    four digits.
5        Q.   Okay.  Let's see here.  All
6    right.  So both communications, it looks
7    like the best we can tell, Ms. Dorsey
8    called in; is that right?
9        A.   Correct.
10       Q.   Okay.  We'll move on up.  This is
11   still November 1st, 2021, around the same
12   time.  Can you tell me what's going on in
13   this very first or bottom block here when
14   it says updated November 1st, 2021, at
15   1:44:03 p.m.?
16       A.   It looks like it's moving out of
17   Barbara Hauke's work queue and into Lori
18   Bagniewski's queue.
19       Q.   Okay.  At the bottom, it says
20   last event changed from verify/CBR
21   investigation complete to dispute, answer
22   not required.  What does that mean?
23       A.   It's just indicating that there

Page 68

1    was another inbound phone call disputing
2    the debt.  And not required means it's a
3    dispute that's outside of the FDCPA
4    validation period.
5        Q.   Okay.  Looking again, it looks
6    like internal notes about assigning
7    collector and what phase; is that right?
8        A.   Yes.
9        Q.   That's February 20, 2022.  All
10   right.  So if we look at the top of ICS 2,
11   it looks like working team changed, AT&T WH
12   U-verse, CW phase to AT&T warehouse house.
13   Is that meaning that the debt -- or the
14   account is being warehoused again?
15       A.   It's just -- yes.  It's just
16   moving to a different phase of collections.
17       Q.   And then what's the significance
18   of this top entry, last event changed from
19   dispute, answer not required to new
20   business?  What is that all about?
21       A.   If you go up a little bit, I
22   believe this is just all related to moving
23   to a different phase.

BIRMINGHAM REPORTING SERVICE
(205) 326-4444
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4**

Michelle Dove                                                8/18/2023

Page 69

1      Q.    Okay.  Okay.  Got you.  2/20/22,
2    it looks like closed debt numbers, credit
3    monitor, return debt numbers, closed debt
4    numbers, status changed from active to
5    retained, the last event from new business
6    to retained collections.  What is the
7    significance of those five entries there at
8    the bottom of ICS 1?
9      A.    Again, this is all part of that
10    move to a different phase.  Routine
11    collections is an inactive collection phase
12    where the account is still placed with I.C.
13    System, but it's not in active collections.
14      Q.    Okay.  We saw in the notes that
15    on November the 1st, 2021, Ms. Dorsey
16    called in a second time and, again, said
17    that AT&T did not offer U-verse internet
18    service at her home and she didn't have the
19    service.  Did you see that in the notes?
20    And I can go back, if you would like.
21      A.    I don't recall exactly what it
22    says, but I believe you're stating it
23    right.

Page 70

1      Q.    Sure.  I'll scroll back down so
2    we're on the same page.  All right.  This
3    top entry on ICS 3, client says to remove
4    bill, client services are not available in
5    her area, and says never installed at home.
6    Does that indicate to you that that's what
7    Ms. Dorsey was communicating to Ms.
8    Bagniewski?
9      A.    Yes.
10      Q.    Okay.  Is there any indication
11    after November the 1st, 2021, here that Ms.
12    Bagniewski or anyone at I.C. System
13    contacted AT&T to see if what Ms. Dorsey
14    was saying about the service not being
15    available was correct?
16      A.    Well, we are constantly
17    communicating information back and forth
18    with AT&T.  So through our electronic file
19    transfer system, I believe the dispute
20    would have been re-communicated to AT&T.
21    And they also are sending us updated files
22    with balance adjustments, payment
23    information, so the files are constantly

Page 71

1    being updated.
2      Q.    I got you.  But what I'm saying
3    is there's no indication that there
4    was any specific contact with AT&T where
5    the goal was to verify or determine if what
6    Ms. Dorsey was saying was correct; am I
7    right about that?
8      A.    Well, we would have communicated
9    the dispute information back to AT&T.
10      Q.    Okay.  And then you're relying on
11    AT&T to respond, I guess?
12      A.    Yes.  If the information -- if
13    they believe that she didn't have service
14    or the debt is not due and owing, then the
15    process is they would recall the debt from
16    our inventory.
17      Q.    Okay.  So let's go back up, if we
18    can, to November the 20th.  And I'm going
19    to pull up what I'm going to mark as
20    Exhibit 3, if you'll bear with me for just
21    a minute.  Okay.
22
23

Page 72

1              (Plaintiff's Exhibit 3 was
2              marked for identification.)
3
4      Q.    All right.  Ma'am, I'm showing
5    you what I'm going to mark as Exhibit 3 to
6    your deposition.  And I will represent
7    these are the I.C. System's answers to my
8    client's interrogatories.  Have you seen
9    these before today?
10      A.    Yes.
11      Q.    If we look at interrogatory
12    number three -- and let me scroll through
13    it so you can see.  All right.  Number
14    three asked about facts and actions taken
15    with regard to the plaintiff's I.C. System
16    account.  And as part of the response, it
17    says in the first paragraph, defendant's
18    only contact with the creditor or potential
19    creditor regarding the plaintiff involved
20    the AT&T U-verse communication of
21    information related to the account on
22    December the 12th, 2020, and when defendant
23    closed the account February 20th of 2022.

18  (Pages 69 to 72)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4**

Michelle Dove                                                   8/18/2023

Page 73

1    Do you see that?
2        A.   Yes.
3        Q.   Do we know if the account was
4    placed on the 12th of December or the 28th,
5    or do you know either way?
6        A.   I would have to look back at the
7    ICS history at the very bottom.  It would
8    have the placement date.
9        Q.   I got you.  And then it says,
10   defendant closed the account February 20th
11   of 2022; is that right?
12       A.   That's what this says.
13       Q.   Okay.  Based on those notes, and
14   I can pull them back up, did the account
15   get closed on February 20th, 2022?
16       A.   Can we look at the notes?
17       Q.   Yeah.  Let me do that.  And I can
18   scroll up or down.  You just tell me what
19   you want to look at.
20       A.   It looks like on February 20th,
21   2022, it moved to retained collections.  I
22   don't believe that it was closed.
23       Q.   Okay.  So the interrogatory

Page 74

1    response is inaccurate or incorrect, or
2    what would your comment be?
3        A.   I don't believe that the word
4    closed is the right word.  I think that it
5    should say moved to inactive collections on
6    February 20th.
7        Q.   Explain to me what inactive
8    collections is.
9        A.   Inactive collections means we're
10   no longer making phone calls or sending
11   letters.
12       Q.   All right.  When it's inactive,
13   is it returned to AT&T?
14       A.   No.  It goes into a retained
15   collection status.  So it's still in our
16   inventory.  We're just not actively working
17   it.
18       Q.   Okay.  What has to occur for --
19   or what occurred that made this go to
20   inactive collections, anything
21   specifically, or was it just a function of
22   time or what?
23       A.   It was a function of time.

Page 75

1        Q.   Okay.  All right.  So as of
2    February 20th, 2022, it's fair to say I.C.
3    System was not making active efforts to
4    collect the account?
5        A.   Yes.
6        Q.   All right.  Would you agree with
7    me that when asking about -- in
8    interrogatory number three, asking about
9    communications, this indicates at least
10   that the only contact involving the AT&T
11   U-verse communication was when the account
12   was placed and when it says closed, but
13   moved to inactive.  Am I understanding that
14   right?
15       A.   Yes.  I think this answer is
16   interpreting communications to be
17   communications other than the file
18   transfers that are happening kind of
19   routinely throughout the placement.
20       Q.   Okay.  And that's what I was
21   going to ask you.  I didn't see that in
22   here.  So that was just inadvertently left
23   out or --

Page 76

1        A.   Yes.
2        Q.   But we don't -- looking at the
3    notes, do we know when those communications
4    were made, or is that an automatic process?
5        A.   It's a process that's constantly
6    happening behind the scenes.  Those files
7    are being transferred every day, multiple
8    times through the days.
9        Q.   When the account went to inactive
10   status, was AT&T notified of that
11   transition or change?
12       A.   I'm not sure.
13       Q.   Okay.  So we don't know if AT&T
14   was told the account is inactive or not?
15       A.   I'm not sure.
16       Q.   Okay.  This indicates -- and if
17   you don't know, it's fine.  Just tell me.
18   This response indicates there was some
19   communication to AT&T on February 20th,
20   2022.  Do you know what that is one way or
21   the other?
22       A.   I would have to look at the
23   account notes again.

19  (Pages 73 to 76)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4**

Michelle Dove                                                    8/18/2023

Page 77

1    Q.    All right.  Let me pull those
2  back up.  And, again, they cover two pages,
3  so I'm happy to scroll up or down as you
4  wish.
5    A.    Go down just a little bit,
6  please.
7    Q.    Yes, ma'am.
8    A.    Yeah.  My guess is, on February
9  20th, there was a communication to AT&T
10  that it was going into retained
11  collections.  But, again, that would have
12  been a standard communication with our file
13  transfer process.  So I'm not sure why -- I
14  don't believe that calling out February
15  20th, 2022, is the best response to that
16  interrogatory.
17    Q.    Okay.  Do you know, did I.C.
18  System continue to report the AT&T U-verse
19  account to TransUnion after February 20th,
20  2022?
21    A.    I believe so.
22    Q.    The reports are made monthly, are
23  they not?

Page 78

1    A.    The reports are made weekly.
2    Q.    Weekly.  All right.  So do you
3  know or based on what we're looking at, was
4  this AT&T U-verse debt allegedly owed by
5  Ms. Dorsey being weekly reported to
6  TransUnion from December of 2020 all the
7  way through 2022?  Do you know?
8    A.    I can't tell from this document.
9  It wouldn't have been reported on the
10  placement date.  There's a certain period
11  of time where we, you know, try to contact
12  the consumer, send letters.  It doesn't get
13  reported on day one.
14    Q.    I got you.  When does it usually
15  start being reported after placement?
16    A.    Usually not before 36 days,
17  sometimes 45 days, sometimes -- it really
18  just depends on the collection strategy
19  that's applied to the account.  But I think
20  the earliest it would report would be 36
21  days.  Some are much later.  Healthcare
22  debt, we have to wait a lot longer to be
23  able to credit report.  So really, it just

Page 79

1  depends on the account.
2    Q.    With this account, it's not
3  reflected when it was being reported in the
4  notes, is it?
5    A.    I think if you looked at the ICS
6  summary, it usually says first credit
7  reported and then it has the date at the
8  top of that page.
9    Q.    Okay.  All right.  And I think I
10  got something that looked like that was
11  admittedly very, very blurry.
12    MR. SEALS:  Do you -- Mr. Golden,
13  do you happen to have that ICS summary
14  she's mentioning?
15    MR. GOLDEN:  It will take me a
16  minute to go and find it and send it to
17  you.
18    MR. SEALS:  I hate to waste
19  anybody's time, but if you don't mind, I
20  would very much appreciate it.
21    MR. GOLDEN:  Okay.  Let's take
22  like a five-minute break and let me find
23  it.

Page 80

1    MR. SEALS:  That's fine.  And I'm
2  going to step out for just a moment.
3
4    (Break taken.)
5
6    Q.    Ms. Dove, before we took that
7  break, we were discussing credit reporting
8  by I.C. System regarding Ms. Dorsey's
9  account.  And your attorney was kind enough
10  to send over what looks like a fairly clear
11  version of a document that was previously
12  produced.  I'm going to mark this as
13  Exhibit -- I believe I'm on four.
14    MR. SEALS:  Jennifer, thumbs up?
15  Okay.  This will be Exhibit 4, which will
16  sort of mess up some of the numbering I
17  have, but that's fine.  That's between me
18  and Jennifer.
19
20    (Plaintiff's Exhibit 4 was
21      marked for identification.)
22
23    Q.    What am I looking at right here

BIRMINGHAM REPORTING SERVICE
(205) 326-4444
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

Michelle Dove                                          8/18/2023

Page 81

1   in Exhibit 4?
2        A.   This is a screenshot of
3   information in our collection software.  So
4   this is showing the information provided to
5   the CRAs related to Ms. Dorsey's account.
6        Q.   And can you very briefly walk me
7   through this and tell me exactly what I'm
8   looking at right here?
9        A.   Sure.  So if you start at the
10  bottom --
11       Q.   Yes, ma'am.
12       A.   -- left-hand corner, you'll see
13  under the activity date, that's telling you
14  the date the information was actually
15  communicated to the CRAs.
16       Q.   Okay.
17       A.   So this would indicate that the
18  debt was first credit reported on February
19  28th, 2021.  If you move across the special
20  comment, we reported debts with the AW
21  code.  That would be a natural disaster
22  code.  That was related to COVID.
23       Q.   Okay.

Page 82

1        A.   So when the debt had the AW code,
2   our understanding is that it wasn't visible
3   to creditors, but it was available to
4   consumers.  They could see it on the
5   report, but it wasn't negatively impacting
6   the score.  And then if you move across,
7   you can see the amount of the debt, $151,
8   first name, last name of the debtor.  And
9   if you move all the way over to the right,
10  you can see that it was reported to
11  Experian, Innovis, and TransUnion.  And
12  this debt was not reported to Equifax.
13       Q.   Okay.  That makes sense.  So
14  very, very briefly, as I walk through this,
15  it's first reported February 28th as you
16  said.  It has the natural disaster code, so
17  it would not have been visible to
18  creditors.  It looks like the next time is
19  March 7th, 2021, which is temporally
20  related to that phone call where she called
21  in and disputed it, and it looks like it's
22  marked disputed on March 7th, 2021.  Am I
23  correct about that?

Page 83

1        A.   Yes.  March 7, 2021, is when the
2   dispute code was sent to the CRAs.
3        Q.   Right.  And that, again, says AW,
4   meaning it wasn't visible at least at that
5   time due to COVID; correct?
6        A.   Yes.
7        Q.   All right.  Then it moves up.
8   The next entry is March 6th, 2022, update.
9   It's marked as disputed.  The AW code is
10  missing.  Does that mean it was at that
11  point visible to creditors had they cared
12  to look?
13       A.   Yes.  And I just want to be
14  clear.  Our understanding is that it wasn't
15  visible to creditors.  I'm not entirely
16  sure.  It's kind of like the credit score.
17  I'm not entirely sure how the CRAs do what
18  they do.
19       Q.   That's perfectly fine.  I don't
20  know either.  I appreciate that, and I
21  think we're both sort of flying blind
22  there.  It says extract type, update on
23  March 6th, 2022.  Do you know if any

Page 84

1   information was specifically updated, or
2   would that have been the removal of that
3   comment?  Or do you know one way or the
4   other?
5        A.   I believe the update was the
6   removal of the code.
7        Q.   Okay.  And then October 30th,
8   2022, called with a request to delete;
9   fair?
10       A.   Yes.
11       Q.   Okay.  All right.  So you
12  testified earlier that this is being
13  reported or -- I don't want to paint you in
14  the wrong light here.  It may have been
15  reported weekly.  Looking at this, was it
16  reported weekly or was it just reported on
17  these specific dates in Exhibit 4?
18       A.   The file goes weekly.
19       Q.   Oh, okay.
20       A.   My understanding is that when the
21  information changes, then there's an
22  update.
23       Q.   Okay.  Okay.  I got you.  So it

                                21  (Pages 81 to 84)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4**

Michelle Dove                                                8/18/2023

Page 85

1  was being reported weekly, but this
2  reflects when any data was updated or
3  changed in some way; fair?
4      A.   Correct.
5      Q.   Okay.  All right.  That's fine.
6  That makes sense to me.  Okay.  I'm going
7  to move back to Exhibit 2, if I can.  Do
8  you see -- and this is -- let's see here.
9  Do you see May 23rd, 2022, at 6:48:01,
10  there are two entries?
11      A.   Yes.
12      Q.   Okay.  It appears to me, and
13  correct me if I'm wrong, that at that date
14  and time, I.C. System received an ACDV from
15  TransUnion.  Is that what it appears to
16  you?
17      A.   Yes.
18      Q.   Okay.  And I.C. System is aware
19  this is the dispute that's made the basis
20  of Ms. Dorsey's Fair Credit Reporting Act
21  claim?  Do you understand that?
22      A.   I believe that's true.
23      Q.   I don't think we made any claim

Page 86

1  regarding -- there were two disputes.  It
2  looks like one prior, back in '21.  We
3  haven't made any claims related to that.  I
4  just want to be clear about that.  So I'm
5  asking about the dispute.  We'll talk about
6  the dispute, I mean primarily this one in
7  May of '22.  Is that okay?
8      A.   Yes.
9      Q.   Okay.  All right.  So the bottom
10  says last event changed from retained
11  collections to verify, CBR investigation
12  complete.  What does that mean?
13      A.   That means that we received the
14  ACDV.  I can tell by this update it was an
15  ACDV from TransUnion in which the consumer
16  claimed the debt was not hers.  And so we
17  took the information in the ACDV and
18  compared it to the information in ICE and
19  verified that the name -- the data points
20  are name, address, in this case, social
21  security number, that it all matched and
22  that it was, in fact, her debt and verified
23  that information back to the CRAs.

Page 87

1      Q.   Okay.  It also says Code 118,
2  balance/past due amount/verify.  Do you see
3  that?
4      A.   Yes.
5      Q.   Okay.  Do I take that to read
6  that TransUnion communicated in the ACDV
7  that the dispute was assigned codes, 1 for
8  not mine and 118 regarding balance past
9  due?
10      A.   I believe that's correct.
11      Q.   Verify response, 23 CC, debt
12  numbers, and then there's a number kind of
13  cut off there.  What does all that mean?
14      A.   The verify response is the code
15  that we sent back.  So the 23 is to verify
16  that the information was correct.
17      Q.   And debt numbers is just that
18  internal recordkeeping; am I right?
19      A.   I believe so.
20      Q.   Okay.  So if I'm reading this
21  right, if I'm translating it right, ACDV
22  received, had Code 001 and Code 118, both
23  of those items of information were verified

Page 88

1  per the Code 23 CC for the debt number that
2  relates to the internal stuff in I.C.
3  System's records, and then the last event
4  was changed from retained collections up to
5  verify CBR, which is credit bureau
6  reporting investigation complete.  Am I
7  correct in that, or did I get any of that
8  wrong?
9      A.   I think you got it right.
10      Q.   Okay.  All right.  So reading
11  this, reading this ACDV entry, TransUnion
12  was telling I.C. System that Ms. Dorsey
13  disputed that the account was hers and that
14  she also disputed the balance or past due
15  amount.  That's what's communicated by
16  TransUnion; right?
17      A.   Yes.
18      Q.   All right.  And did I.C. System
19  conduct an investigation of Ms. Dorsey's
20  dispute in May of 2022?
21      A.   Yes.
22      Q.   Did I.C. System have sufficient
23  information to conduct an investigation of

BIRMINGHAM REPORTING SERVICE
(205) 326-4444

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

Michelle Dove                                                    8/18/2023

Page 89

1    her dispute in May of '22?
2        A.    Yes.
3        Q.    As part of the ACDV process,
4    TransUnion or any other credit reporting
5    agency will send a copy of any letter or
6    any documents a consumer submits with his
7    or her dispute; is that correct?
8            MR. GOLDEN:  Form.
9        A.    I am not familiar with
10   TransUnion's policy.  I know that in this
11   case we did not receive any attachments.
12       Q.    All right.  Hang on one second.
13   Bear with me real briefly here.  All right.
14   I want to show you a document that I
15   received from TransUnion.  And, first, let
16   me ask you this:  Have you ever seen this
17   before?
18       A.    I haven't seen this exact
19   document.
20       Q.    Okay.  Do you know what this
21   document is by any chance?
22       A.    It looks like information related
23   to -- I'm not sure.

Page 90

1        Q.    Sure.  And let me be clear.  I
2    don't want you to guess.  And the only
3    reason I bring this up is, this was
4    represented to me to be TransUnion's record
5    of the ACDV and response.  I'll just tell
6    you that.  I'm not verifying that.  I'm
7    just saying that's what was represented to
8    me.  And as part of this, they claimed, it
9    looks like, update authored by Katie
10   Willow.  Do you know if Ms. Willow is an
11   employee of I.C. System?
12       A.    She is a former employee.
13       Q.    Okay.  At the time she worked at
14   I.C. System, would she have been tasked
15   with doing or investigating disputes?
16       A.    Yes.
17       Q.    All right.  So it's not unusual
18   or it's not out of the blue that her name
19   would appear here as the person that
20   TransUnion said authored the dispute
21   response; is that fair?
22       A.    Well, she was the manager of the
23   group, so I'm not sure if she was the

Page 91

1    person responsible for this specific
2    investigation.  But she was -- and I'm not
3    sure.  It's come to light that her name
4    remained on these reports after she was no
5    longer working for I.C. System.  But I
6    don't dispute that she was involved in our
7    ACDV process during the time she worked for
8    us.
9        Q.    Okay.  I got you.  And if we look
10   at this over here, it says it -- it's got
11   my client's name, address, social, date of
12   birth, phone number, and then it shows the
13   dispute, not his/hers, the dispute balance,
14   amount past due.  And we saw that in the
15   notes, did we not?
16       A.    Yes.
17       Q.    Okay.  That's fine.  And the
18   reason I'm asking about this and even
19   brought this up is, up here, it says image
20   yes-1, which based on my own personal
21   experience I understand means they have
22   scanned in and sent an image with the ACDV.
23   Is it I.C. System's testimony that it did

Page 92

1    not receive a copy of Ms. Dorsey's dispute
2    letter?
3        A.    Yes.
4        Q.    Okay.
5        A.    I should correct that to say, I
6    don't believe we received it in conjunction
7    with the ACDV.  I believe it's in our file
8    now.
9        Q.    Okay.  Just so I'm clear because
10   this is important to me, prior to the
11   lawsuit at issue in this case being filed,
12   did I.C. System get a copy of Ms. Dorsey's
13   dispute letter?
14           MR. GOLDEN:  Form.
15       A.    I would have to look at the
16   account history to see when or if that was
17   received.
18       Q.    Okay.  Can we do that?  Because
19   this is an important point going forward in
20   this deposition.
21       A.    Yes.
22       Q.    I can pull this up.  Though, I'll
23   tell you, I don't know if that's in the

                                    23 (Pages 89 to 92)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4**

Michelle Dove                                                    8/18/2023

Page 93

1    redactions or not. I don't have an
2    unredacted copy. If you want to take a
3    minute or two and look and come back,
4    that's perfectly okay.
5        A.    Yes.
6        Q.    Okay. Let's just take a moment
7    and then -- that's fine.
8
9            (Break taken.)
10
11       Q.    Ms. Dorsey, have you had a chance
12   to look at the helpful documents?
13       A.    Yes.
14       Q.    When did I.C. System first
15   receive my client's dispute letter she
16   wrote to TransUnion regarding this account?
17       A.    After litigation had started.
18       Q.    Does I.C. System maintain copies
19   of the ACDVs or ACDV responses for
20   disputes?
21       A.    If there are attachments, those
22   are saved in our system. Oftentimes, there
23   aren't attachments and then we don't --

Page 94

1    there's not really anything to save. We
2    receive the disputes in e-OSCAR, and then
3    we respond back in e-OSCAR.
4        Q.    Does I.C. System, in e-OSCAR,
5    have access to this particular dispute in
6    May of 22nd?
7        A.    The disputes are only available
8    for 90 days after the dispute is responded
9    to. And so in this instance, the dispute
10   would have been deleted before the
11   litigation was received.
12       Q.    Okay. All right. So that
13   we're -- and I won't beat the dead horse.
14   But so I'm absolutely clear, I.C. System's
15   testimony is that it did not receive a copy
16   of the May 22nd dispute letter from my
17   client until after litigation was
18   commenced; fair?
19       A.    Yes.
20       Q.    And so TransUnion never provided
21   a copy of that letter to I.C. System; is
22   that correct?
23       A.    I believe so.

Page 95

1        Q.    Okay. You told me e-OSCAR Code
2    001 means not mine. And I think you told
3    me that to investigate that, I.C. System
4    verified the name, address, and social
5    security number it had in its files with
6    what was on the ACDV. Did I hear you
7    correctly?
8        A.    I believe that's part of the
9    process. We look at different data points,
10   but those are some of the data points that
11   we use.
12       Q.    Are you aware of anything beyond
13   name, address, social security number, that
14   was looked at or reviewed in investigating
15   my client's dispute in May of '22?
16       A.    I'm not sure. I think because
17   the name and the social security number and
18   the address all matched, we were -- our
19   investigation process was confident that we
20   had the right person.
21       Q.    Okay. And then also, as we
22   pointed out, there was a dispute regarding
23   balance and/or amount past due. Do you

Page 96

1    recall that?
2        A.    Yes.
3        Q.    All right. What would've been
4    reviewed or what was reviewed to
5    investigate that dispute?
6        A.    We would have reviewed the amount
7    the creditor claimed was validly due and
8    owing. And if it matched the amount we
9    were reporting to the bureaus, we would
10   have verified that as accurate.
11       Q.    Okay. Hang on one second. Okay.
12   Let me show you what I will mark as
13   Exhibit 5.
14
15           (Plaintiff's Exhibit 5 was
16            marked for identification.)
17
18       Q.    Exhibit 5, this is the dispute
19   letter that I was referring to. Have you
20   seen this before?
21       A.    Yes.
22       Q.    Okay. And this was not received
23   by I.C. System until after litigation;

BIRMINGHAM REPORTING SERVICE
(205) 326-4444
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

Michelle Dove                                                    8/18/2023

Page 97

1  right?
2      A.    Correct.
3      Q.    Did you read this, by any chance,
4  in preparation for today?
5      A.    I did not.
6      Q.    Okay. That's fine. In looking
7  at it -- and take your time, if you would
8  like to take a look at it closer. It's not
9  too terribly long. Would you agree that
10  Ms. Dorsey here is again disputing that she
11  ever had the service or that it was
12  available at her home?
13      A.    Yes.
14          MR. GOLDEN: Form.
15      Q.    Okay. And then nowhere in
16  here -- or let me ask you this: Does it
17  appear from this letter, that was the
18  dispute letter involved here, that Ms.
19  Dorsey is saying that the account does not
20  belong to her?
21          MR. GOLDEN: Form.
22      A.    I'm sorry. Can you say that
23  again?

Page 98

1      Q.    Sure. Dispute Code 001, not
2  mine, was one of the dispute codes sent;
3  right?
4      A.    Correct.
5      Q.    Looking at this, and it's only
6  really the one page, does it appear that
7  she's saying that the account is not hers?
8          MR. GOLDEN: Form.
9      A.    Yes.
10      Q.    Okay. Where is it saying the
11  account is not mine or along those lines?
12      A.    Well, I think the entire tone is
13  she's saying -- not mine is what she
14  indicated when she filed the ACDV, and I
15  think the tone of this is saying it's not
16  mine.
17      Q.    Well, hang on. She doesn't file
18  an ACDV, TransUnion does; is that right?
19      A.    No.
20      Q.    Are you saying that Ms. Sharon
21  Dorsey filed an ACDV?
22      A.    Actually, I'm sorry. I should
23  correct that. I don't know how this works.

Page 99

1  Sometimes a consumer will electronically
2  complete the ACDV and attach a file.
3  Perhaps, in this case, she sent the letter
4  to TransUnion and they selected the codes.
5  I'm not exactly sure how that worked here.
6      Q.    The evidence so far is that Ms.
7  Dorsey sent the letter and then that
8  triggered --
9      A.    Well, I don't know that that's
10  true or not. We never got a copy of the
11  letter, so I saw this in litigation. I'm
12  not sure if any of that -- I don't know
13  anything about that.
14      Q.    Okay. Yeah, and I understand
15  that. Let me ask you this: Per I.C.
16  System's policies, okay, had ICS received
17  this letter along with the ACDV from
18  TransUnion, would it have done anything
19  differently in the investigation that it
20  conducted of the dispute?
21          MR. GOLDEN: Form.
22      A.    Yes.
23      Q.    What would it have done

Page 100

1  differently had it gotten this letter?
2          MR. GOLDEN: Form.
3      A.    The letter would've been directed
4  to an individual on our investigation team
5  to review the letter and conduct further
6  investigation. That's what would've been
7  different in terms of I.C. System's
8  handling. I don't know that, based on the
9  information in the letter, the outcome of
10  the investigation would have been
11  different. But I know that we didn't get
12  the letter because I can see in the notes
13  it wasn't referred to one of the members of
14  our ACDV team for an additional
15  investigation. But, again, I'm not sure
16  that the outcome would have been different
17  had we received it.
18      Q.    Okay. And that's because y'all
19  didn't receive it, so we can't really -- we
20  don't have a crystal ball; right?
21      A.    Correct.
22      Q.    Okay. Let me ask you this: Per
23  I.C. System's policies, if you know, based

25  (Pages 97 to 100)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4**

Page 101

1  on the content of this letter, would this
2  have triggered one of the ACDV team members
3  to contact AT&T and ask if the service was
4  available or not?
5          MR. GOLDEN:  Form.
6      A.   I'm not sure if based on this
7  information they would have requested more
8  verification.  You know, the address here
9  matches.  The P.O. Box matches, the debt
10  number, the social security number.  Again,
11  I believe this would have been communicated
12  to AT&T.  I'm not sure what the next steps
13  would be.  It's not what happened here, so.
14     Q.   Yeah.  Well, let me ask you this:
15  Per I.C. System policy, let's just focus on
16  dispute Code 001, not mine, for the moment.
17  Okay.  TransUnion's ACDV says that's the
18  dispute code or one of them it assigns to
19  it.  I.C. System has this letter where it
20  matches the name, the address, birth date,
21  last four of her social security number.
22  Would I.C. System have -- would have --
23  golly -- I'm tripping over my words.

Page 102

1  Forgive me.  Would I.C. System have done
2  anything different with regard to dispute
3  Code 001 if it had this letter?
4          MR. GOLDEN:  Form.
5      A.   I'm not sure.  I don't believe
6  so.  Typically, when a consumer is claiming
7  fraud or identity theft or some sort of
8  wrongdoing, they would select a fraud code,
9  or there's different ACDV codes that
10  indicate stolen identity or someone opened
11  the account in my name.  In that case,
12  there's a different fraud investigation.
13  Here, this seems to be a contract dispute
14  where a consumer is saying, I don't owe the
15  debt.  AT&T, I believe, still maintains
16  that she owes the debt.  I'm not aware -- I
17  haven't reviewed the contract between AT&T
18  and this consumer, but my understanding is
19  she bought services and AT&T is claiming
20  she owes the debt.  So based on the
21  information here, her claiming this is not
22  my debt, AT&T is saying, well, no, the name
23  matches, the address matches, the social

Page 103

1  matches, you are the person who originally
2  purchased these services.
3      Q.   Okay.  If what she says in this
4  letter is true, AT&T U-verse is not
5  available at my home address, to this day
6  it's not available, I have not had that
7  service at my current home, I don't owe
8  this money because I've never had the
9  service and it was never available to me,
10  if that's accurate, does she still owe this
11  debt or does I.C. System know?
12          MR. GOLDEN:  Form.
13     A.   Based on the information we have,
14  she does owe the debt.  AT&T continued to
15  stand by it.  We provided them the dispute
16  information.  They didn't recall the debt.
17  They didn't tell us that the debt wasn't
18  hers.  So we're providing the information
19  to the creditor.  They continue to maintain
20  the debt is validly due and owing.
21     Q.   Okay.  I think we saw I.C. System
22  verified the information that was reported
23  to TransUnion about this account was

Page 104

1  correct; right?
2      A.   Yes.
3      Q.   Okay.  What I have is that the
4  response was sent on May 23rd, 2022.  Does
5  that comport with those notes, or do you
6  have any reason to dispute that?
7      A.   I would have to look at the notes
8  again.  Sorry.
9      Q.   No.  You're perfectly fine.  This
10  is your examination.  The 5/23/22 where it
11  says investigation complete, would that
12  have been the time that the response was
13  sent?
14     A.   Back to TransUnion, yes.
15     Q.   Yes.  Okay.
16          MR. SEALS:  John, will you mute?
17  Thank you.
18     Q.   All right.  So part of my
19  question though is confusing, and maybe you
20  can shed some light on this.  Reading the
21  interrogatories, it said that the account
22  was closed in February of '22.  If the
23  consumer disputes an item of information on

BIRMINGHAM REPORTING SERVICE
(205) 326-4444

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4**

Michelle Dove                                          8/18/2023

Page 105

1    a closed account, what does the -- what are
2    the policies and procedures in that
3    instance?
4        A.    Well, I kind of tried to explain
5    this.  February 20th, 2022, is when it went
6    to retained collections.  So the active
7    collections really is closing, but we still
8    retain the account.  And so if a dispute is
9    received during that time, it's treated the
10   same as if it had been received during
11   active collections.
12       Q.    Okay.  And that was kind of my
13   question.  And based on the notes -- and I
14   will scroll up some for you.  Well, never
15   mind.  Based on that other exhibit that
16   showed the -- right here on October the
17   30th, 2022, I.C. System requested that the
18   credit bureaus, including TransUnion,
19   delete the tradeline that was being
20   reported; is that right?
21       A.    Yes.
22       Q.    What was the reason for
23   requesting this I.C. System tradeline be

Page 106

1    deleted?
2        A.    Because there was active
3    litigation involving the account.
4        Q.    Is that I.C. System's policy,
5    that if there's active litigation, to
6    delete or ask that the account be deleted?
7        A.    Yes.
8        Q.    So I'm clear, nothing in the
9    account records, notes, because I know
10   there's all those redactions or whatever,
11   nothing changed to cause it to be deleted
12   other than the lawsuit got filed; is that
13   accurate?
14       A.    Right.  Correct.
15       Q.    All right.  Let me show you what
16   I will mark as Exhibit 6.
17
18            (Plaintiff's Exhibit 6 was
19             marked for identification.)
20
21       Q.    These are requests for
22   admissions.  As an attorney, are you
23   generally familiar with what requests for

Page 107

1    admissions are?
2        A.    Yes.
3        Q.    We'll look at number five here.
4    And I asked I.C. System to admit or deny
5    that I.C. System did not rely on any source
6    of information other than I.C. System's own
7    internal records in the reinvestigation of
8    plaintiff's May 11, 2022, dispute.  I.C.
9    System's counsel and I had to meet and
10   confer regardless, and that's kind of what
11   this says over here.  It's denied.  Do you
12   see that?
13       A.    Yes.
14       Q.    Okay.  What information, other
15   than I.C. System's own internal records,
16   did I.C. System rely on in investigating my
17   client's May 2022 dispute?
18       A.    I.C. System's collection software
19   is called ICE.  And ICE and AT&T's
20   collection software, which is called Karma,
21   they're hooked up, I guess, or they access
22   each other.  Sorry.  I'm not IT, but they
23   communicate or they pass information.  And

Page 108

1    so in order to do the investigation, we
2    would be relying on the information in ICE
3    and on the information that's in AT&T's
4    collection software called Karma.
5        Q.    Okay.  All right.  In reading
6    this four, it appeared that all I.C. System
7    did to investigate this May of 2022
8    dispute, and we can go back and look if we
9    need to, was to verify that the information
10   in its system matched the information on
11   the ACDV; is that right?
12       A.    I'm sorry.  Could you say that
13   again?
14       Q.    Sure.  To investigate, it's my
15   understanding what happened or what
16   transpired was the person conducting the
17   investigation on behalf of I.C. System
18   matched the information in the ACDV with
19   what was contained in I.C. System's
20   records?
21       A.    Correct.
22       Q.    When we say I.C. System's
23   records, are we including AT&T's Karma

BIRMINGHAM REPORTING SERVICE
(205) 326-4444
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

Michelle Dove                                          8/18/2023

Page 109

1    system as well in that?
2        A.    Well, I think so because you can
3    see in the account notes when it says live
4    line or when there's certain information
5    provided by the creditor, those are updates
6    that we're getting from the creditor in
7    realtime that are uploaded into our
8    collection system.
9        Q.    Okay.  Other than Karma and ICE,
10   if I'm using those correctly, did I.C.
11   System rely on any other source of
12   information when it verified or, excuse me,
13   when it investigated and verified the
14   disputed information in May of '22?
15       A.    No.
16       Q.    Okay.  Let me show you this.
17   Just I have a quick question about this.
18   Hang on.  So some time ago, we sent a
19   subpoena to AT&T asking for certain
20   information, specifically any documents
21   related to Ms. Dorsey's account and any
22   information showing that U-verse was
23   available at her home.  All right.  In

Page 110

1    response, I've got what I'm showing you
2    here as Exhibit 7.
3
4            (Plaintiff's Exhibit 7 was
5             marked for identification.)
6
7        Q.    It just says, we -- I will
8    highlight it for you -- other than this
9    legal language, I'm unable to find any
10   information responsive to your request.  Do
11   you see that?
12       A.    Yes.
13       Q.    I'm curious because it may be an
14   issue I need to take up with AT&T.  Does
15   I.C. System have any documentation from
16   AT&T or any records from AT&T that show any
17   communications between AT&T and Ms. Dorsey?
18       MR. GOLDEN:  Form.
19       A.    I believe that we did request
20   validation, and we did get some information
21   from the creditor concerning this account.
22       Q.    Okay.  And so is this -- as far
23   as you know, does this appear to be

Page 111

1    correct, that there's no information in
2    response to my request at AT&T for
3    documents relating to the account?
4        MR. GOLDEN:  Form.
5        A.    I'm not really sure why.  I don't
6    have any knowledge on that.
7        Q.    Okay.  That was just confusing to
8    me.  I appreciate that.  All right.  And
9    I'm about done.  But let me ask you this, I
10   have another exhibit I can show if I need
11   to.  Am I correct, based on your prior
12   testimony, that I.C. System doesn't know if
13   U-verse service was available at my
14   client's home at any point?
15       A.    I have no idea.  I would assume
16   it is because they signed a contract, but I
17   don't know.
18       Q.    Have you seen a contract that was
19   signed because I have not?
20       A.    I believe that we received terms
21   of service.  I don't know if it was signed.
22       Q.    Okay.  And then so I'm clear,
23   I.C. System did not undertake any

Page 112

1    independent investigation to see if U-verse
2    service was available at my client's home
3    or not, did it?
4        A.    Well, the way it works, we're not
5    really investigating that type of
6    information.  The creditor places an
7    account and represents that the debt is
8    validly due and owing.  And so they have a
9    contractual obligation to verify the
10   validity of the debt and to keep us
11   updated.  And as long as they continue to
12   do that, we trust that the debts are
13   validly due and owing.
14       Q.    Has I.C. System, if you know,
15   asked AT&T for any kind of indemnity or
16   anything in this instance based on whatever
17   contracts y'all have?
18       A.    I don't believe so.
19       Q.    I'll show you finally what will
20   be Exhibit 8.
21
22           (Defendant's Exhibit 8 was
23            marked for identification.)

28 (Pages 109 to 112)

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4

Michelle Dove                                                    8/18/2023

Page 113

1
2          Q.    And I'll represent this is
3    something I found.  I plugged in my
4    client's address on the AT&T website
5    yesterday asking what services were
6    available.  There's her address, 899
7    Honeycutt, and it just says AT&T internet
8    is not available at your address.  Does
9    I.C. System have any reason to dispute that
10   this is correct, that this AT&T internet is
11   not available at her home as of at least
12   yesterday?
13         MR. GOLDEN:  Form.
14         A.    I don't have information.  I'm
15   not sure that that address was provided in
16   connection with this account.
17         Q.    Do we want to go back and look?
18         A.    Sure.
19         Q.    All right.  Let's see here.  So
20   where we have verified address, that would
21   have been in November?
22         A.    Yeah.  I think the easiest way to
23   do this is to go to the account summary and

Page 114

1    at the bottom -- oh, did you --
2          Q.    I don't have an account summary.
3          THE WITNESS:  Dale, I provided
4    you a new redacted account summary.  Is
5    there any chance you could email it?  I
6    mean, we can go through all of this again.
7          MR. SEALS:  Yeah.  I want to save
8    time.  If there's a quick way to do it, I'm
9    all for it.
10         MR. GOLDEN:  I don't know how
11   long it takes for my email to get to you.
12   Right.
13         MR. SEALS:  I'm just scrolling
14   through here while we're -- that's my
15   address.  That's not here.  There's the
16   P.O. Box.
17         MR. GOLDEN:  All right.  Whitney,
18   I just emailed it.
19         MR. SEALS:  Thank you, Dale.  One
20   moment.  I'll get it.  Are you looking at
21   my email right now?  There it is.  Got it.
22         MR. GOLDEN:  Considerably faster
23   than mine.

Page 115

1          Q.    All right.  Here we go.  All
2    right.  If you'll just give me one moment,
3    I have not seen this before.  So let me
4    just look.
5          A.    Okay.
6          Q.    And I'm going to mark this as
7    Exhibit 9.
8
9          (Plaintiff's Exhibit 9 was
10             marked for identification.)
11
12         Q.    And this is a redacted account
13   summary; is that right?
14         A.    Yes.
15         Q.    Okay.  All right.  So if I look
16   down through this, let's see.  Just so I'm
17   clear, is there any reason this is blank or
18   is this how it's supposed to look?
19         A.    Well, it's not supposed to look
20   that way.  But this is how every single
21   account summary prints, so.
22         Q.    Okay.  Understood, understood.
23   Okay.  Debtor, contact, there's my name,

Page 116

1    P.O. Box verified.  So did I.C. System ever
2    have her home address?
3          A.    No.
4          Q.    We can look back at it, but her
5    home address is contained in her letter she
6    sent, I believe.
7          A.    On the first line.
8          Q.    Yes, ma'am.  Okay.  So had I.C.
9    System gotten the letter, they would have
10   had the home address.  Would you agree with
11   that?
12         A.    Yes.
13         Q.    Okay.  Assuming that's her home
14   address; right?
15         A.    Yes.
16         Q.    Okay.  So debtor addresses,
17   social security number, nothing here.  And
18   I don't need to know specifics.  What is
19   the phase history?  Is that just what we
20   talked about, how it went from active,
21   inactive, litigation, that sort of thing?
22         A.    Yes.
23         Q.    Okay.  And then looking at this,

29  (Pages 113 to 116)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4**

Michelle Dove                                                  8/18/2023

Page 117

1  how many letters were sent to her?
2      A.  Two, S means sent and delivered.
3  X means not sent.  If it said M, it would
4  say mail returned.  So if it says S, we
5  know it was mailed and not returned.
6      Q.  All right.  And then we see the
7  balance here; right?
8      A.  Correct.
9      Q.  And then some notes, which look
10 like they match the account notes,
11 basically, with regard to the communication
12 with Ms. Dorsey; is that right?
13     A.  Yes.  It's basically the account
14 history and just kind of scrubbing out all
15 the admin updates and getting to kind of
16 the meat of the notes.
17     Q.  Okay.  And then it looks like
18 phone number history; is that right?
19     A.  Correct.
20     Q.  Then debt number, is that AT&T's
21 account number or is that y'all's?  Do you
22 know?
23     A.  Debtor is an internal ICE number.

Page 118

1  CDN is client debt number.
2      Q.  Latest activity, does this mean
3  anything?
4      A.  It's just like significant.  You
5  can see the first credit reported date,
6  last credit reported.  It's just kind of
7  significant dates in the collection
8  history.
9      Q.  Okay.  All right.  This document
10 I'm looking at, Exhibit 9, would this have
11 been available to whomever wanted to look
12 at it in and about investigating Ms.
13 Dorsey's dispute?
14     A.  Yeah.  I guess you can pull this
15 out of the account notes, but really,
16 typically, someone would just go into ICE
17 and look at this information.  It would be
18 presented differently, but all this same
19 information would be in the ICE collection
20 system.
21     Q.  Is this ICE notes that you're
22 talking about, like Exhibit 2 that we
23 looked at?

Page 119

1      A.  Well, both of these are reports
2  that are pulled out of our collection
3  software.
4      Q.  Okay.  All right.  So it might
5  look differently.  This is how it looks
6  when it's assembled and printed?
7      A.  Correct.
8      Q.  Okay.  All right.  But no
9  meaningful difference, other than how it
10 looks; is that fair?
11     A.  Correct.  The information is the
12 same.  It's just presented differently.
13     Q.  That's what I'm asking you.  All
14 right.  Let me ask you this:  Had I.C.
15 System determined that U-verse service had
16 never been available at Ms. Dorsey's
17 address, would it have requested that
18 TransUnion delete the account?
19         MR. GOLDEN:  Form.
20     A.  If I.C. System determined the
21 debt was not a valid debt, we would have
22 deleted credit reporting.
23     Q.  I think I'm done, unless

Page 120

1  Mr. Golden has a bunch of questions.
2          MR. SEALS:  May I have just a
3  couple of minutes to call my co-counsel and
4  make sure I didn't miss anything because
5  he's smarter than I am?
6          MR. GOLDEN:  Of course.
7          MR. SEALS:  One moment.  Thank
8  you, guys.
9
10         (Break taken.)
11
12     Q.  All right.  Ms. Dove, very, very
13 briefly and I think I'm done for now.
14 Based on the account notes we have seen and
15 based on your information at I.C. System,
16 is it true that no one at I.C. System at
17 any time specifically contacted AT&T about
18 this account, other than the automated
19 interactions we have discussed?
20     A.  That's true.
21     Q.  Okay.  And is it also true that
22 no one at AT&T contacted I.C. System
23 specifically about this account, other than

BIRMINGHAM REPORTING SERVICE
(205) 326-4444

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4**

Michelle Dove                                              8/18/2023

Page 121

1   the automated interactions we discussed
2   today?
3        A.    That's true.  I should say that
4   they have provided debt validation since
5   the lawsuit was filed, but prior to the
6   lawsuit, that's true.
7        Q.    Thank you for clarifying that.
8   Yeah.  That's the timeframe I'm thinking
9   of.  Did you understand all my questions
10  today?
11       A.    Other than when I told you I
12  didn't, yes.
13       Q.    Excellent.  All right.  That's
14  all I have for you unless Mr. Golden takes
15  over and asks some.
16       MR. GOLDEN:  I have no questions.
17  She will read.
18       MR. SEALS:  No problem.  Can we
19  agree 30 days after transcript is delivered
20  for any changes?
21       MR. GOLDEN:  Yeah.  No problem.
22       MR. SEALS:  Jennifer, I do want a
23  copy, please, electronic, if you don't

Page 122

1   mind.
2        THE COURT REPORTER:  Okay.  And
3   how about you, Mr. Golden?
4        MR. GOLDEN:  Same.
5
6
7        (END OF DEPOSITION.)
8            (11:05 a.m.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Page 123

1                C E R T I F I C A T E
2
3   STATE OF ALABAMA)
4   JEFFERSON COUNTY)
5        I, Jennifer Lee, Notary Public,
6   do hereby certify that I recorded by means
7   of stenotype the foregoing proceedings at
8   the time and place stated in the caption
9   hereof.  And the foregoing represents a
10  full, true, and correct transcript of the
11  proceedings on said occasion.
12       I further certify that I am
13  neither of counsel nor of kin to any
14  parties of said cause.
15       I further certify that I am duly
16  licensed by the Alabama Board of Court
17  Reporting as a Certified Court Reporter as
18  evidenced by the ACCR number following my
19  name below.
20
21       _____
22       Jennifer Lee, ACCR #97
23       Expires 9/30/2023

Page 124

1                C E R T I F I C A T E
2
3   STATE OF ALABAMA)
4   JEFFERSON COUNTY)
5
6        I, MICHELLE DOVE, do hereby
7   certify that the foregoing represents a
8   full, true, and correct transcript of the
9   proceedings at the time and place stated
10  in the caption hereof.
11
12
13
14       _____
15       MICHELLE DOVE
16
17
18
19
20
21
22
23

31 (Pages 121 to 124)

BIRMINGHAM REPORTING SERVICE
(205) 326-4444
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4**

Michelle Dove                                              8/18/2023

Page 125

```
 1
 2              ERRATA SHEET
 3
     4PAGE      LINE      READS      SHOULD READ
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
```

BIRMINGHAM REPORTING SERVICE
(205) 326-4444
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

Michelle Dove

8/18/2023

| A | | | | |
|---|---|---|---|---|
| **a.m** 2:15 6:11 122:8 | 120:14,18,23 **accounts** 10:13 10:16 | 60:19 61:8 100:14 **address** 22:18 | 116:10 121:19 **agreed** 2:8,17,21 19:12 | 23:20 **applied** 78:19 **applies** 8:21 |

**able** 26:14 78:23

**absolutely** 94:14

**access** 94:5
107:21

**account** 5:15,22
12:2 15:21
16:17 19:18
22:17 23:19,20
23:21 25:3
26:10,17,22
27:17 28:2,5,5
28:6,15 29:18
32:11,19 33:3
33:14 35:16
36:7 38:9,13
39:11,20 40:12
44:11,12,18
49:11 50:7,15
50:23 54:6,11
55:8 57:3 58:2
60:17 61:2,5
64:13 65:22
68:14 69:12
72:16,21,23
73:3,10,14
75:4,11 76:9
76:14,23 77:19
78:19 79:1,2
80:9 81:5
88:13 92:16
93:16 97:19
98:7,11 102:11
103:23 104:21
105:1,8 106:3
106:6,9 109:3
109:21 110:21
111:3 112:7
113:16,23
114:2,4 115:12
115:21 117:10
117:13,21
118:15 119:18

**accounts** 10:13
10:16
**ACCR** 123:18
123:22
**ACCR-97** 1:23
**accuracy** 63:22
**accurate** 24:2
45:6 96:10
103:10 106:13
**accurately** 25:6
**ACDV** 17:21
18:3,13 20:13
21:7,9,23
22:16 64:7,11
64:22 85:14
86:14,15,17
87:6,21 88:11
89:3 90:5 91:7
91:22 92:7
93:19 95:6
98:14,18,21
99:2,17 100:14
101:2,17 102:9
108:11,18
**ACDVs** 93:19
**act** 10:20 14:11
14:12 85:20
**acting** 6:6
**actions** 72:14
**activating** 35:16
**active** 35:15
54:19 69:4,13
75:3 105:6,11
106:2,5 116:20
**actively** 74:16
**activity** 58:15
81:13 118:2
**actual** 39:12
**add** 48:5
**added** 33:8
39:20
**additional** 23:8
39:22 56:23
57:5,13 58:7
58:11,20 59:3

60:19 61:8
100:14
**address** 22:18
33:11 34:1,5,8
34:8,11,15,16
39:4,10 40:6
51:4,12,18
54:4 66:18
86:20 91:11
95:4,13,18
101:8,20
102:23 103:5
113:4,6,8,15
113:20 114:15
116:2,5,10,14
119:17
**addresses** 16:14
34:10 116:16
**addy** 51:21
**adjustments**
70:22
**admin** 117:15
**administrative**
36:1
**admissions** 5:19
106:22 107:1
**admit** 107:4
**admittedly**
79:11
**advised** 3:12
**affairs** 60:14,16
**AFNI** 43:11,14
**afternoon** 66:3
**agencies** 9:11
16:2 20:8 58:4
**agency** 10:22
17:6,13 19:17
20:12 43:13,17
89:5
**agents** 36:6
**ago** 109:18
**agree** 16:22 17:7
18:18 19:14
20:13,19,23
24:19 63:10
75:6 97:9

116:10 121:19
**agreed** 2:8,17,21
19:12
**agrees** 62:15
**Alabama** 1:2 3:7
4:9,13 6:4,6,8
123:3,16 124:4
**algorithm** 41:19
41:22
**alleged** 15:10
27:13
**allegedly** 78:4
**allow** 7:21
**amended** 3:8
**amount** 25:5
35:2 82:7
88:15 91:14
95:23 96:6,8
**amount/verify**
87:2
**and/or** 95:23
**Anderson** 46:14
**answer** 7:20,22
11:4 21:20
22:14 23:16
57:8 66:21
67:21 68:19
75:15
**answer-requir...**
56:22
**answered** 65:19
**answering** 44:2
**answers** 5:16
11:5 72:7
**anybody's** 79:19
**appear** 29:17
31:13 32:10
33:19 38:12
39:23 40:2
42:21 67:1
90:19 97:17
98:6 110:23
**appeared** 108:6
**appears** 28:15
85:12,15
**applications**

23:20
**applied** 78:19
**applies** 8:21
**applying** 37:3,6
37:7
**appreciate**
79:20 83:20
111:8
**approximately**
2:15 6:11 9:20
**AR** 10:18
**area** 51:2 66:15
70:5
**Arrington** 4:7
**asked** 72:14
107:4 112:15
**asking** 65:3 75:7
75:8 86:5
91:18 109:19
113:5 119:13
**asks** 121:15
**assembled** 119:6
**assign** 3:2
**assigned** 36:4
47:5 87:7
**assigning** 38:2
68:6
**assigns** 101:18
**assume** 12:22
20:11 44:14
47:6 50:16
51:20 54:7
111:15
**assuming** 66:5
66:11 116:13
**assumption**
54:10
**AT&T** 5:20,21
26:21 27:2,10
27:14,22 32:20
33:2,6 34:14
38:2 39:2,21
40:3,9,10,14
45:23 47:10
50:23 53:1,12
53:15,20 55:18

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

55:22 56:12,22
57:10,15 59:14
59:21 60:11,17
60:18,23 61:21
62:5,7,9,13
63:11,18,21
64:14 66:13
68:11,12 69:17
70:13,18,20
71:4,9,11
72:20 74:13
75:10 76:10,13
76:19 77:9,18
78:4 101:3,12
102:15,17,19
102:22 103:4
103:14 109:19
110:14,16,16
110:17 111:2
112:15 113:4,7
113:10 120:17
120:22
**AT&T's** 107:19
108:3,23
117:20
**attach** 99:2
**attachments**
89:11 93:21,23
**attempt** 10:19
27:13 44:13
62:16
**attempts** 27:18
42:20 44:1,5
44:23 45:4,10
46:8 49:4
65:11,19
**attorney** 7:12
9:2 11:16 46:1
46:12 80:9
106:22
**attorney/client**
11:17
**August** 2:14
6:11
**authored** 90:9
90:20

**automated**
17:20 18:7
120:18 121:1
**automatic** 76:4
**Availability**
5:21
**available** 51:2
53:4,13 54:3
55:20 56:13
63:9 66:14
70:4,15 82:3
94:7 97:12
101:4 103:5,6
103:9 109:23
111:13 112:2
113:6,8,11
118:11 119:16
**AW** 81:20 82:1
83:3,9
**aware** 21:3
53:15 56:11
85:18 95:12
102:16
**awkwardly** 25:9

---
**B**

**back** 18:11
22:21 23:7,12
32:4 46:22
55:22 56:14
59:14 62:13
63:21 64:15,23
65:9 69:20
70:1,17 71:9
71:17 73:6,14
77:2 85:7 86:2
86:23 87:15
93:3 94:3
104:14 108:8
113:17 116:4
**bad** 30:4 35:12
**Bagniewski**
13:17,21 14:5
65:23 66:22
70:8,12
**Bagniewski's**

67:18
**balance** 15:21
24:13,14,17
25:1 34:23
39:8,9 40:6
70:22 87:8
88:14 91:13
95:23 117:7
**balance/past**
87:2
**ball** 100:20
**bankruptcy**
37:11 41:7
48:12
**Barbara** 13:14
14:1 49:11,18
65:23 67:17
**base** 10:8
**based** 24:9
26:20 51:13
60:3 73:13
78:3 91:20
100:8,23 101:6
102:20 103:13
105:13,15
111:11 112:16
120:14,15
**basically** 30:7
117:11,13
**basing** 58:22
**basis** 85:19
**batch** 35:15 37:2
48:18,23
**Bates** 28:8 31:1
31:14 32:7
**bear** 71:20
89:13
**beat** 94:13
**beginning** 67:1
**behalf** 10:16
16:9 108:17
**believe** 11:11
14:3,6 35:1,18
36:21 38:11
39:6 41:14,22
42:12 43:12,18

52:19 53:6
59:15 61:7
68:22 69:22
70:19 71:13
73:22 74:3
77:14,21 80:13
84:5 85:22
87:10,19 92:6
92:7 94:23
95:8 101:11
102:5,15
110:19 111:20
112:18 116:6
**belong** 97:20
**best** 13:3,4 61:6
67:7 77:15
**better** 30:19
32:11
**beyond** 95:12
**bill** 34:1 66:12
66:13 70:4
**bill-to** 51:12,18
**billing** 34:8,11
34:16 39:4
**bills** 23:21
**binding** 11:5
**Birmingham**
4:9,13 6:4
52:21
**birth** 22:19
38:11,21 39:3
40:5 91:12
101:20
**bit** 46:3 68:21
77:5
**blank** 115:17
**blind** 83:21
**block** 67:13
**blocks** 64:5,8
**blue** 90:18
**blurry** 29:9
79:11
**Board** 123:16
**bottom** 67:1
38:2 40:15
43:11 67:13,19

69:8 73:7
81:10 86:9
114:1
**bought** 102:19
**Boulevard** 4:7
**Box** 4:12 34:11
101:9 114:16
116:1
**break** 30:17,21
79:22 80:4,7
93:9 120:10
**briefly** 81:6
82:14 89:13
120:13
**bring** 90:3
**brought** 7:14
14:9 91:19
**bunch** 120:1
**bureau** 88:5
**bureaus** 15:20
18:12 22:21
96:9 105:18
**business** 10:12
15:23 68:20
69:5
**busy** 52:22
**buyer** 10:21

---
**C**

**C** 4:1 123:1,1
124:2,2
**cable** 27:6
**call** 13:5 19:13
22:12 28:4,16
44:1,14,15,17
44:23 45:4,10
49:4 51:3,14
52:2,6,8,10,23
55:1 60:8
63:19 66:7,20
66:21 67:2
68:1 82:20
120:3
**called** 17:20
18:7 43:14
49:15,17,19

50:9 67:8
69:16 82:20
84:8 107:19,20
108:4
**calling** 42:20
50:1,4 77:14
**calls** 45:9 58:18
59:9 74:10
**caption** 123:8
124:11
**care** 66:16
**cared** 83:11
**case** 1:5 7:13
12:10 13:7
23:6 24:22
30:13 86:20
89:11 92:11
99:3 102:11
**Casi** 44:7
**cause** 6:12
106:11 123:14
**CBR** 86:11 88:5
**CC** 87:11 88:1
**CDN** 118:1
**certain** 46:8,10
78:10 109:4,19
**certainly** 60:20
**Certified** 2:12
6:3 123:17
**certify** 6:7 123:6
123:12,15
124:8
**chance** 11:12
12:15 28:20
89:21 93:11
97:3 114:5
**change** 35:15
36:10 40:16
45:1 62:8
76:11
**changed** 35:21
45:19,23 47:6
47:9,22 51:13
51:19 67:20
68:11,18 69:4
85:3 86:10

**changes** 41:16
45:11 48:11,16
51:7 84:21
121:20
**changing** 43:21
**channel** 43:8
**chief** 8:7,14 9:13
**choose** 36:5
**Civil** 3:7 6:8
**claim** 85:21,23
**claimed** 64:12
86:16 90:8
96:7
**claiming** 66:13
102:6,19,21
**claims** 14:10
86:3
**clarifying** 121:7
**clear** 15:8 48:7
80:10 83:14
86:4 90:1 92:9
94:14 106:8
111:22 115:17
**clearer** 30:12,14
**client** 14:9 66:11
66:14 70:3,4
94:17 118:1
**client's** 72:8
91:11 93:15
95:15 107:17
111:14 112:2
113:4
**clients** 61:13
**closed** 69:2,3
72:23 73:10,15
73:22 74:4
75:12 104:22
105:1
**closer** 9:21 97:8
**closing** 105:7
**CM** 61:15
**co-counsel**
120:3
**COCHRUN** 4:6
**code** 81:21,22

88:4 106:11
**changes** 41:16
82:1,16 83:2,9
84:6 87:1,14
87:22,22 88:1
95:1 98:1
101:16,18
102:3,8
**codes** 87:7 98:2
99:4 102:9
**coding** 36:16,20
**collect** 10:13,15
10:19 16:4
26:21 27:13,19
44:1 59:17
62:16 75:4
**collected** 35:17
**collectible** 41:6
**collecting** 10:17
15:16 16:10
17:1 26:9,17
**collection** 9:9,11
10:22 14:11
25:21 27:20
28:2,5 33:3
37:1,3,16 38:7
39:13 40:10
41:12 46:11,17
54:19 55:22
58:15 69:11
74:15 78:18
81:3 107:18,20
108:4 109:8
118:7,19 119:2
**collections** 23:6
24:23 35:19
46:7 48:17
57:1 61:9
62:21 68:16
69:6,11,13
73:21 74:5,8,9
74:20 77:11
86:11 88:4
105:6,7,11
**collector** 15:9,23
36:4 47:5 68:7
**collectors** 36:13
**collects** 15:9

**column** 33:8
**combined** 61:12
61:14,16,18
**come** 30:7 91:3
93:3
**comes** 39:10
40:7
**commenced**
94:18
**commencing**
2:14 6:10
**commensurate**
19:5
**comment** 74:2
81:20 84:3
**Commissioner**
6:6
**communicate**
58:3 64:23
107:23
**communicated**
57:9 59:14
62:4 63:20
64:19 65:4
71:8 81:15
87:6 88:15
101:11
**communicating**
36:10 70:7,17
**communication**
60:19 62:13
72:20 75:11
76:19 77:9,12
117:11
**communicatio...**
12:1 61:8 67:6
75:9,16,17
76:3 110:17
**company** 8:16
**compared** 86:18
**comparing**
22:16
**complete** 50:17
67:21 86:12
88:6 99:2
104:11

**compliance** 8:7
8:14,17 9:13
15:2,6
**comport** 104:5
**concerning**
110:21
**conduct** 17:8
18:14 88:19,23
100:5
**conducted** 99:20
**conducting**
108:16
**confer** 107:10
**confident** 32:5
95:19
**confused** 33:22
**confusing**
104:19 111:7
**conjunction**
92:6
**connected** 44:15
**connection**
113:16
**Considerably**
114:22
**consistently**
42:14
**constantly** 70:16
70:23 76:5
**constitute** 19:1
**consumer** 17:3
17:20 19:2,10
19:16 21:9
22:22,23 23:4
42:10,14 46:18
50:21 56:15
60:16 63:5
64:11 66:8
78:12 86:15
89:6 99:1
102:6,14,18
104:23
**consumer's**
17:14 20:12
**consumers**
15:14,15 16:12

16:16,19 60:13
82:4
**contact** 16:12,14
16:17 44:2,19
46:18 59:21
60:11,17,18
62:7 65:12
71:4 72:18
75:10 78:11
101:3 115:23
**contacted** 55:18
56:12,19 60:23
70:13 120:17
120:22
**contacting** 60:3
**contacts** 61:4
65:15
**contained**
108:19 116:5
**content** 101:1
**continue** 57:2
58:15 77:18
103:19 112:11
**continued** 59:17
63:21 103:14
**continuing**
14:19
**continuously**
27:21
**contract** 102:13
102:17 111:16
111:18
**contracts** 8:16
112:17
**contractual**
112:9
**copies** 93:18
**copy** 20:12
30:12,14 32:11
89:5 92:1,12
93:2 94:15,21
99:10 121:23
**corner** 81:12
**corporate** 9:16
11:3 45:23
46:12 47:1,10

**correct** 7:23
13:14,15,18
15:17 18:17
22:22 24:2,7
24:18,19 25:14
27:19 32:8,12
34:20 39:1,5
42:21 47:8
48:3,21 49:2
49:23 51:9,10
51:14,22 52:7
52:15,18,19
53:10 55:9,10
57:23 58:9
61:23 62:1
67:9 70:15
71:6 82:23
83:5 85:4,13
87:10,16 88:7
89:7 92:5
94:22 97:2
98:4,23 100:21
104:1 106:14
108:21 111:1
111:11 113:10
117:8,19 119:7
119:11 123:10
124:9
**correctly** 44:4
95:7 109:10
**correspondence**
60:16
**counsel** 2:10,22
3:1 6:9 8:7,13
9:2,13 12:2
107:9 123:13
**country** 10:2
**COUNTY** 123:4
124:5
**couple** 13:12
120:3
**course** 29:2
51:17 120:6
**Court** 1:1,22
3:13,14 7:2
122:2 123:16

123:17
**cover** 77:2
**COVID** 81:22
83:5
**CRA** 64:16
**CRAs** 5:17
41:23 62:5
81:5,15 83:2
83:17 86:23
**credit** 14:12
15:15,20 16:2
16:15,23 17:5
17:13 18:11
19:17 20:7,11
38:8,22 41:9
41:22 48:5,10
48:10,15 52:9
52:13 58:3
69:2 78:23
79:6 80:7
81:18 83:16
85:20 88:5
89:4 105:18
118:5,6 119:22
**creditor** 23:7,11
23:13 25:1,15
25:23 26:1,7
26:14 38:9
43:3 58:4 61:5
62:23 63:5
72:18,19 96:7
103:19 109:5,6
110:21 112:6
**creditors** 10:17
16:10 25:2
82:3,18 83:11
83:15
**crystal** 100:20
**curious** 42:7
45:18 110:13
**current** 8:4
35:20 45:18
103:7
**cut** 87:13
**CW** 68:12

**D**

**Dale** 4:17 30:13
31:20 114:3,19
**data** 16:1 28:1
37:9 85:2
86:19 95:9,10
**date** 6:7 22:18
36:23 38:10,21
39:3 40:5
45:10 57:20
66:11 73:8
78:10 79:7
81:13,14 85:13
91:11 101:20
118:5
**dates** 84:17
118:7
**day** 64:6 76:7
78:13 103:5
**days** 57:19
58:17 59:2,7
76:8 78:16,17
78:21 94:8
121:19
**dead** 94:13
**debt** 10:21 14:10
15:9,23 16:16
17:1,5 25:22
26:8,15 33:13
34:18,22 35:21
36:13 37:4,5
40:22 42:10
43:12 45:19
52:17 53:21,22
54:17,18,23
56:19,21 57:1
57:7 58:12
59:16,17 61:22
62:20 63:2,17
63:22 64:12,14
68:2,13 69:2,3
69:3 71:14,15
78:4,22 81:18
82:1,7,12
86:16,22 87:11

87:17 88:1
101:9 102:15
102:16,20,22
103:11,14,16
103:17,20
112:7,10
117:20 118:1
119:21,21
121:4
**debtor** 82:8
115:23 116:16
117:23
**debts** 10:23 15:9
15:16 16:4,13
27:13,18 40:20
41:4,5 52:14
54:13 62:16
81:20 112:12
**DEC** 37:12
**deceased** 37:12
**December** 29:16
32:23 72:22
73:4 78:6
**defendant** 1:16
72:22 73:10
**defendant's**
72:17 112:22
**DEFENDANTS**
4:16
**delete** 21:5 84:8
105:19 106:6
119:18
**deleted** 20:22
26:13 94:10
106:1,6,11
119:22
**delivered** 117:2
121:19
**delivering** 3:9
**demographic**
22:15
**denied** 107:11
**deny** 107:4
**depend** 22:9
**depending** 19:6
**depends** 26:4

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

78:18 79:1
**deposition** 1:19
  2:3,10,18 3:4
  5:14 7:15 12:9
  72:6 92:20
  122:7
**describe** 16:6
**describing** 38:7
**designated** 11:2
**determination**
  63:16
**determine** 41:4
  71:5
**determined**
  119:15,20
**dialing** 44:9
**dictate** 19:8
**difference** 119:9
**different** 31:4
  35:5 43:16
  44:3,5 59:9
  68:16,23 69:10
  95:9 100:7,11
  100:16 102:2,9
  102:12
**differently** 57:4
  99:19 100:1
  118:11 119:5
  119:12
**digits** 66:5 67:4
**directed** 100:3
**disaster** 81:21
  82:16
**discovery** 13:9
**discussed**
  120:19 121:1
**discussing** 80:7
**dispute** 5:18
  17:8,14,15,20
  17:23 18:6,8
  18:10,15,19
  19:2,6,7,12,19
  19:21 20:3,4,8
  20:19 21:7,9
  21:23 22:10,11
  22:12,13,15

23:16 26:5
  51:7 53:11,18
  55:21 56:19
  57:9,19,21
  58:1,2,12 59:7
  59:11,12,14,15
  60:4,15,19
  62:1,3,4,11
  63:21 64:19
  65:4 67:21
  68:3,19 70:19
  71:9 83:2
  85:19 86:5,6
  87:7 88:20
  89:1,7 90:20
  91:6,13,13
  92:1,13 93:15
  94:5,8,9,16
  95:15,22 96:5
  96:18 97:18
  98:1,2 99:20
  101:16,18
  102:2,13
  103:15 104:6
  105:8 107:8,17
  108:8 113:9
  118:13
**disputed** 21:12
  22:4 24:1,8
  51:8,8 56:6
  57:2 58:10
  61:22 62:8
  82:21,22 83:9
  88:13,14
  109:14
**disputes** 17:4
  50:22 58:6,18
  59:1 86:1
  90:15 93:20
  94:2,7 104:23
**disputing** 19:17
  50:22 68:1
  97:10
**DISTRICT** 1:1
  1:2
**DIVISION** 1:3

**document** 28:8
  28:17 30:8
  32:6 78:8
  80:11 89:14,19
  89:21 118:9
**documentation**
  110:15
**documents**
  23:20 89:6
  93:12 109:20
  111:3
**doing** 21:19
  90:15
**Dorsey** 1:8 7:13
  17:4 26:18,22
  49:16,17,19
  52:9 53:1
  54:21,22 55:18
  59:21 61:1,22
  63:7 65:4,12
  66:20 67:7
  69:15 70:7,13
  71:6 78:5
  88:12 93:11
  97:10,19 98:21
  99:7 110:17
  117:12
**Dorsey's** 52:17
  54:4 80:8 81:5
  85:20 88:19
  92:1,12 109:21
  118:13 119:16
**doubt** 38:20
**Dove** 1:20 2:11
  6:12,17 7:8 8:3
  80:6 120:12
  124:7,15
**drafting** 15:1
**Drive** 4:19
**drives** 16:16
**due** 25:6,7 35:2
  53:22 54:14,17
  62:20 71:14
  83:5 87:2,9
  88:14 91:14
  95:23 96:7

103:20 112:8
  112:13
**duly** 6:18 123:15
**duties** 8:13

_____

**E**

**E** 4:1,1 123:1,1
  124:2,2
**e-OSCAR** 18:8
  64:20 94:2,3,4
  95:1
**earlier** 84:12
**earliest** 78:20
**easiest** 113:22
**easy** 22:14
**education** 14:19
**effect** 52:12
**effective** 3:8
**effort** 47:16
**efforts** 37:1 75:3
**either** 13:20
  20:21 28:5
  38:10,11 53:19
  65:8 73:5
  83:20
**electronic** 64:23
  70:18 121:23
**electronically**
  99:1
**eligible** 36:7
**email** 33:10 34:1
  34:15 51:4
  66:18 114:5,11
  114:21
**emailed** 114:18
**employed** 14:1
**employee** 20:2
  22:1 23:10
  90:11,12
**employees** 8:22
  9:18 15:3
**employer** 8:4
**ends** 51:3
**entered** 35:15
**entire** 98:12
**entirely** 83:15

83:17
**entries** 37:9,23
  64:6,9 65:10
  69:7 85:10
**entry** 62:2 65:21
  67:2 68:18
  70:3 83:8
  88:11
**Equifax** 82:12
**Eric** 46:13
**ERRATA** 125:2
**escalated** 60:11
**Esq** 4:5,11,17
**establishing**
  21:12 22:3
**event** 67:20
  68:18 69:5
  86:10 88:3
**evidence** 3:5
  21:11 22:2
  63:18 99:6
**evidenced**
  123:18
**exact** 89:18
**exactly** 10:11
  39:16 41:18
  69:21 81:7
  99:5
**examination** 5:4
  6:13 7:7
  104:10
**examined** 6:19
**example** 41:6
**Excellent** 8:2
  121:13
**exchange** 65:1
**excuse** 12:5 25:6
  34:7 48:6
  61:12 109:12
**exhausted** 46:7
**exhibit** 12:8,12
  28:8,11 29:6
  32:7 71:20
  72:1,5 80:13
  80:15,20 81:1
  84:17 85:7

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

Michelle Dove                                          8/18/2023

96:13,15,18
105:15 106:16
106:18 110:2,4
111:10 112:20
112:22 115:7,9
118:10,22
**exhibits** 5:10
11:9 12:3
**expected** 39:18
**Experian** 82:11
**experience**
14:18 54:15
91:21
**Expires** 123:23
**explain** 18:2
64:8 74:7
105:4
**extent** 47:12
**extract** 83:22

---

**F**

**F** 123:1 124:2
**fact** 52:16 53:20
86:22
**facts** 72:14
**fair** 14:10,12
23:13 25:13
45:1,11 48:2
75:2 84:9 85:3
85:20 90:21
94:18 119:10
**fairly** 80:10
**familiar** 7:19
14:14,17 41:21
89:9 106:23
**far** 99:6 110:22
**faster** 114:22
**faxed** 30:6
**FBI** 63:14
**FCRA** 14:12
15:5
**FCS** 43:16
**FDCPA** 14:11
14:15 15:2
58:21,23 59:8
68:3

**FDCPA's** 57:3
**February** 8:11
49:4 68:9
72:23 73:10,15
73:20 74:6
75:2 76:19
77:8,14,19
81:18 82:15
104:22 105:5
**feel** 13:13 30:4
32:5
**file** 39:10 40:8,9
62:12 64:21,22
64:23 70:18
75:17 77:12
84:18 92:7
98:17 99:2
**filed** 3:14 12:9
41:7 92:11
98:14,21
106:12 121:5
**files** 70:21,23
76:6 95:5
**finally** 58:18
65:20 112:19
**find** 22:3 79:16
79:22 110:9
**fine** 7:4 13:4
21:21 42:7
76:17 80:1,17
83:19 85:5
91:17 93:7
97:6 104:9
**finer** 14:23
**finish** 7:21
**fire** 45:16
**firefighters**
52:21
**firm** 9:10
**first** 6:18 36:18
37:22 59:7
64:6 65:21
66:23 67:13
72:17 79:6
81:18 82:8,15
89:15 93:14

116:7 118:5
**five** 37:22 69:7
107:3
**five-minute**
30:17 79:22
**flag** 51:8 62:4,8
**flagging** 35:12
**Florida** 4:20
**flying** 83:21
**focus** 41:5
101:15
**following** 6:14
123:18
**follows** 6:19
**foregoing** 6:9
123:7,9 124:8
**forgive** 28:16
33:16 102:1
**form** 2:23 5:21
17:10,21 18:5
18:21 19:3,22
20:5,16 21:16
22:8 23:14
24:3,10,21
25:19 42:11
53:14 59:4
60:1 62:18
63:13 65:17
89:8 92:14
97:14,21 98:8
99:21 100:2
101:5 102:4
103:12 110:18
111:4 113:13
119:19
**format** 7:20,21
61:17
**former** 90:12
**formula** 42:2
**forth** 70:17
**forward** 92:19
**found** 113:3
**four** 31:8,17
37:22 50:18
66:5,23 67:4
80:13 101:21

108:6
**fourth** 38:1
**fraud** 23:1 57:11
102:7,8,12
**free** 13:14
**front** 28:20
**full** 21:6 123:10
124:9
**function** 74:21
74:23
**furnish** 16:9
**furnishes** 16:1
**further** 2:16,20
100:5 123:12
123:15

---

**G**

**GAGAIN** 4:18
**general** 8:7,13
9:1,13
**generally**
106:23
**generated** 42:1
**generic** 22:12
**getting** 18:13
109:6 117:15
**give** 28:22 29:1
40:21 115:2
**given** 7:15 47:23
**glanced** 11:14
12:3
**global** 36:12
**go** 21:18 23:7,12
32:4,15 42:18
45:4,18 56:21
65:9 68:21
69:20 71:17
74:19 77:5
79:16 108:8
113:17,23
114:6 115:1
118:16
**goal** 71:5
**goes** 25:13 29:13
74:14 84:18
**going** 13:1 22:9

32:3 36:6,12
36:12 37:10,11
37:19 45:17
46:5 54:23
59:2 67:12
71:18,19 72:5
75:21 77:10
80:2,12 85:6
92:19 115:6
**Golden** 4:17,18
7:5 11:9 17:10
18:5,21 19:3
19:22 20:5,16
21:16 22:8
23:14 24:3,10
24:21 25:19
29:22 30:1,16
31:15,22 42:11
53:14 59:4
60:1 62:18
63:13 65:17
79:12,15,21
89:8 92:14
97:14,21 98:8
99:21 100:2
101:5 102:4
103:12 110:18
111:4 113:13
114:10,17,22
119:19 120:1,6
121:14,16,21
122:3,4
**golly** 101:23
**good** 7:8,11
38:18 41:9
42:8
**gotten** 56:2,5
100:1 116:9
**grant** 29:9
**great** 21:19
**grounds** 3:3
**group** 36:6
60:14 90:23
**guess** 24:1 25:8
37:8 40:21
47:1 51:13

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

71:11 77:8
90:2 107:21
118:14
**guys** 120:8

**H**

**half** 42:19
**hand** 8:20 15:1
**handle** 8:15
**handled** 57:4
**handling** 100:8
**hang** 28:19 29:3
89:12 96:11
98:17 109:18
**happen** 13:5
18:4 30:13
54:20 79:13
**happened** 60:22
64:8 66:2
101:13 108:15
**happening**
75:18 76:6
**happens** 22:7
25:18
**happy** 30:15
31:10 77:3
**hate** 79:18
**Hauke** 13:14,20
14:1 49:18
52:8 53:1 55:8
55:17 59:19
65:23
**Hauke's** 49:11
67:17
**head** 31:21
**Healthcare**
78:21
**hear** 61:22 95:6
**heard** 52:6
**held** 9:14
**help** 16:4
**helpful** 16:23
23:9 93:12
**helps** 40:18
**hereof** 123:9
124:11

**Hey** 29:22
**higher** 23:3
41:10,11
**highlight** 51:18
110:8
**his/hers** 91:13
**history** 5:15
27:18 28:6
29:18 38:13
39:9,11,23
41:9 48:15
73:7 92:16
116:19 117:14
117:18 118:8
**home** 53:13
63:10 66:9,10
69:18 70:5
97:12 103:5,7
109:23 111:14
112:2 113:11
116:2,5,10,13
**Honeycutt**
113:7
**hooked** 107:21
**hope** 50:2,5
**horse** 94:13
**house** 36:4,12
47:11 68:12
**Hubbard** 4:11
**hypothetically**
24:13

**I**

**I.C** 1:14 7:14 8:6
8:10,21 9:8,15
9:19 10:12,15
10:20 11:2,5
13:6 14:1,8
15:3,8,19 16:1
16:3,8,17 17:4
17:7,15 18:4,8
18:14,18,23
20:2,9,18 21:8
21:10,13,23
22:2 23:11,23
24:6,16 25:10

25:14,16 26:2
26:2,11,17,20
27:12,17,20,23
28:3 32:20
33:2,6 36:4,18
38:9 40:11
52:1,9,13,16
53:11,17 54:1
54:13 55:6,17
56:11,19 57:6
57:18 58:23
59:2 60:23
62:9,15,19,22
63:1,4,10,14
63:17 69:12
70:12 72:7,15
75:2 77:17
80:8 85:14,18
88:2,12,18,22
90:11,14 91:5
91:23 92:12
93:14,18 94:4
94:14,21 95:3
96:23 99:15
100:7,23
101:15,19,22
102:1 103:11
103:21 105:17
105:23 106:4
107:4,5,6,8,15
107:16,18
108:6,17,19,22
109:10 110:15
111:12,23
112:14 113:9
116:1,8 119:14
119:20 120:15
120:16,22
**ICE** 86:18
107:19,19
108:2 109:9
117:23 118:16
118:19,21
**ICS** 28:9 29:11
29:13 32:7
37:19 42:19

43:10 44:22
45:9 48:6,7,22
65:22 68:10
69:8 70:3 73:7
79:5,13 99:16
**ID** 35:21 45:19
**idea** 111:15
**identification**
12:13 28:12
72:2 80:21
96:16 106:19
110:5 112:23
115:10
**identify** 66:6
**identity** 50:20
66:7 102:7,10
**image** 91:19,22
**immediately**
48:12
**impacting** 82:5
**important** 92:10
92:19
**inaccurate**
20:22 21:5
54:17 74:1
**inactive** 48:13
48:16 69:11
74:5,7,9,12,20
75:13 76:9,14
116:21
**inadvertently**
75:22
**inbound** 66:7
67:2 68:1
**include** 19:19
23:19
**includes** 20:12
**including**
105:18 108:23
**incorrect** 74:1
**incorrectly**
13:13
**indemnity**
112:15
**independent**
54:2 112:1

**independently**
63:2
**INDEX** 5:1,10
**indicate** 55:16
61:15 70:6
81:17 102:10
**indicated** 98:14
**indicates** 50:9
67:2 75:9
76:16,18
**indicating** 67:23
**indication** 61:18
70:10 71:3
**indications** 64:5
**individual** 100:4
**industry** 9:9
**information**
5:17 15:20,21
15:21 16:9,15
17:4 18:6,9
19:7 20:6,9,21
21:13,14,15
22:4,5,11,16
22:17,19,20
23:1,5,8,15,19
24:1,7 25:3,4
25:11,11,15,17
25:20,23 33:2
33:5,7 35:2
37:14 38:12,14
39:12,20,21,22
40:1,6,12 42:4
43:3,6 48:11
55:7 56:3,20
60:13,14 62:20
63:1,6 64:13
64:15 70:17,23
71:9,12 72:21
81:3,4,14 84:1
84:21 86:17,18
86:23 87:16,23
88:23 89:22
100:9 101:7
102:21 103:13
103:16,18,22
104:23 107:6

107:14,23
108:2,3,9,10
108:18 109:4
109:12,14,20
109:22 110:10
110:20 111:1
112:6 113:14
118:17,19
119:11 120:15
**initial** 37:7
56:16
**Innovis** 82:11
**installed** 66:9,10
70:5
**instance** 25:18
56:9 94:9
105:3 112:16
**intensive** 38:6
46:17
**interactions**
120:19 121:1
**internal** 33:14
34:19 35:23
36:16,20 45:20
46:12 47:6,22
48:19,23 68:6
87:18 88:2
107:7,15
117:23
**internet** 27:8
53:12,16 69:17
113:7,10
**interpreting**
75:16
**interrogatories**
5:16 72:8
104:21
**interrogatory**
72:11 73:23
75:8 77:16
**invade** 11:17
**invalid** 35:11
**inventory** 54:19
71:16 74:16
**investigate** 95:3
96:5 108:7,14

**investigated**
65:6 109:13
**investigates**
18:9 20:19
**investigating**
20:3 90:15
95:14 107:16
112:5 118:12
**investigation**
17:8 18:11,15
18:19 19:1,4,9
19:18 20:15
23:3 57:13
67:21 86:11
88:6,19,23
91:2 95:19
99:19 100:4,6
100:10,15
102:12 104:11
108:1,17 112:1
**involved** 72:19
91:6 97:18
**involving** 8:15
75:10 106:3
**issue** 92:11
110:14
**item** 21:12 34:23
104:23
**items** 87:23

___

**J**

**January** 44:13
45:5
**JEFFERSON**
123:4 124:5
**Jennifer** 1:23
2:11 3:9 6:3
80:14,18
121:22 123:5
123:22
**job** 8:4,13 21:19
59:19
**John** 4:11
104:16
**Jr** 4:7
**jump** 30:1

___

**K**

**Karma** 40:13
62:12 107:20
108:4,23 109:9
**Katie** 90:9
**keep** 46:4
112:10
**kin** 123:13
**kind** 10:21
30:10 40:4
47:17 48:14
57:15 61:17
75:18 80:9
83:16 87:12
105:4,12
107:10 112:15
117:14,15
118:6
**know** 7:18 11:17
13:11,23 19:20
27:2 31:22
33:1 35:9,22
39:16,19 41:1
41:2,3,8 42:23
43:5,8,10,21
47:11 50:12
52:4 53:19
57:10 61:6
64:18 65:3,3,7
66:19,22 73:3
73:5 76:3,13
76:17,20 77:17
78:3,7,11
83:20,23 84:3
89:10,20 90:10
92:23 98:23
99:9,12 100:8
100:11,23
101:8 103:11
106:9 110:23
111:12,17,21
112:14 114:10
116:18 117:5
117:22
**knowledge** 54:2

___

111:6

___

**L**

**L** 2:6
**labeled** 28:8
31:14
**labeling** 33:14
**language** 110:9
**Large** 2:13 6:6
**Latest** 118:2
**law** 9:10
**lawsuit** 92:11
106:12 121:5,6
**leading** 3:1
**leaves** 57:16
**Lee** 1:23 2:12
3:9 6:3 123:5
123:22
**left** 75:22
**left-hand** 81:12
**legal** 110:9
**let's** 26:16 63:23
67:5 71:17
79:21 85:8
93:6 101:15
113:19 115:16
**letter** 5:18 19:11
19:13,16,19
20:4,13,14
37:4,6 43:20
45:14 55:12,13
57:17,20 64:17
89:5 92:2,13
93:15 94:16,21
96:19 97:17,18
99:3,7,11,17
100:1,3,5,9,12
101:1,19 102:3
103:4 116:5,9
**letters** 16:18
42:20 43:20
46:10 74:11
78:12 117:1
**level** 23:3
**licensed** 9:4
123:16

**light** 84:14 91:3
104:20
**line** 34:23 42:23
43:2 62:12
109:4 116:7
125:3
**lines** 98:11
**linked** 35:20
45:19
**listen** 13:5
**listened** 13:8
52:5
**litigation** 8:15
47:10,13 93:17
94:11,17 96:23
99:11 106:3,5
116:21
**little** 42:18 46:2
51:12 68:21
77:5
**live** 42:23 43:2
62:12 109:3
**LLC** 4:6
**located** 10:5
**locations** 10:1
**long** 8:9 97:9
112:11 114:11
**longer** 26:7,14
74:10 78:22
91:5
**look** 11:13,23
12:16 24:22
30:3,9 31:1
32:15 33:9
37:11,11 39:16
50:15 55:9
63:23 65:16
68:10 72:11
73:6,16,19
76:22 83:12
91:9 92:15
93:3,12 95:9
97:8 104:7
107:3 108:8
113:17 115:4
115:15,18,19

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

116:4 117:9
118:11,17
119:5
**looked** 12:1,2,17
14:8 32:12
56:2 79:5,10
95:14 118:23
**looking** 22:15
28:18 30:5
32:14,18 34:22
55:5 56:3 68:5
76:2 78:3
80:23 81:8
84:15 97:6
98:5 114:20
116:23 118:10
**looks** 28:14 30:5
33:10 34:4,7
34:10 35:10
36:3 42:18,19
43:19,23 44:10
44:13,22 45:3
45:13 46:23
47:12,21 48:4
49:3,15,17,21
51:6 55:7,13
64:10 65:10,11
65:14,18 66:15
67:6,16 68:5
68:11 69:2
73:20 80:10
82:18,21 86:2
89:22 90:9
117:17 119:5
119:10
**Lori** 13:17 65:22
67:17
**loss** 30:8
**lost** 21:17
**lot** 11:15 12:18
37:8 41:2,16
78:22
**low** 41:8

_____
**M**
_____
**M** 117:3

**ma'am** 9:22
31:11 44:6
46:4 72:4 77:7
81:11 116:8
**machine** 44:2
**mail** 117:4
**mailed** 117:5
**maintain** 93:18
103:19
**maintains** 27:17
102:15
**making** 74:10
75:3
**management**
8:18
**manager** 90:22
**managers** 60:18
**Marbella** 4:19
**March** 49:7
55:11 57:21
58:13 82:19,22
83:1,8,23
**mark** 28:7 71:19
72:5 80:12
96:12 106:16
115:6
**marked** 12:13
28:12 72:2
80:21 82:22
83:9 96:16
106:19 110:5
112:23 115:10
**match** 117:10
**matched** 86:21
95:18 96:8
108:10,18
**matches** 22:19
101:9,9,20
102:23,23
103:1
**mean** 30:6 31:22
40:17 48:6
67:22 83:10
86:6,12 87:13
114:6 118:2
**meaning** 68:13

83:4
**meaningful**
119:9
**means** 36:2 43:8
43:10,12 47:11
68:2 74:9
86:13 91:21
95:2 117:2,3
123:6
**meant** 33:17
**meat** 117:16
**meet** 107:9
**members**
100:13 101:2
**memory** 52:23
**mentioned**
37:17
**mentioning**
79:14
**menu** 21:6
**mess** 80:16
**message** 61:14
61:16,18
**messages** 61:13
**method** 38:7
**Michelle** 1:20
2:11 6:12,17
8:3 124:7,15
**middle** 45:5
**mind** 79:19
105:15 122:1
**mine** 22:14
31:18 87:8
95:2 98:2,11
98:13,16
101:16 114:23
**mini** 50:21 66:8
**Minnesota** 9:5
9:23 10:8
**minute** 71:21
79:16 93:3
**minutes** 120:3
**Miranda** 50:21
66:8
**missing** 32:3
83:10

**MM** 50:21 66:8
**model** 42:6
**moment** 12:21
29:1 31:9 80:2
93:6 101:16
114:20 115:2
120:7
**money** 63:11
103:8
**monitor** 48:5
69:3
**monitoring** 48:6
48:15
**monitors** 48:10
**monthly** 77:22
**morning** 7:8
52:22 64:2
**move** 35:7 42:17
43:23 44:22
45:8,9 46:11
46:22 47:21
49:3 51:11
67:10 69:10
81:19 82:6,9
85:7
**moved** 47:17
73:21 74:5
75:13
**moves** 83:7
**moving** 35:18
43:9 46:20
48:22 67:16
68:16,22
**multiple** 19:11
34:10 76:7
**mute** 104:16

_____
**N**
_____
**N** 2:6 4:1
**name** 7:11 8:3
22:18 33:10
34:1,16 39:4
43:11 46:13
49:11 82:8,8
86:19,20 90:18
91:3,11 95:4

95:13,17
101:20 102:11
102:22 115:23
123:19
**names** 13:12
**natural** 81:21
82:16
**nature** 10:12
19:4,5,8,20
22:10 26:4
38:14 60:3
**necessarily** 59:5
61:10
**necessary** 2:21
**need** 23:11 43:6
55:4 108:9
110:14 111:10
116:18
**needs** 19:5 24:8
**negatively** 82:5
**neither** 123:13
**never** 51:1 53:3
63:8,12 65:19
66:9,10 70:5
94:20 99:10
103:8,9 105:14
119:16
**new** 68:19 69:5
114:4
**night** 50:2
**normally** 30:11
**NORTHERN**
1:2
**Notary** 2:13 6:5
123:5
**notations** 47:7
**note** 9:22 38:8
47:22 49:11
50:7,15 65:22
**notes** 5:15 12:2
27:18 28:2,2,5
29:18 30:3
32:11 39:7,14
39:23 49:14
52:23 53:8
55:3,16 56:10

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

Michelle Dove                                    8/18/2023

61:2,6,10 62:6
68:6 69:14,19
73:13,16 76:3
76:23 79:4
91:15 100:12
104:5,7 105:13
106:9 109:3
117:9,10,16
118:15,21
120:14
**notice** 5:14 12:9
56:16,16,18
**notification** 18:3
56:9
**notified** 17:9,13
17:22 48:13
61:21 62:10,14
76:10
**notify** 17:14
**November**
65:16,21 66:2
67:11,14 69:15
70:11 71:18
113:21
**number** 1:5
33:13,17,20
34:18,22 35:10
35:12,13,22
36:1 38:21
39:3,5 40:5
42:1 46:8,10
50:9,17,18
51:4,7 60:20
65:18 66:6,18
67:1,3 72:12
72:13 75:8
86:21 87:12
88:1 91:12
95:5,13,17
101:10,10,21
107:3 116:17
117:18,20,21
117:23 118:1
123:18
**numbering**
80:16

**numbers** 31:2,4
33:11,15 37:4
44:3 69:2,3,4
87:12,17

**O**

**O** 2:6
**objections** 2:22
3:2
**obligation** 112:9
**obtain** 21:14
**obviously** 23:2
**OCA** 43:11
**occasion** 123:11
**occur** 61:8 74:18
**occurred** 74:19
**October** 32:17
64:1,9 65:6,10
65:15 66:10
84:7 105:16
**offer** 12:8 55:13
69:17
**offered** 3:4
66:15
**officer** 8:8,14
9:14
**Oftentimes**
16:11,13 93:22
**oh** 34:7 84:19
114:1
**okay** 7:5,19 8:2
9:1,12 10:4,7
10:11,15 11:1
11:8,12 12:4,7
13:11,19 14:4
14:14 15:8
16:3,22 17:3
17:18 18:1,18
20:10 21:8
22:1 23:18
24:12,14 26:6
26:11,18 28:7
28:22 29:3,7
30:23 31:16
32:14 33:16,23
33:23 34:6,16

35:3,20 36:3,8
36:17,22 38:4
38:15 39:2,15
40:15,23 41:11
41:15 42:13,17
43:5,9,15 45:3
45:17 46:19,22
47:4,20 48:18
49:7,14,19
50:1,11,19
51:11,23 52:16
52:20 53:17
54:9,21 58:22
59:18 63:7
65:8,9 67:5,10
67:19 68:5
69:1,1,14
70:10 71:10,17
71:21 73:13,23
74:18 75:1,20
76:13,16 77:17
79:9,21 80:15
81:16,23 82:13
84:7,11,19,23
84:23 85:5,6
85:12,18 86:7
86:9 87:1,5,20
88:10 89:20
90:13 91:9,17
92:4,9,18 93:4
93:6 94:12
95:1,21 96:11
96:11,22 97:6
97:15 98:10
99:14,16
100:18,22
101:17 103:3
103:21 104:3
104:15 105:12
107:14 108:5
109:9,16
110:22 111:7
111:22 115:5
115:15,22,23
116:8,13,16,23
117:17 118:9

119:4,8 120:21
122:2
**Onalaska** 10:6
**once** 17:13 46:6
**one-second**
44:14
**Online** 19:12
**opened** 102:10
**operations** 10:9
41:3
**oral** 3:11 6:13
**order** 23:16
28:14 32:16
38:8 57:1
108:1
**original** 3:10
40:8
**originally** 103:1
**outcome** 100:9
100:16
**outcomes** 20:20
21:2,4,7
**outside** 59:9
68:3
**oversight** 8:17
**owe** 63:11,17
102:14 103:7
103:10,14
**owed** 15:10,10
27:14 62:17
63:3 78:4
**owes** 102:16,20
**owing** 25:7 35:2
53:23 54:14,17
62:21 71:14
96:8 103:20
112:8,13
**owned** 40:13
**owner** 36:9

**P**

**P** 2:6 4:1,1
**p.m** 32:23 43:1
49:8,21,22
50:6 67:15
**P.O** 4:12 34:11

101:9 114:16
116:1
**package** 27:8
**packet** 23:2
57:11
**page** 5:4,13
32:18 36:19
70:2 79:8 98:6
**pages** 77:2
**paid** 64:12,15
**paint** 84:13
**paragraph**
72:17
**part** 8:19 15:14
16:19 20:15
27:16 47:3
50:13 59:19
66:4 69:9
72:16 89:3
90:8 95:8
104:18
**particular** 14:19
94:5
**parties** 2:9 3:2
10:14 123:14
**pass** 107:23
**passed** 20:9
**pay** 40:19 41:9
42:6 54:23
**paying** 66:17
**payment** 39:9
70:22
**PDF** 30:7
**percent** 41:19
**perfectly** 83:19
93:4 104:9
**period** 56:17
57:3 58:6
59:10 68:4
78:10
**permitted** 59:20
**person** 12:22
44:8 90:19
91:1 95:20
103:1 108:16
**personal** 91:20

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4**

phase 35:19,21
  38:6 45:19
  46:11,21 47:2
  47:3,13,15,17
  47:19,23 48:14
  48:17 68:7,12
  68:16,23 69:10
  69:11 116:19
phases 48:2
phone 13:5
  19:12 27:8
  33:20 35:10
  46:8 50:17,18
  51:4,14 54:23
  60:8 63:19
  66:6,18 67:1,3
  68:1 74:10
  82:20 91:12
  117:18
piece 25:17
pieces 38:12
pin 37:9
place 54:13
  123:8 124:10
placed 16:13
  32:19 33:3
  43:13 53:20
  54:6,10 69:12
  73:4 75:12
placement 40:8
  73:8 75:19
  78:10,15
places 112:6
plaintiff 1:10
  4:4 5:13 72:19
plaintiff's 12:8
  12:12 28:11
  72:1,15 80:20
  96:15 106:18
  107:8 110:4
  115:9
plan 37:6
Plaza 4:19
pleadings 12:6
  14:8
please 3:12 7:21

8:14 13:13
  77:6 121:23
PLLC 4:18
plugged 113:3
point 14:23 22:7
  25:8 26:3,11
  38:19 44:9
  83:11 92:19
  111:14
pointed 95:22
pointing 34:3
points 86:19
  95:9,10
police 23:1
  57:11
policies 27:16
  99:16 100:23
  105:2
policy 8:21 15:2
  22:4 23:23
  26:3 58:23
  89:10 101:15
  106:4
pool 36:13
popped 13:12
Portfolio 43:7
position 57:18
  59:1 63:15
potential 72:18
PR 43:8
Practices 14:11
pre-litigation
  47:1,16
precisely 43:22
prefix 35:11
preparation
  11:21 13:21
  97:4
prepared 28:23
preparing 8:20
preprocessing
  37:5
presented
  118:18 119:12
president 9:17
pretty 32:5

previously
  43:13 56:15
  80:11
primarily 10:8
  86:6
printed 61:10
  119:6
printout 28:1,4
prints 115:21
prior 3:5 9:7
  86:2 92:10
  111:11 121:5
privilege 11:18
problem 121:18
  121:21
Procedure 3:7
  6:8
procedures
  27:17 105:2
proceedings
  6:14 123:7,11
  124:10
process 16:19
  18:7 22:1
  62:10 64:21
  71:15 76:4,5
  77:13 89:3
  91:7 95:9,19
processing 37:2
  48:19,23
produced 13:6
  29:10 30:4
  39:13 80:12
production 13:9
prohibited 60:2
pronounce
  13:13
proof 63:16
propensity
  40:19 41:9
  42:6
proprietary
  42:4
provide 11:9
  12:23 15:19
  26:1 38:9

50:23 53:2
  54:7 56:23
  62:23 63:5
provided 20:7
  25:12,15 33:2
  33:5,21 34:9
  34:15 38:17,20
  39:2,8,17,18
  40:3 54:16
  56:7 57:10
  59:6,12 63:16
  64:15 81:4
  94:20 103:15
  109:5 113:15
  114:3 121:4
provides 22:23
  23:4 27:10
  40:9 53:16
  59:10
providing 25:4
  103:18
Public 2:13 6:5
  123:5
pull 30:15 54:18
  71:19 73:14
  77:1 92:22
  118:14
pulled 119:2
purchase 10:23
purchased
  103:2
purposes 42:9
pursuant 6:7
put 14:23
putting 11:19

—————————
        Q
—————————
question 7:20,22
  15:18 24:11
  57:8 104:19
  105:13 109:17
questions 2:23
  3:1 11:4,5,18
  120:1 121:9,16
queue 36:5
  67:17,18

quick 109:17
  114:8
quickly 47:18
  48:2
Quinonez 44:7

—————————
        R
—————————
R 4:1 123:1
  124:2
re-communic...
  70:20
reach 46:17
read 20:3,14
  62:8 87:5 97:3
  121:17 125:3
reading 2:2,18
  19:19 44:3
  87:20 88:10,11
  104:20 108:5
READS 125:3
real 89:13
realize 54:15
really 30:3 38:6
  46:16 48:13
  63:15 78:17,23
  94:1 98:6
  100:19 105:7
  111:5 112:5
  118:15
realtime 25:3
  109:7
reason 24:14
  38:20 51:12,19
  53:18 57:6
  59:20 60:5
  90:3 91:18
  104:6 105:22
  113:9 115:17
reasonable
  18:20 19:1,18
  20:14
recall 52:10,11
  54:18,22 55:2
  59:16 69:21
  71:15 96:1
  103:16

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

**receive** 18:2,6
19:7 57:14
60:15 64:22
89:11 92:1
93:15 94:2,15
100:19
**received** 12:18
18:8 23:17
43:3 59:15
64:10 85:14
86:13 87:22
89:15 92:6,17
94:11 96:22
99:16 100:17
105:9,10
111:20
**receives** 62:19
**receiving** 56:18
**record** 48:7 90:4
**recorded** 52:1
123:6
**recordings** 13:6
**recordkeeping**
34:19 45:20
87:18
**records** 58:2
88:3 106:9
107:7,15
108:20,23
110:16
**redacted** 33:18
50:12 66:4
114:4 115:12
**redactions** 93:1
106:10
**referral** 46:1,13
**referred** 42:14
46:23 100:13
**referring** 96:19
**reflect** 58:2
66:19
**reflected** 53:8
61:2,5 65:5
79:3
**reflects** 85:2
**regard** 72:15

102:2 117:11
**regarding** 20:8
21:7 72:19
80:8 86:1 87:8
93:16 95:22
**regardless**
107:10
**regularly** 27:13
**reinvestigation**
107:7
**related** 18:9
68:22 72:21
81:5,22 82:20
86:3 89:22
109:21
**relates** 15:3 88:2
**relating** 111:3
**relation** 44:12
**reliant** 62:22
**relies** 25:11,14
57:6 63:4
**rely** 25:5 53:21
63:18 107:5,16
109:11
**relying** 71:10
108:2
**remained** 91:4
**removal** 84:2,6
**remove** 66:12
70:3
**rep** 51:3 61:14
66:15
**report** 16:15
23:1 38:8,23
52:9,14 57:12
77:18 78:20,23
82:5
**reported** 5:17
25:1 52:17
78:5,9,13,15
79:3,7 81:18
81:20 82:10,12
82:15 84:13,15
84:16,16 85:1
103:22 105:20
118:5,6

**Reporter** 1:22
2:12 3:14 6:4
7:2 122:2
123:17
**reporting** 14:12
16:2,23 17:5,6
17:13 19:17
20:7,11 21:15
26:9 58:4 80:7
85:20 88:6
89:4 96:9
119:22 123:17
**reports** 15:14,15
18:10 77:22
78:1 91:4
119:1
**represent** 54:12
72:6 113:2
**representation**
53:22
**representative**
11:3 46:13
**represented**
90:4,7
**represents** 7:12
112:7 123:9
124:8
**request** 5:19
23:7,13 25:22
26:12 37:9
43:20 56:20
58:7,11,19
59:3 60:14
84:8 110:10,19
111:2
**requested** 45:14
55:12 60:13
101:7 105:17
119:17
**requesting**
105:23
**requests** 106:21
106:23
**require** 23:2
58:14
**required** 17:7

23:15 67:22
68:2,19
**requirements**
59:8
**respective** 2:10
**respond** 71:11
94:3
**responded** 94:8
**response** 5:20
58:12 72:16
74:1 76:18
77:15 87:11,14
90:5,21 104:4
104:12 110:1
111:2
**responses** 93:19
**responsible** 8:17
91:1
**responsive**
110:10
**results** 18:10
**retain** 105:8
**retained** 3:13
69:5,6 73:21
74:14 77:10
86:10 88:4
105:6
**return** 40:22
69:3
**returned** 74:13
117:4,5
**reverse** 28:14
32:15
**review** 8:16
11:20 100:5
**reviewed** 12:5
13:10 64:13
95:14 96:4,4,6
102:17
**reviewing** 8:20
15:2
**Richard** 4:7
**right** 8:9,12,19
9:4,7,12,18
11:1 13:11,19
13:23 14:7,22

15:11,13 17:16
17:21 18:16
20:1,18 24:9
24:16 25:16
26:16 27:2
29:4,7,16,21
30:18 31:11,13
31:16 32:10,14
33:1,9,17
34:19 35:7,14
36:14 38:18,23
41:15 42:17
43:9,15,19
44:21 45:8
46:15 47:2
48:4 49:1,5,10
49:12,16,22
50:2,6 51:5,23
52:2,22 53:5
54:11,21 55:14
55:16 56:1,8
58:8 62:6,15
62:17 64:1,4
65:16 67:6,8
68:7,10 69:23
70:2 71:7 72:4
72:13 73:11
74:4,12 75:1,6
75:14 77:1
78:2 79:9
80:23 81:8
82:9 83:3,7
84:11 85:5
86:9 87:18,21
87:21 88:9,10
88:16,18 89:12
89:13 90:17
94:12 95:20
96:3 97:1 98:3
98:18 100:20
104:1,18
105:16,20
106:14,15
108:5,11
109:23 111:8
113:19 114:12

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

114:17,21
115:1,2,13,15
116:14 117:6,7
117:12,18
118:9 119:4,8
119:14 120:12
121:13
risk 8:18
Routine 69:10
routinely 75:19
row 38:1
rubber 24:18
Rule 3:6
Rules 3:7 6:8
run 40:20

S

S 2:6,6 4:1 117:2
117:4
save 94:1 114:7
saved 93:22
saw 41:15 69:14
91:14 99:11
103:21
saying 52:10,11
54:22 55:19
56:6,14 59:22
61:1 70:14
71:2,6 90:7
97:19 98:7,10
98:13,15,20
102:14,22
says 22:13 24:13
24:15 33:18
39:20 40:16
50:7,22 51:17
51:21 66:11
67:14,19 69:22
70:3,5 72:17
73:9,12 75:12
79:6 83:3,22
86:10 87:1
91:10,19
101:17 103:3
104:11 107:11
109:3 110:7

113:7 117:4
scanned 91:22
SCAZ 4:18
scenes 76:6
score 40:16,17
40:19,21,22
41:7,10,11,23
43:21 44:23
45:10 82:6
83:16
scores 41:1,4
48:10
scoring 42:6
screen 31:9
37:21
screenshot 81:2
scroll 34:13 43:6
46:2 55:3 70:1
72:12 73:18
77:3 105:14
scrolling 114:13
scrubbing
117:14
scrubs 37:7,10
37:13
Seals 3:10 4:5,6
5:5 7:4,7,11
29:23 30:10,18
31:20 79:12,18
80:1,14 104:16
114:7,13,19
120:2,7 121:18
121:22
second 13:1
28:22 52:20
64:7 69:16
89:12 96:11
secondary 34:4
seconds 47:14
47:23
secretary 9:16
secretive 41:23
security 38:21
39:3 40:5
86:21 95:5,13
95:17 101:10

101:21 116:17
see 24:23 29:3,5
29:6,11,14
31:11 34:14
35:14 36:22
37:5,21 38:19
39:7 49:8 55:5
55:18 56:10
62:2 63:23
64:1,14 67:5
69:19 70:13
72:13 73:1
75:21 81:12
82:4,7,10 85:8
85:8,9 87:2
92:16 100:12
107:12 109:3
110:11 112:1
113:19 115:16
117:6 118:5
seek 11:18 21:14
22:5
seen 17:19 26:20
28:2 64:17
72:8 89:16,18
96:20 111:18
115:3 120:14
select 102:8
selected 99:4
send 16:18
61:12 78:12
79:16 80:10
89:5
sending 56:8
70:21 74:10
sends 15:14
61:14
sense 19:10
21:20 31:19
82:13 85:6
sensitive 38:14
sent 11:8 19:11
19:16 20:4
42:21 45:14
46:9,23 56:15
57:18 61:19

83:2 87:15
91:22 98:2
99:3,7 104:4
104:13 109:18
116:6 117:1,2
117:3
service 27:4
39:9 40:6 51:1
51:1 53:2,3,12
53:16 54:3,8
54:16 55:19
56:7,12 57:14
59:23 63:9,12
66:9,11 69:18
69:19 70:14
71:13 97:11
101:3 103:7,9
111:13,21
112:2 119:15
services 27:11
59:13 66:14
70:4 102:19
103:2 113:5
set 65:10
sets 31:4
settlement 55:13
66:16
seven 37:23
shaking 31:20
share 28:17
31:10
Sharon 1:8 7:13
98:20
shed 104:20
SHEET 125:2
shoot 30:14
short 44:17
63:19
shorthand 2:12
6:4 50:6
show 62:7 89:14
96:12 106:15
109:16 110:16
111:10 112:19
showed 105:16
showing 43:2

46:20 72:4
81:4 109:22
110:1
shows 91:12
side 11:19
signature 2:17
signed 111:16
111:19,21
significance
36:15,17,23
40:23 44:8
45:22 47:5
58:17 68:17
69:7
significant
37:20 118:4,7
signing 2:2
similar 36:11
56:6
simple 22:13
simply 35:16
48:23
single 115:20
sir 29:23
six 37:22
sixth 40:15
slowly 34:13
smarter 120:5
social 22:19
38:10,21 39:3
40:5 86:20
91:11 95:4,13
95:17 101:10
101:21 102:23
116:17
software 23:6
25:21 27:21
39:13 40:11,13
55:23 60:8
61:9 81:3
107:18,20
108:4 119:3
sorry 21:17 24:4
31:2 33:22
45:16 51:15
52:20 55:4

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4

Michelle Dove

8/18/2023

97:22 98:22
104:8 107:22
108:12
**sort** 15:22 19:13
23:18 25:9
27:8 34:2 40:1
41:13 62:23
80:16 83:21
102:7 116:21
**sorts** 7:22
**sounds** 13:18,19
52:21
**source** 107:5
109:11
**SOUTHERN**
1:3
**speak** 13:20
**special** 81:19
**specific** 62:7
71:4 84:17
91:1
**specifically**
11:20 74:21
84:1 109:20
120:17,23
**specifics** 116:18
**spend** 11:15
**spent** 12:18
**spoke** 49:15,18
**stamp** 24:18
**stamped** 32:7
**stand** 26:8
103:15
**standard** 77:12
**start** 32:16,17
42:20 78:15
81:9
**started** 31:17
93:17
**starting** 31:8
37:10,13
**starts** 29:16
31:18 36:9
50:8
**state** 2:13 6:5
35:21 45:19

123:3 124:4
**stated** 123:8
124:10
**states** 1:1 10:1
**stating** 69:22
**status** 35:15
56:22 69:4
74:15 76:10
**statute** 14:20
**stenotype** 123:7
**step** 80:2
**steps** 101:12
**STIPULATED**
2:8,16,20
**stipulation** 6:9
**stipulations** 7:3
**stolen** 102:10
**stop** 26:9,9
34:16 62:21
**strategies** 37:3
**strategy** 37:16
46:11 78:18
**strictly** 10:17
**stuff** 48:19 88:2
**submits** 89:6
**subpoena**
109:19
**successful** 41:13
**sufficient** 88:22
**Suite** 4:8
**summary** 5:22
28:6 39:11
41:13 79:6,13
113:23 114:2,4
115:13,21
**supervisor**
60:12
**supplemental**
40:9
**supposed**
115:18,19
**sure** 10:20 15:19
16:6 19:20
21:1,6 22:6
25:8 26:19
27:5 28:18,19

30:12 31:2,5,5
31:7 35:6 36:1
37:13 40:7
41:17,19 42:3
43:22 47:15
50:8,14 54:5
58:5 64:10
65:2 66:4 70:1
76:12,15 77:13
81:9 83:16,17
89:23 90:1,23
91:3 95:16
98:1 99:5,12
100:15 101:6
101:12 102:5
108:14 111:5
113:15,18
120:4
**sworn** 6:18
**system** 1:14 7:14
8:6,10,18 9:8
9:15,19 10:15
10:20 11:2,6
13:7 14:2,8
15:8,19 16:1,3
16:8,17 17:5,7
17:15 18:9,14
18:23 20:9,18
21:8,11,13,23
22:2,21 23:11
23:23 24:6,16
24:23 25:10,14
25:16 26:2,12
26:17,21 27:12
27:17,20,23
28:3 32:20
33:2,6 36:18
38:10 40:11
41:3 43:4 52:1
52:9,13,16
53:11,18 54:2
54:13 55:17
56:11,19 57:6
59:2 60:23
62:12,15,19,22
63:1,4,10,14

63:17 64:13
69:13 70:12,19
72:15 75:3
77:18 80:8
85:14,18 88:12
88:18,22 90:11
90:14 91:5
92:12 93:14,18
93:22 94:4,21
95:3 96:23
101:15,19,22
102:1 103:11
103:21 105:17
105:23 107:4,5
107:16 108:6
108:10,17
109:1,8,11
110:15 111:12
111:23 112:14
113:9 116:1,9
118:20 119:15
119:20 120:15
120:16,22
**System's** 8:21
10:12 15:3
18:4,19 20:2
26:2 57:18
58:23 62:9
72:7 88:3
91:23 94:14
99:16 100:7,23
106:4 107:6,9
107:15,18
108:19,22

_____

**T**

**T** 2:6,6 4:17
123:1,1 124:2
124:2
**take** 11:13 12:15
30:17 66:16
79:15,21 87:5
93:2,6 97:7,8
110:14
**taken** 2:11 3:11
30:21 72:14

80:4 93:9
120:10
**takes** 114:11
121:14
**talk** 26:16 41:20
86:5
**talked** 14:23
43:22 51:23
116:20
**talking** 21:10
29:19 38:5
118:22
**Tampa** 4:20
**tasked** 90:14
**team** 36:9 38:3
45:23 47:9,22
60:16,17 68:11
100:4,14 101:2
**telecommunic...**
27:11
**telephone** 27:4
33:11,15,17
39:5 51:6,21
52:1
**tell** 29:4 32:18
54:5 67:7,12
73:18 76:17
78:8 81:7
86:14 90:5
92:23 103:17
**telling** 59:6
81:13 88:12
**tells** 52:8
**temporally**
82:19
**ten** 36:19
**term** 27:23
**terms** 100:7
111:20
**terribly** 97:9
**testified** 6:19
84:12
**testimony** 1:19
3:11 12:23
62:9 91:23
94:15 111:12

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

text 61:17
Thank 7:10 23:9
  49:20 104:17
  114:19 120:7
  121:7
theft 102:7
thereto 3:5
thing 15:22
  19:13 27:9
  35:4 116:21
things 7:23
  34:19 49:1
think 14:22
  24:15 27:5,7
  31:19 42:8
  49:20 60:4
  61:13 62:3
  66:12 74:4
  75:15 78:19
  79:5,9 83:21
  85:23 88:9
  95:2,16 98:12
  98:15 103:21
  109:2 113:22
  119:23 120:13
thinking 121:8
third 10:14 33:8
thought 31:7
three 20:20 21:2
  37:22 72:12,14
  75:8
three-day 57:3
thumbs 80:14
time 3:3,4 11:15
  12:18 20:1
  46:18 47:23
  51:1,2 54:20
  57:3 58:6
  62:14 67:12
  69:16 74:22,23
  78:11 79:19
  82:18 83:5
  85:14 90:13
  91:7 97:7
  104:12 105:9
  109:18 114:8

120:17 123:8
  124:10
timeframe
  121:8
times 7:17 20:6
  23:4 76:8
title 8:5,6
titles 9:14
today 7:15 11:4
  11:13,21 13:21
  42:9 72:9 97:4
  121:2,10
told 8:2 53:1
  76:14 95:1,2
  121:11
tone 98:12,15
tool 16:4
top 31:16 36:15
  37:15 42:19
  68:10,18 70:3
  79:8
topics 12:21,23
touch 29:8
tradeline 26:12
  105:19,23
transcript 3:10
  121:19 123:10
  124:9
transfer 64:21
  70:19 77:13
transferred 76:7
transfers 75:18
transition 76:11
translate 50:5
  66:1
translating
  87:21
transpired
  108:16
TransUnion
  17:6 52:17
  64:11,19 65:5
  77:19 78:6
  82:11 85:15
  86:15 87:6
  88:11,16 89:4

89:15 90:20
  93:16 94:20
  98:18 99:4,18
  103:23 104:14
  105:18 119:18
TransUnion's
  89:10 90:4
  101:17
treated 105:9
trial 3:3
tried 105:4
trigger 18:14
triggered 99:8
  101:2
triggers 58:7
tripping 101:23
truck 45:16
true 21:13 22:4
  55:20 61:1
  63:8 85:22
  99:10 103:4
  120:16,20,21
  121:3,6 123:10
  124:9
trust 112:12
try 46:17 63:2
  78:11
trying 25:9
  26:21
two 13:5 31:4
  36:15,18 37:22
  44:3,5 64:5,6,8
  77:2 85:10
  86:1 93:3
  117:2
type 83:22 112:5
typically 17:15
  17:17,18 20:20
  40:2 60:7
  61:13 102:6
  118:16

_____

U

U 2:6
U-verse 26:22
  27:3 43:7

47:23 53:2,12
  54:3 55:19
  59:22 68:12
  69:17 72:20
  75:11 77:18
  78:4 103:4
  109:22 111:13
  112:1 119:15
unable 110:9
unanswered
  46:9
underlying
  23:19
understand 11:2
  12:20 14:9
  15:18 21:21
  24:11 30:9
  42:5 54:1
  57:17,20 60:6
  65:2 85:21
  91:21 99:14
  121:9
understanding
  26:23 27:9
  30:2 41:18
  42:15 44:11,19
  75:13 82:2
  83:14 84:20
  102:18 108:15
understood
  34:12,12 44:21
  115:22,22
undertake
  111:23
UNITED 1:1
unknown 33:18
unpaid 10:13,18
unredacted 93:2
unusual 90:17
update 25:2
  42:23 44:18,20
  58:1 83:8,22
  84:5,22 86:14
  90:9
updated 16:14
  27:21 43:4

51:17 55:9,22
  62:2,11 64:7
  67:14 70:21
  71:1 84:1 85:2
  112:11
updates 109:5
  117:15
uploaded 109:7
use 32:6 40:18
  48:9 95:11
uses 27:20 28:1
  41:3
Usual 7:2
usually 39:10
  61:17 78:14,16
  79:6

_____

V

valid 37:14
  119:21
validation 56:17
  56:23 58:8,11
  58:20 59:3,10
  68:4 110:20
  121:4
validity 25:22
  26:8 57:7
  112:10
validly 25:6
  53:22 54:14
  96:7 103:20
  112:8,13
valuable 16:12
value 40:16,17
  43:21
values 44:23
variety 60:10
vendor 37:9
  40:18,20 48:9
  48:14
verbal 58:1
  59:11,12
verbally 58:13
verification
  17:21 24:8
  51:13 101:8

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

Michelle Dove                                           8/18/2023

**verified** 20:21
20:22 21:5,15
22:6 50:20
51:6,20,21
55:7 66:17
86:19,22 87:23
95:4 96:10
103:22 109:12
109:13 113:20
116:1
**verifies** 24:2,6
25:10
**verify** 21:4
22:21 23:5
24:17 25:17,21
26:15 51:19
59:21 63:2,22
66:7 71:5
86:11 87:11,14
87:15 88:5
108:9 112:9
**verify/CBR**
67:20
**verifying** 51:3
90:6
**version** 80:11
**VIC** 50:20 66:7
**vice** 9:17
**viewed** 44:7,10
44:12 55:8
**visible** 82:2,17
83:4,11,15
**vs** 1:12

_____

**W**

**W** 3:10 4:5
**wait** 78:22
**waived** 2:3,19
**walk** 21:22 81:6
82:14
**want** 12:8 30:1
31:2,6 34:13
46:4 73:19
83:13 84:13
86:4 89:14
90:2 93:2

113:17 114:7
121:22
**wanted** 30:14
59:19 60:6
118:11
**warehouse**
47:10,15,18
68:12
**warehoused**
68:14
**warning** 35:8
**warrant** 54:12
**warrants** 60:19
**wasn't** 28:23
41:17 44:15
50:4 53:3
54:16 82:2,5
83:4,14 100:13
103:17
**waste** 79:18
**way** 16:7,12
17:12,18,22
30:11 53:19
73:5 76:20
78:7 82:9 84:3
85:3 112:4
113:22 114:8
115:20
**ways** 19:12
60:10,20
**we'll** 12:20 32:6
67:10 86:5
107:3
**we're** 28:18
37:19,19 39:15
43:22 48:22
56:3 63:14
70:2 74:9,16
78:3 83:21
94:13 103:18
109:6 112:4
114:14
**we've** 13:4 21:10
23:16 29:18
34:1
**website** 113:4

**weekly** 78:1,2,5
84:15,16,18
85:1
**went** 40:4 47:14
47:18 76:9
105:5 116:20
**weren't** 30:6
50:1
**WH** 68:11
**Whitney** 3:10
4:5 7:11 29:22
114:17
**Willow** 90:10,10
**Wisconsin** 10:6
10:7
**wish** 77:4
**withdraw** 59:16
**witness** 2:18
6:12 13:2
114:3
**wondering** 65:9
**word** 33:8 74:3
74:4
**words** 101:23
**work** 9:8 36:7
40:10,11 47:16
60:9 67:17
**worked** 9:10,11
41:17 90:13
91:7 99:5
**working** 44:9
45:23 47:9,22
68:11 74:16
91:5
**works** 12:7
17:12 18:1,2
41:14,19 98:23
112:4
**would've** 33:20
39:17 62:14
96:3 100:3,6
**wouldn't** 38:22
40:2 63:11
78:9
**writes** 24:12
**writing** 57:11

60:15
**written** 19:13
59:7 66:1
**wrong** 24:13,15
49:21 84:14
85:13 88:8
**wrongdoing**
102:8
**wrote** 93:16

_____

**X**

**X** 117:3

_____

**Y**

**y'all** 9:23 10:4,9
50:1 54:10
100:18 112:17
**y'all's** 117:21
**yeah** 30:16,18
31:15 55:6
73:17 77:8
99:14 101:14
113:22 114:7
118:14 121:8
121:21
**yes-1** 91:20
**yesterday** 113:5
113:12

_____

**Z**

**zoom** 2:13 6:10
29:7

_____

**0**

**0** 40:16
**001** 87:22 95:2
98:1 101:16
102:3

_____

**1**

**1** 5:14 12:8,12
32:7 69:8 87:7
**1/4/21** 43:1
**1:44** 66:3
**1:44:03** 67:15
**10:00** 50:2

**100** 41:18
**106** 5:19
**11** 107:8
**11:05** 122:8
**11:59:59** 48:8
**110** 5:20
**112** 5:21
**1135** 4:19
**115** 5:22
**118** 87:1,8,22
**12** 5:14 31:17
32:8,18
**12/28/20** 32:16
37:20
**12th** 72:22 73:4
**15** 3:8 28:9
29:13
**151** 82:7
**1692G** 56:16
**17th** 55:11
**18** 2:14 6:11
**1988** 3:8
**1st** 65:16,21
66:2 67:11,14
69:15 70:11

_____

**2**

**2** 5:15 28:8,11
29:6 32:7
68:10 85:7
118:22
**2/1/21** 45:13
**2/19/21** 48:8
**2/20/22** 69:1
**2:09:54** 49:21
**2:22-CV-0148...**
1:6
**20** 68:9
**2014** 8:11
**2018** 66:10
**2020** 29:17
32:23 72:22
78:6
**2021** 49:5,8
57:22 58:13
64:2,9 65:21

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4**

Michelle Dove                                    8/18/2023

66:2 67:11,14
69:15 70:11
81:19 82:19,22
83:1
**2022** 68:9 72:23
73:11,15,21
75:2 76:20
77:15,20 78:7
83:8,23 84:8
85:9 88:20
104:4 105:5,17
107:8,17 108:7
**2023** 2:14 6:11
**20560** 50:8
**20th** 29:17 49:4
71:18 72:23
73:10,15,20
74:6 75:2
76:19 77:9,15
77:19 105:5
**21** 45:5 55:12
86:2
**21st** 65:11
**22** 32:17 86:7
89:1 95:15
104:22 109:14
**22nd** 94:6,16
**23** 87:11,15 88:1
**23rd** 49:5 85:9
104:4
**26th** 65:15
**279** 40:16
**28** 5:15
**28th** 32:23 73:4
81:19 82:15
**29th** 65:15

_____ **3** _____
**3** 5:16 65:22
70:3 71:20
72:1,5
**3/3/21** 50:6 55:5
**3:10** 32:23
**30** 57:19 58:17
59:2,7 121:19
**30-day** 56:17

58:6
**30(b)(6)** 13:1
**300** 4:7
**30th** 84:7 105:17
**31044** 34:22
**33619** 4:20
**35203** 4:9,13
**36** 78:16,20
**38** 61:15
**3rd** 49:7 57:21
58:13

_____ **4** _____
**4** 5:17 28:9
29:11 48:22
80:15,20 81:1
84:17
**4/17** 36:3
**400** 4:8 24:16
**41726** 37:8
**42** 61:15
**45** 78:17
**450** 9:21,21
**4PAGE** 125:3

_____ **5** _____
**5** 5:18 48:6,7
96:13,15,18
**5(d)** 3:6
**5/23/22** 104:10
**5:59:27** 43:1
**500** 9:20,21
24:15

_____ **6** _____
**6** 5:19 45:9 64:1
106:16,18
**6:17:39** 43:11
**6:39** 64:2
**6:48:01** 85:9
**6th** 64:9 65:6
83:8,23

_____ **7** _____
**7** 5:5,20 44:13
44:22 83:1

110:2,4
**72** 5:16
**7th** 82:19,22

_____ **8** _____
**8** 5:21 43:10
112:20,22
**8:30** 2:15 6:11
**80** 5:17
**899** 113:6

_____ **9** _____
**9** 5:22 37:19
42:19 115:7,9
118:10
**9/30/2023**
123:23
**9:47** 44:13
**9:54** 49:8,22
50:6
**90** 94:8
**953** 4:12
**96** 5:18
**97** 123:22

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHARON DORSEY,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **2:22-cv-01489-ACA** |
| | ) | |
| **TRANS UNION, LLC,  and I.C.** | ) | |
| **SYSTEM, INC.** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## PLAINTIFF'S EXHIBIT 1

## TO DEPOSITION OF

## CORPORATE REPRESENTATIVE OF IC SYSTEMS, INC.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-A**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHARON DORSEY,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **2:22-cv-01489-ACA** |
| | ) | |
| **I.C. SYSTEM, INC.** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## 3RD NOTICE TO TAKE DEPOSITION OF
## 30(b)(6) CORPORATE REPRESENTATIVE OF
## DEFENDANT REPRESENTATIVE OF I.C. SYSTEM, INC.

Take notice, that the Plaintiff will take the deposition of the following entities or individuals pursuant to the Rules of Civil Procedure. The deponent(s) must bring all documents listed in this deposition notice and any attachments, and present the originals of these documents for inspection and copying at the deposition. The deposition will continue until completed.

**DEPONENT:**       **Corporate Representative(s) of IC System, Inc.**

**DATE:**       **Friday, August 18, 2023**

**TIME:**       **9:30 a.m. EST**

**PLACE:**       **Via Zoom**

**COURT REPORTER: Birmingham Reporting**

Please note that pursuant to the Rules of Civil Procedure 30(b)(5) & (6), this corporate Defendant must designate an individual to testify as to the following matters:

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## EXHIBIT 4-A

1.    The Defendant's investigation into the claims made by Plaintiff in the Complaint.

2.    The allegations of the Complaint and any amendments thereto.

3.    The details and contents of all Defendant's personnel files of any person who was involved in any collection activities, reinvestigation or credit reporting related to Plaintiff's alleged account.

4.    All documentation methods, if any, whether computerized, manual, or other, of all activities undertaken by the Defendant or its employees or agents related to the collection of account(s) made the basis of Plaintiff's Complaint.

5.    Any correspondence between this Defendant and Plaintiff.

6.    The factual basis for the Defendant's Answer (and any amendments).

7.    The factual basis for the Defendant's defenses and affirmative defenses contained in the Answer (and any amendments).

8.    The maintenance of procedures by Defendant to avoid violations of the Fair Credit Reporting Act.

9.    All documents produced to Plaintiff by Defendant in the course of this case.

10.    All documents referenced or identified in Defendant's initial disclosures or discovery responses.

11.    The history, specific details, and resolution of any formal and informal consumer-initiated complaints, Better Business Bureau Complaints, lawsuits, regulatory actions, claims, litigations, mediations, arbitrations, Commerce department actions, or other actions, legal or otherwise, connected to or arising out of Defendants' consumer debt collection activities, in the period from three (3) years prior to the date of this notice to the present.

12.    All communications between you and any other Defendant in this case in any way related to Plaintiff.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4-A**

13.    All discovery responses by Defendant to any discovery requests.

14.    Whether or not Defendant's credit reportings to the major credit reporting agencies relating to Plaintiff were accurate.

15.    Whether or not Plaintiff owes or ever owed money to AT&T U-Verse or to IC System, Inc.

16.    The policies, procedures and practices put in place by the Defendant to insure that the investigations or reinvestigations initiated by Plaintiff (whether directly to Defendant or through a CRA) would result in accurate credit reportings relating to Plaintiff.

17.    The definition of "accurate" and "verifiable" as those terms are used in Defendant's investigation or reinvestigation process.

18.    The nature and content of any records maintained by the Defendant--including archived copies and recorded conversations--relating to the reinvestigation of any trade lines appearing on Plaintiff's credit report.

19.    The existence and content of any reports or documents assessing the accuracy or reliability of credit reporting submitted by Defendant including any reports to or by the credit reporting agencies regarding the accuracy and reliability of those reportings.

20.    Amount paid to and training provided to the employees responsible for reinvestigating disputed credit reportings made by the Defendant.

21.    The documents and informational resources available to the Defendant's employees who are responsible for reinvestigating disputed credit reportings made by the Defendant.

22.    The existence, nature, and content of any training provided to Defendant's employees or agents conducting reinvestigations.

23.    The nature, purpose, and means by which requests for reinvestigation are received and by which response may be made.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4-A**

24.    Scope of Defendant's employees' authority to correct credit reporting errors.

25.    The existence and content of any policy or procedure for handling credit reporting reinvestigations.

26.    The documents which are regularly maintained by the Defendant relative to any investigation or reinvestigation or credit reporting, and the content of those documents relative to the Plaintiff.

27.    The identity of any known witnesses to the allegations of fact stated in the complaint or the affirmative defenses asserted by the Defendant.

28.    The identity and credentials of any of the Defendant's employees or witnesses who were involved with or handled Plaintiff's account and/or any investigation or reinvestigation relative to Plaintiff's accounts.

29.    Any communications between the Defendant and the Plaintiff or any other entity or person relating to the investigation or reinvestigation of any credit reporting relating to the Plaintiff.

30.    Any releases or waivers signed by the Plaintiff.

31.    The manner in which the Defendant reports or otherwise furnishes credit information to credit reporting agencies.

32.    The procedures in place at the Defendant to insure that false or inaccurate information is not reported on any consumer's credit report or to any credit reporting agency.

33.    The content of each available data field or segment reported relating to any of Plaintiff's personal identifiers including but not limited to name, address and social security number.

34.    The capability of the Defendant's computer to reproduce records of past credit reportings to consumer reporting agencies.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4-A**

35.    The policy, practice, and procedure relating to incomplete reporting of the available data fields or segments reported to credit reporting agencies.

36.    Whether Plaintiff disputed any credit information, supplied by the Defendant, which reportings related to any of Plaintiff's personal identifiers including but not limited to name, address and social security number and the contents of said dispute.

37.    Whether or not the Defendant received notice from any consumer reporting agency that Plaintiff disputed any credit information, supplied by the Defendant, which reportings related to any of Plaintiff's personal identifiers including but not limited to name, address and social security number and the contents of said dispute.

38.    The time and form in which any dispute for the Plaintiff either directly or through a credit bureau was received, and the identity of any persons reviewing or acting on it.

39.    The time, place, and any actions taken in response to any notice or dispute from the Plaintiff either directly or through a credit bureau.

40.    The steps and measures that were taken in the course of investigating or reinvestigating any credit information supplied by the Defendant, which credit information related to any of Plaintiff's personal identifiers including but not limited to name, address and social security number.

41.    The content of any information which was used in order to investigate or reinvestigate any credit reporting dispute by Plaintiff of credit information supplied by the Defendant.

42.    The existence and nature of the legal relationship between the Defendant and any consumer reporting agencies to which it reports credit information.

43.    Any conditions under which the Defendant has agreed to make its data available to the any consumer reporting agency to which it reports credit information.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4-A**

44.    The policy and procedure for when a consumer, such as Plaintiff, disputes that a trade line reported by this Defendant to any of the credit reporting bureaus is the consumer's account.

45.    The policy and procedure upon receipt of documents that support a consumer's dispute such as those provided by Plaintiff to the credit bureaus with Plaintiff's dispute letter in this case.

46.    Any document or other evidence in the Defendant's possession or known to the Defendant that establishes that Plaintiff is indebted to this Defendant in any way or is in any way responsible for the debt involved in this lawsuit.

47.    Policies and procedures that safeguard against collection efforts being directed at consumers who do not owe the debts this Defendant is attempting to collect.

48.    The policies and procedures in use by this Defendant to avoid violations of FDCPA and FCRA.

49.    The content of the phone calls of March 3, 2021 and November 1, 2021.

## DUCES TECUM

**PLEASE TAKE FURTHER NOTICE** the designated representative(s) of Defendant must bring the following documents with them to the deposition: All documents responsive to the Request for Production of Documents and documents related to the topics referenced above.

_/s/ W. Whitney Seals_
W. WHITNEY SEALS,
Attorney for Plaintiff

OF COUNSEL:
COCHRUN & SEALS, LLC
P. O. Box 10448
Birmingham, AL 35202-0448
T: (205) 323-3900
F: (205) 323-3906
E: filings@cochrunseals.com

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4-A**

## CERTIFICATE OF SERVICE

I hereby certify on July 14, 2023. the foregoing served via e-mail to the following:

M Brent Yarborough, Esq.
**WAURICE WUTSCHER, LLP**
420 North 20th Str, Ste 2200
Birmingham, AL 35203
T: (205) 451-0389
E: byarborough@mauricewutscher.com
*and*
Dale T. Golden, Esq.
**GOLDEN SCAZ GAGAIN, PLLC**
1135 Marbella Plaza Drive
Tampa, FL 33619
T: (813) 251-5500
F: (813) 251-3675
E: dgolden@gsgfirm.com
***Counsel for I C System Inc.***

    /s/ *W. Whitney Seals*
OF COUNSEL

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-A**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHARON DORSEY,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **2:22-cv-01489-ACA** |
| | ) | |
| **TRANS UNION, LLC, and I.C.** | ) | |
| **SYSTEM, INC.** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## PLAINTIFF'S EXHIBIT 2

## TO DEPOSITION OF

## CORPORATE REPRESENTATIVE OF IC SYSTEMS, INC.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4-B**

**Account History**



| Date | Action | Note | | | |
|---|---|---|---|---|---|
| 10/26/2022 2:55:01 PM | Consumer Attorney Acknowledged | Written Correspondence from Consumer's Attorney | Debt Numbers: 121920037 | Sandra Gustafson | IC House Collector |
| 10/26/2022 2:55:01 PM | Added | | Contact COCHRUN & SEALS LLC Other Phone (Verified (205) 323-3800 | Sandra Gustafson | IC House Collector |
| 10/26/2022 2:55:01 PM | Added | | Contact COCHRUN & SEALS LLC Other Address PO Box 10448 | Sandra Gustafson | IC House Collector |
| 10/26/2022 2:55:01 PM | Added | | Contact COCHRUN & SEALS LLC | Sandra Gustafson | IC House Collector |
| 10/26/2022 2:55:01 PM | Updated | | Consumer consumer has attorney flag changed from No to Yes | | IC House Collector |
| 10/26/2022 2:48:41 PM | Viewed | | | Sandra Gustafson | IC House Collector |
| 5/23/2022 9:48:01 AM | Verify / CBR investigation complete | ACDV | ACDV - TUN - 021-Not erroc, 118-Balance/ past due amount / Verify response: 23 cc Debt Numbers | | IC House Collector |
| 5/23/2022 9:48:01 AM | Updated | | Status changed from Retained Collections to Verify / CBR investigation complete | | IC House Collector |
| 2/20/2022 11:59:59 PM | Start Phase | Batch Processing | Close Debt Numbers 121920037 | | IC House Collector |
| 2/20/2022 11:59:59 PM | Retained Collections | Batch Processing | Debt Numbers 121920037 | | IC House Collector |
| 2/20/2022 11:59:59 PM | Not-Qualified - Stop Phase | Batch Processing | Credit Monitor Return Debt Numbers 121920037 | | IC House Collector |
| 2/20/2022 11:59:59 PM | New Business | Batch Processing | Close Debt Numbers 121920037 | | IC House Collector |
| 2/20/2022 5:55:52 PM | Updated | | Status changed from Active to Retained Last event changed from New Business to Retained Collections | | IC House Collector |

ICS004

| | | | | |
|---|---|---|---|---|
| 2/20/2022 5 55:52 PM | Updated | Last event changed from Dispute - Answer Not Required to New Business | IC House Collector | 235680288-1 |
| 2/20/2022 5 55:52 PM | Updated | Working team changed from ATT WH Uverse CW Phase to AT&T Warehouse House | IC House Collector | 235680288-1 |
| 2/20/2022 5 55:52 PM | Updated | Current linked debt phase state ID changed from 675082769 to 675082774 | IC House Collector | 235680288-1 |
| 2/20/2022 5 55:52 PM | Updated | Working team changed from ATT WH Uverse Seconds Phase to ATT WH Uverse CW Phase Current linked debt phase state ID changed from 599431998 to 675082768 | IC House Collector | 235680288-1 |
| 2/20/2022 5 55:52 PM | Updated | Assigned collector changed from Lori Bagniewski to IC House Collector Collector assigned effective date changed from Nov 1 2021 1:44PM to nothing Collector assigned expiration date changed from Nov 15 2021 12:00AM to nothing | IC House Collector | 235680288-1 |
| 2/20/2022 5 55:52 PM | Updated | Working team changed from ATT WH Uverse Seconds Phase to ATT WH Uverse CW Phase Assigned collector changed from Lori Bagniewski to IC House Collector Collector assigned effective date changed from Nov 1 2021 1:44PM to nothing Collector assigned expiration date changed from Nov 15 2021 12:00AM to nothing | IC House Collector | 235680288-1 |
| 2/20/2022 5 55:51 PM | Updated | Current linked debt phase state ID changed from 599431998 to 675082768 | Lori Bagniewski | 235680288-1 |
| 11/1/2021 1:44:08 PM | Viewed | | Lori Bagniewski | Lori Bagniewski | 235680288-1 |
| 11/1/2021 1:44:03 PM | Updated | Assigned collector changed from Barbara Hauke to Lori Bagniewski Collector assigned effective date changed from Mar 3 2021 2:08PM to Nov 1 2021 1:44PM Collector assigned expiration date changed from Mar 17 2021 12:00AM to Nov 15 2021 12:00AM Last event changed from Verify / CBR Investigation complete to Dispute - Answer Not Required | Barbara Hauke | 235680288-1 |

ICS005

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-B**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 11/1/2021 1:44:03 PM | | Account Note | vtc mm ms sz was nvr installed in home, oct 2018 client sz was to remove bill, client services are not available in her area, offered 45% 68.10 ms sz not paying ver addy ph e mail | Lori Bagniewski | Barbara Hauke | 235660268-1 | |
| 11/1/2021 1:44:02 PM | Dispute - Answer Not Requeud | Telephoned - Consumer | OTH - Dispute-Other Debt Numbers: 121920337 | Lori Bagniewski | Barbara Hauke | 235660268-1 | 121920337 |
| 11/1/2021 1:44:02 PM | Dispute-Other | Telephoned - Consumer | Dispute-Other (Phone, Consumer Mobile (205) 601 ) Debt Numbers: 121920337 | Lori Bagniewski | Barbara Hauke | 235660268-1 | 121920337 |
| 11/1/2021 1 37:09 PM | Agent Release | Telephoned - Consumer | (205) 601 Agent 50055 Call Time 365s Debt Numbers 121920337 | | Barbara Hauke | 235660268-1 | 121920337 |
| 11/1/2021 1 23:29 PM | Answer Machine | Telephoned - Consumer | (305) 815 Agent Dialed Call Time. 9s Debt Numbers: 121920337 | | Barbara Hauke | 235660268-1 | 121920337 |
| 10/28/2021 8:48:08 AM | Consumer Hangs Up | Telephoned - Consumer | (205) 601 Agent Dialed Call Time: 1s Debt Numbers. 121920337 | | Barbara Hauke | 235660268-1 | 121920337 |
| 10/28/2021 8 23:37 AM | Answer Machine | Telephoned - Consumer | (305) 815 Agent Dialed Call Time. 9s Debt Numbers. 121920337 | | Barbara Hauke | 235660268-1 | 121920337 |
| 10/28/2021 10:10:38 AM | Possible Disconnected Number | Telephoned - Consumer | (205) 601 Debt Numbers. 121920337 | | Barbara Hauke | 235660268-1 | 121920337 |
| 10/28/2021 9:48:18 AM | Answer Machine | Telephoned - Consumer | (205) 601 Agent Dialed Call Time: 4s Debt Numbers. 121920337 | | Barbara Hauke | 235660268-1 | 121920337 |
| 10/26/2021 9:42:27 AM | Answer Machine | Telephoned - Consumer | (305) 815 Agent Dialed Call Time. 4s Debt Numbers. 121920337 | | Barbara Hauke | 235660268-1 | 121920337 |
| 10/21/2021 2:18:45 PM | Consumer Hangs Up | Telephoned - Consumer | (205) 601 Agent Dialed Call Time. 11s Debt Numbers 121920337 | | Barbara Hauke | 235660268-1 | 121920337 |
| 10/21/2021 2 02:14 PM | Answer Machine | Telephoned - Consumer | (305) 815 Agent Dialed Call Time 4s Debt Numbers 121920337 | | Barbara Hauke | 235660268-1 | 121920337 |
| 10/8/2021 6 39:24 AM | Verify / CBR Investigation complete | ACDV | ACDV - TDN - 010-Claims paid. 111-Company will delete / Verify response 23 cc Debt Numbers: 121920337 | | Barbara Hauke | 235660268-1 | 121920337 |
| 10/8/2021 6 39:23 AM | | Updated | Last event changed from Dispute - Answer Not Required to Verify / CBR Investigation complete | | Barbara Hauke | 235660268-1 | |
| 5/6/2021 9 39:12 PM | | Updated | LetterStatusCode changed from P to X | balchuser | Barbara Hauke | 235660268-1 | |
| 5/6/2021 9 39:12 PM | | Account Note | User Requested | balchuser | Barbara Hauke | 235660268-1 | |
| 5/6/2021 9 01.22 PM | | Added | Letter Request: 540 - 4th letter in the Intensive | | Barbara Hauke | 235660268-1 | |
| 3/17/2021 10 51:31 PM | | Account Note | User Requested | balchuser | Barbara Hauke | 235660268-1 | |
| 3/17/2021 10 25:30 PM | | Added | Letter Request: 278 - Settlement | | Barbara Hauke | 235660268-1 | |
| 3/3/2021 10 22:00 PM | | Updated | Consumer Sharon Dorsey Home Phone (Verified) (205) 601 type changed from Home to Mobile | balchuser | Barbara Hauke | 235660268-1 | |
| 3/3/2021 2 09:16 PM | | Viewed | | Barbara Hauke | Barbara Hauke | 235660268-1 | |

ICS006

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4-B**

| Date/Time | Event | Type | Details | Collector | IC House Collector | Account # | |
|---|---|---|---|---|---|---|---|
| 3/3/2021 2 09:55 PM | | Updated | Assigned collector changed from IC House Collector to Barbara Hauke Collector assigned effective date changed from nothing to Mar 3 2021 2:09PM Collector assigned expiration date changed from nothing to Mar 17 2021 12:00AM Last event changed from New Business to Dispute - Answer Not Required Disputed flag changed from No to Yes | | IC House Collector | 235680288-1 | |
| 3/3/2021 2 09:55 PM | | Updated | Assigned collector changed from IC House Collector to Barbara Hauke Collector assigned effective date changed from nothing to Mar 3 2021 2:09PM Collector assigned expiration date changed from nothing to Mar 17 2021 12:00AM Last event changed from New Business to Dispute - Answer Not Required | | IC House Collector | 235680288-1 | |
| 3/3/2021 2 09:54 PM | Dispute - Answer Not Required | Consumer Called | OTH - Dispute-Other Debt Numbers: 121920337 | Barbara Hauke | IC House Collector | 235680288-1 | 121920337 |
| 3/3/2021 2 09:54 PM | Dispute-Other | Consumer Called | Dispute-Other (Phone: Consumer Unidentified Phone ) Debt Numbers: 121920337 | Barbara Hauke | IC House Collector | 235680288-1 | 121920337 |
| 3/3/2021 2 09:54 PM | | Updated | Consumer Sharon Dorsey Bill To Address reason changed from Mailbox Updated to nothing status changed from Unknown to Verified | Barbara Hauke | IC House Collector | 235680288-1 | |
| 3/3/2021 2 09:54 PM | | Updated | Disputed flag changed from No to Yes | Barbara Hauke | IC House Collector | 235680288-1 | |
| 3/3/2021 2 09:54 PM | | Added | Consumer Sharon Dorsey Home Phone [Verified] (205) 601█ | Barbara Hauke | IC House Collector | 235680288-1 | |
| 3/3/2021 2 09:54 PM | | Account Note | 20560█ █ wic min ma dep  all could not provide service at that time  never had service. not avail in area at that time. ver eddy and e-mail # | Barbara Hauke | IC House Collector | 235680288-1 | |
| 2/23/2021 8:17:28 AM | Line Busy | Telephoned - Consumer | (205) 68█ Agent Dialed Debt Numbers 121920337 | | IC House Collector | 235680288-1 | 121920337 |
| 2/23/2021 8 06:50 AM | Answer Machine | Telephoned - Consumer | (305) 815█ Agent Dialed Call Time: 4s Debt Numbers 121920337 | | IC House Collector | 235680288-1 | 121920337 |
| 2/20/2021 11 57:21 AM | Line Busy | Telephoned - Consumer | (205) 681█ Agent Dialed Debt Numbers 121920337 | | IC House Collector | 235680288-1 | 121920337 |
| 2/20/2021 11 55:58 AM | Answer Machine | Telephoned - Consumer | (305) 815█ Agent Dialed Call Time: 9s Debt Numbers: 121920337 | | IC House Collector | 235680288-1 | 121920337 |
| 2/19/2021 11 50:50 PM | Vendor Data Append Request | Batch Processing | Credit Monitor-Experian-CreditBatch-Placement Debt Numbers: 121920337 | | IC House Collector | 235680288-1 | 121920337 |
| 2/19/2021 11 50:59 PM | Start Phase | Batch Processing | Litigation Debt Numbers: 121920337 | | IC House Collector | 235680288-1 | 121920337 |
| 2/19/2021 11 50:50 PM | Start Phase | Batch Processing | Suconds Debt Numbers: 121920337 | | IC House Collector | 235680288-1 | 121920337 |
| 2/19/2021 11 50:50 PM | Restart Service - Due to Skip | Batch Processing | Skip Trace Debt Numbers: 121920337 | | IC House Collector | 235680288-1 | 121920337 |
| 2/19/2021 11 50:50 PM | Not Allowed - Stop Phase | Batch Processing | 3rd Party - Retained Debt Numbers: 121920337 | | IC House Collector | 235680288-1 | 121920337 |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4-B**

| 2/19/2021 11:59:59 PM | Not Allowed - Stop Phase | Batch Processing | Attorney Referral Debt Numbers: 121920337 | IC House Collector | 235660288-1 | 121920337 |
|---|---|---|---|---|---|---|
| 2/19/2021 11:59:59 PM | Not Allowed - Stop Phase | Batch Processing | Pre-Litigation Debt Numbers: 121920337 | IC House Collector | 235660288-1 | 121920337 |
| 2/19/2021 11:59:59 PM | New Business | Batch Processing | Litigation Debt Numbers: 121920337 | IC House Collector | 235660288-1 | 121920337 |
| 2/19/2021 11:59:59 PM | New Business | Batch Processing | Seconds Debt Numbers: 121920337 | IC House Collector | 235660288-1 | 121920337 |
| 2/19/2021 11:59:59 PM | Credit Monitor- Add Monitoring | Batch Processing | Credit Monitor-Experian-CrediMatch-Placement Debt Numbers: 121920337 | IC House Collector | 235660288-1 | 121920337 |
| 2/19/2021 9:13:23 PM | | Updated | Working team changed from AT&T Warehouse House to ATT WH Uverse Seconds Phase | IC House Collector | 235660288-1 | |
| 2/19/2021 9:13:23 PM | | Updated | Collector assigned effective date changed from Feb 19 2021 12:00AM to nothing Current linked debt phase state ID changed from 599431891 to 599431898 | IC House Collector | 235660288-1 | |
| 2/19/2021 9:13:23 PM | | Updated | Working team changed from Corporate Litigation to AT&T Warehouse House | IC House Collector | 235660288-1 | |
| 2/19/2021 9:13:23 PM | | Updated | Current linked debt phase state ID changed from 599431853 to 599431891 | IC House Collector | 235660288-1 | |
| 2/19/2021 9:13:23 PM | | Updated | Collector assigned effective date changed from nothing to Feb 19 2021 12:00AM | IC House Collector | 235660288-1 | |
| 2/19/2021 9:13:23 PM | | Updated | Collector assigned effective date changed from nothing to Feb 19 2021 12:00AM | IC House Collector | 235660288-1 | |
| 2/19/2021 9:13:22 PM | | Updated | Working team changed from Corporate Pre Litigation to Corporate Litigation | IC House Collector | 235660288-1 | |
| 2/19/2021 9:13:22 PM | | Updated | Assigned collector changed from Eric Anderson to IC House Collector Collector assigned effective date changed from Feb 20 2021 3:13AM to nothing Current linked debt phase state ID changed from 599431841 to 599431853 | Eric Anderson | 235660288-1 | |
| 2/19/2021 9:13:22 PM | | Updated | Working team changed from Corporate Attorney Referral to Corporate Pre Litigation | IC House Collector | 235660288-1 | |
| 2/19/2021 9:13:22 PM | | Updated | Assigned collector changed from IC House Collector to Eric Anderson Collector assigned effective date changed from nothing to Feb 20 2021 3:13AM | IC House Collector | 235660288-1 | |
| 2/19/2021 9:13:22 PM | | Updated | Current linked debt phase state ID changed from 599431826 to 599431841 | IC House Collector | 235660288-1 | |

ICS008

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4-B**

| Date | | Action | Description | | Agent | Work Team | | |
|---|---|---|---|---|---|---|---|---|
| 2/19/2021 9:13:22 PM | | Updated | Working team changed from ATT WH Diverse Intensive Phase to Corporate Attorney Referral | | | iC House Collector | 235680288-1 | |
| 2/19/2021 9:13:22 PM | | Updated | Current linked debt phone state ID changed from 589970315 to 589431826 | | | IC House Collector | 235680288-1 | |
| 2/11/2021 2:12:23 PM | Answer Machine | Telephoned - Consumer | (205) 68██ Agent Dialed Call Time: 9s Debt Numbers: 121920337 | | | iC House Collector | 235680288-1 | 121920337 |
| 2/11/2021 2:02:52 PM | Answer Machine | Telephoned - Consumer | (305) 815██ Agent Dialed Call Time: 9s Debt Numbers: 121920337 | | | iC House Collector | 235680288-1 | 121920337 |
| 2/11/2021 9:03:26 AM | Answer Machine | Telephoned - Consumer | (205) 68██ Agent Dialed Call Time: 4s Debt Numbers: 121920337 | | | iC House Collector | 235680288-1 | 121920337 |
| 2/11/2021 8:25:04 AM | Answer Machine | Telephoned - Consumer | (305) 81██ Agent Dialed Call Time: 9s Debt Numbers: 121920337 | | | iC House Collector | 235680288-1 | 121920337 |
| 2/10/2021 10:43:35 PM | | Updated | Letter/StatusCode changed from P to S ToAddressId changed from nothing to 222296763 | | batchuser | IC House Collector | 235680288-1 | |
| 2/10/2021 9:12:26 PM | | Added | Letter Request: 278 - Settlement | | | iC House Collector | 235680288-1 | |
| 2/8/2021 2:56:21 PM | Answer Machine | Telephoned - Consumer | (205) 68██ Agent Dialed Call Time: 9s Debt Numbers: 121920337 | | | iC House Collector | 235680288-1 | 121920337 |
| 2/8/2021 2:18:26 PM | Answer Machine | Telephoned - Consumer | (305) 815██ Agent Dialed Call Time: 9s Debt Numbers: 121920337 | | | IC House Collector | 235680288-1 | 121920337 |
| 2/4/2021 8:40:26 AM | | Viewed | | | Jonathan Potaracke | iC House Collector | 235680288-1 | |
| 2/4/2021 8:09:53 AM | Answer Machine | Telephoned - Consumer | (305) 815██ Agent Dialed Call Time: 9s Debt Numbers: 121920337 | | | iC House Collector | 235680288-1 | 121920337 |
| 2/1/2021 9:42:08 AM | No Answer | Telephoned - Consumer | (205) 68██ Agent Dialed Debt Numbers: 121920337 | | | iC House Collector | 235680288-1 | 121920337 |
| 2/1/2021 9:19:30 AM | Answer Machine | Telephoned - Consumer | (305) 815██ Agent Dialed Call Time: 9s Debt Numbers: 121920337 | | | iC House Collector | 235680288-1 | 121920337 |
| 1/28/2021 9:19:12 AM | No Answer | Telephoned - Consumer | (205) 68██ Agent Dialed Debt Numbers: 121920337 | | | iC House Collector | 235680288-1 | 121920337 |
| 1/28/2021 8:15:52 AM | Answer Machine | Telephoned - Consumer | (305) 815██ Agent Dialed Call Time: 4s Debt Numbers: 121920337 | | | IC House Collector | 235680288-1 | 121920337 |
| 1/27/2021 6:25:31 PM | | Updated | ScoreDateTime changed from Jan 24 2021 4:35PM to Jan 27 2021 6:25PM | | batchuser | IC House Collector | 235680288-1 | |
| 1/25/2021 9:54:07 AM | No Answer | Telephoned - Consumer | (205) 68██ Agent Dialed Debt Numbers: 121920337 | | | iC House Collector | 235680288-1 | 121920337 |
| 1/25/2021 9:49:17 AM | Answer Machine | Telephoned - Consumer | (305) 815██ Agent Dialed Call Time: 9s Debt Numbers: 121920337 | | | IC House Collector | 235680288-1 | 121920337 |
| 1/24/2021 4:35:06 PM | | Updated | ScoreDateTime changed from Jan 22 2021 7:42PM to Jan 24 2021 4:35PM | | batchuser | iC House Collector | 235680288-1 | |
| 1/22/2021 7:42:13 PM | | Updated | ScoreDateTime changed from Jan 21 2021 6:20PM to Jan 22 2021 7:42PM | | batchuser | iC House Collector | 235680288-1 | |
| 1/21/2021 6:20:33 PM | | Updated | ScoreDateTime changed from Jan 19 2021 6:38PM to Jan 21 2021 6:20PM | | batchuser | iC House Collector | 235680288-1 | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-B**

| Date/Time | Action | Type | Details | | Collector | ID | Number |
|---|---|---|---|---|---|---|---|
| 1/21/2021 1 54:13 PM | No Contact | Telephoned - Consumer | (205) 681 ███ Agent: 50337 Call Time: 2s Debt Numbers: 121920337 | | IC House Collector | 235660286-1 | 121920337 |
| 1/21/2021 1 50:23 PM | Answer Machine | Telephoned - Consumer | (305) 815 ███ Agent Dialed Call Time: 9s Debt Numbers: 121920337 | | IC House Collector | 235660286-1 | 121920337 |
| 1/21/2021 8 51:24 AM | No Answer | Telephoned - Consumer | (205) 681 ███ Agent Dialed Debt Numbers: 121920337 | | IC House Collector | 235660286-1 | 121920337 |
| 1/21/2021 8:48:13 AM | Answer Machine | Telephoned - Consumer | (305) 815 ███ Agent Dialed Call Time: 9s Debt Numbers: 121920337 | | IC House Collector | 235660286-1 | 121920337 |
| 1/19/2021 6 30:38 PM | | Updated | ScoreValue changed from 406 to 406 ScoreDateTime changed from Jan 18 2021 6 18PM to Jan 19 2021 6 38PM | batchuser | IC House Collector | 235660286-1 | |
| 1/18/2021 6:18:43 PM | | Updated | ScoreValue changed from 413 to 406 ScoreDateTime changed from Jan 17 2021 4 54PM to Jan 18 2021 6:18PM | batchuser | IC House Collector | 235660286-1 | |
| 1/18/2021 11 26:56 AM | Consumer Hangs Up | Telephoned - Consumer | (205) 681 ███ Agent Dialed Call Time: 1s Debt Numbers: 121920337 | | IC House Collector | 235660286-1 | 121920337 |
| 1/18/2021 11 20:02 AM | Answer Machine | Telephoned - Consumer | (305) 815 ███ Agent Dialed Call Time: 4s Debt Numbers: 121920337 | | IC House Collector | 235660286-1 | 121920337 |
| 1/17/2021 4 54:35 PM | | Updated | ScoreValue changed from 423 to 413 ScoreDateTime changed from Jan 15 2021 6 13PM to Jan 17 2021 4 54PM | batchuser | IC House Collector | 235660286-1 | |
| 1/15/2021 6:13:38 PM | | Updated | ScoreDateTime changed from Jan 14 2021 6 23PM to Jan 15 2021 6:13PM | batchuser | IC House Collector | 235660286-1 | |
| 1/15/2021 8 21:25 AM | No Answer | Telephoned - Consumer | (205) 681 ███ agent Dialed Debt Numbers 121920337 | | IC House Collector | 235660286-1 | 121920337 |
| 1/15/2021 8 07:32 AM | Answer Machine | Telephoned - Consumer | (305) 815 ███ Agent Dialed Call Time: 9s Debt Numbers: 121920337 | | IC House Collector | 235660286-1 | 121920337 |
| 1/14/2021 8 23:29 PM | | Updated | ScoreValue changed from 431 to 423 ScoreDateTime changed from Jan 13 2021 6 22PM to Jan 14 2021 8 23PM | batchuser | IC House Collector | 235660286-1 | |
| 1/13/2021 6 22:00 PM | | Updated | ScoreValue changed from 443 to 431 ScoreDateTime changed from Jan 12 2021 6 33PM to Jan 13 2021 6 22PM | batchuser | IC House Collector | 235660286-1 | |
| 1/12/2021 6 33:50 PM | | Updated | ScoreValue changed from 457 to 443 ScoreDateTime changed from Jan 10 2021 4:42PM to Jan 12 2021 6 33PM | batchuser | IC House Collector | 235660286-1 | |
| 1/12/2021 8 54:28 AM | No Answer | Telephoned - Consumer | (205) 681 ███ Agent Dialed Debt Numbers 121920337 | | IC House Collector | 235660286-1 | 121920337 |
| 1/12/2021 8 52:47 AM | Answer Machine | Telephoned - Consumer | (305) 815 ███ Agent Dialed Call Time: 9s Debt Numbers 121920337 | | IC House Collector | 235660286-1 | 121920337 |
| 1/11/2021 8:19:19 AM | No Answer | Telephoned - Consumer | (205) 681 ███ Agent Dialed Debt Numbers 121920337 | | IC House Collector | 235660286-1 | 121920337 |
| 1/11/2021 8:14:38 AM | Answer Machine | Telephoned - Consumer | (305) 815 ███ Agent Dialed Call Time: 9s Debt Numbers 121920337 | | IC House Collector | 235660286-1 | 121920337 |

ICS010

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4-B**

| Date/Time | Category | Type | Details | User | Collector | Account # | Ref # |
|---|---|---|---|---|---|---|---|
| 1/10/2021 4:42:47 PM | | Updated | ScoreValue changed from 461 to 457 ScoreDateTime changed from Jan 8 2021 6 53PM to Jan 10 2021 4:42PM | batchuser | IC House Collector | 235660268-1 | |
| 1/8/2021 6 53:08 PM | | Updated | ScoreValue changed from 463 to 461 ScoreDateTime changed from Jan 6 2021 8:47PM to Jan 8 2021 6 53PM | batchuser | IC House Collector | 235660268-1 | |
| 1/8/2021 9:11:32 AM | No Answer | Telephoned - Consumer | (205) 681█████ Agent Dialed Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 1/8/2021 9 07:57 AM | Answer Machine | Telephoned - Consumer | (305) 815█████ Agent Dialed Call Time: 9s Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 1/7/2021 9:48:28 AM | | Viewed | | Caal Quinonez | IC House Collector | 235660268-1 | |
| 1/7/2021 9:47:55 AM | No Contact | Telephoned - Consumer | (205) 68██████ Agent 50065 Call Time: 1s Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 1/7/2021 9:44:29 AM | Answer Machine | Telephoned - Consumer | (305) 815█████ Agent Dialed Call Time: 5s Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 1/7/2021 2 28:55 AM | | Updated | LetterStatusCode changed from P to 8 ToAddressId changed from nothing to 322296783 | batchuser | IC House Collector | 235660268-1 | |
| 1/6/2021 10:12:32 PM | Added | | Letter Request: 510 - Initial notice - first in the | | IC House Collector | 235660268-1 | |
| 1/6/2021 8:47:23 PM | | Updated | ScoreValue changed from 465 to 463 ScoreDateTime changed from Jan 5 2021 7 01PM to Jan 6 2021 8.47PM | batchuser | IC House Collector | 235660268-1 | |
| 1/6/2021 12 20:18 PM | Answer Machine | Telephoned - Consumer | (205) 68█████ Agent Dialed Call Time: 4s Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 1/6/2021 10:42:10 AM | Answer Machine | Telephoned - Consumer | (305) 815█████ Agent Dialed Call Time: 8s Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 1/5/2021 10 38:23 PM | Account Note | | Letter 9510 Delay or Cancel Requested- MedFlorida Letters | batchuser | IC House Collector | 235660268-1 | |
| 1/5/2021 10:11:47 PM | Added | | Letter Request: 510 - Initial notice - first in the | | IC House Collector | 235660268-1 | |
| 1/5/2021 7 01:50 PM | | Updated | ScoreValue changed from 467 to 465 ScoreDateTime changed from Dec 30 2020 6 28PM to Jan 5 2021 7 01PM | batchuser | IC House Collector | 235660268-1 | |
| 1/5/2021 3 05:38 PM | Possible Disconnected Number | Telephoned - Consumer | (305) 815█████ Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 1/4/2021 9 58:23 PM | Account Note | | Letter 9510 Delay or Cancel Requested- MedFlorida Letters | batchuser | IC House Collector | 235660268-1 | |
| 1/4/2021 9:42:19 PM | Added | | Letter Request: 510 - Initial notice - first in the | | IC House Collector | 235660268-1 | |
| 1/4/2021 8 28:03 PM | Update Consumer Information | Update Information | Collaboration File Sent Update Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 1/4/2021 8 28:03 PM | Debt Note | | OCA Name: FCS; Portfolio: UV, Channel: BC, | | IC House Collector | 235660268-1 | |
| 1/4/2021 6:17:38 PM | Update Consumer Information | Update Information | Collaboration File Sent Update Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 1/4/2021 6:17:38 PM | | Debt Note | OCA Name: AFNI; Portfolio: UV, Channel: TR; Credit Rpt Dir: CRUP, | | IC House Collector | 235660268-1 | |

ICS011

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4-B**

| Date | Update Consumer Information | Update Information | Note/Details | | iC House Collector | | |
|---|---|---|---|---|---|---|---|
| 1/6/2021 5:50:27 PM | Update Consumer Information | Update Information | Collaboration File Sent Update Debt Numbers 121920337 | | iC House Collector | 235660268-1 | 121920337 |
| 1/6/2021 5:50:27 PM | | Debt Note | LIVE LINE UPDATE: Portfolio = UV, Channel = PR | | iC House Collector | 235660268-1 | |
| 1/6/2021 5:50:27 PM | | Added | Consumer Sharen Dorsey Unknown Phone [No AutoDialer] (205) 681-████ | batchuser | iC House Collector | 235660268-1 | |
| 12/30/2020 9:39:46 PM | | Account Note | Letter 9510 Delay or Cancel Requested- Holiday-Delay Letters | batchuser | iC House Collector | 235660268-1 | |
| 12/30/2020 9:39:46 PM | | Account Note | Letter 9510 Delay or Cancel Requested- Holiday-Delay Letters | batchuser | iC House Collector | 235660268-1 | |
| 12/30/2020 9:39:46 PM | | Account Note | Letter 9510 Delay or Cancel Requested- MedFlorida Letters | batchuser | iC House Collector | 235660268-1 | |
| 12/30/2020 9:28:37 PM | | Added | Letter Request: 510 - Initial notice - first in the | | iC House Collector | 235660268-1 | |
| 12/30/2020 6:28:40 PM | | Updated | ScoreValue changed from 406 to 407 ScoreDateTime changed from Dec 29 2020 6:31PM to Dec 30 2020 6:28PM | batchuser | iC House Collector | 235660268-1 | |
| 12/30/2020 11:58:58 AM | Answer Machine | Telephoned - Consumer | (305) 815-████ Agent Dialed Call Time: 4s Debt Numbers 121920337 | | iC House Collector | 235660268-1 | 121920337 |
| 12/29/2020 6:31:34 PM | | Updated | ScoreValue changed from 279 to 406 ScoreDateTime changed from Dec 28 2020 6:39PM to Dec 29 2020 6:31PM | batchuser | iC House Collector | 235660268-1 | |
| 12/28/2020 10:21:52 PM | | Updated | Consumer Sharen Dorsey Unknown Phone [Unknown] (305) 815-████ type changed from Unknown to Mobile | batchuser | iC House Collector | 235660268-1 | |
| 12/28/2020 6:39:05 PM | | Updated | ScoreValue changed from 0 to 279 OriginalScore changed from nothing to 279 OriginalScoreDateTime changed from nothing to Dec 28 2020 6:39PM | batchuser | iC House Collector | 235660268-1 | |
| 12/28/2020 5:54:25 PM | | Added | Linked Debt number 128008901 line item 87590857 | batchuser | iC House Collector | 235660268-1 | |
| 12/28/2020 4:17:28 PM | | Updated | Owner team changed from Communications Letters Only to AT&T Warehouse Working team changed from Communications Notification to ATT WH Uverse Intensive Phase | | iC House Collector | 235660268-1 | |
| 12/28/2020 4:17:28 PM | | Updated | Collector assigned effective date changed from Dec 28 2020 12:00AM to nothing Current linked debt phase state ID changed from 580870294 to 509870315 | | iC House Collector | 235660268-1 | |
| 12/28/2020 4:17:28 PM | | Added | Debt number 121920337 balance line item 559003769 | | iC House Collector | 235660268-1 | |
| 12/28/2020 4:17:28 PM | | Updated | Collector assigned effective date changed from nothing to Dec 28 2020 12:00AM | | iC House Collector | 235660268-1 | |

ICS012

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-B**

| Date | | Type | Description | | Owner | ID | |
|---|---|---|---|---|---|---|---|
| 12/28/2020 4:17:26 PM | | Updated | Working team changed from Communications 3rd-Letters to Communications Notification | | IC House Collector | 235660268-1 | |
| 12/28/2020 4:17:26 PM | | Updated | Collector assigned effective date changed from Dec 28 2020 12:00AM to nothing Current linked debt phase state ID changed from 589870277 to 589870294 | | IC House Collector | 235660268-1 | |
| 12/28/2020 4:17:26 PM | | Updated | Collector assigned effective date changed from nothing to Dec 28 2020 12:00AM | | IC House Collector | 235660268-1 | |
| 12/28/2020 4:17:26 PM | Vendor Data Apend Request | Batch Processing | Standardization-Banko - Lexis Nexis-ATT Bank-Lexis Scrub Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 12/28/2020 4:17:26 PM | Vendor Data Apend Request | Batch Processing | Standardization-Banko - Lexis Nexis-DEC Only Includes 7 Yr Monitor Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 12/28/2020 4:17:26 PM | Vendor Data Apend Request | Batch Processing | Standardization-NLP-NLP-Scores-based BusinessUnit Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 12/28/2020 4:17:26 PM | Start Phase | Batch Processing | Pre-Processing Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 12/28/2020 4:17:26 PM | Start Phase | Batch Processing | Letters Only Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 12/28/2020 4:17:26 PM | Start Phase | Batch Processing | Notification Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 12/28/2020 4:17:26 PM | Start Phase | Batch Processing | Intensive Collection Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 12/28/2020 4:17:26 PM | Restart Service - Due to Skip | Batch Processing | Skip Trace Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 12/28/2020 4:17:26 PM | New Business | Batch Processing | Intensive Collection Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 12/28/2020 4:17:26 PM | New Business | Batch Processing | Notification Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 12/28/2020 4:17:26 PM | New Business | Batch Processing | Letters Only Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 12/28/2020 4:17:26 PM | New Business | Batch Processing | Pre-Processing Debt Numbers: 121920337 | | IC House Collector | 235660268-1 | 121920337 |
| 12/28/2020 4:17:26 PM | | Updated | Owner team changed from Corporate Unidentified Debt to Communications Letters Only Working team changed from Unidentified Debt House-Global to Communications 3rd-Letters Collector assigned effective date changed from Dec 28 2020 12:00AM to nothing Current linked debt phase state ID changed from 589870247 to 589870277 | | IC House Collector | 235660268-1 | |
| 12/28/2020 4:17:26 PM | | Updated | Owner team changed from Corporate Unidentified Debt to Communications Letters Only Working team changed from Unidentified Debt House-Global to Communications 3rd-Letters | | IC House Collector | 235660268-1 | |

ICS013

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-B**

| Date/Time | Action | Description | User | Account |
|---|---|---|---|---|
| 12/28/2020 4:17:28 PM | Updated | Collector assigned effective date changed from Dec 28 2020 12:00AM to nothing Current linked debt phase state ID changed from 589670247 to 589870277 | IC House Collector | 235660268-1 |
| 12/28/2020 4:17:28 PM | Updated | Collector assigned effective date changed from nothing to Dec 28 2020 12:00AM | IC House Collector | 235660268-1 |
| 12/28/2020 4:17:28 PM | Updated | Owner team changed from Global Default to Corporate Unidentified Debt Working team changed from nothing to Unidentified Debt House-Global | IC House Collector | 235660268-1 |
| 12/28/2020 4:17:26 PM | Updated | Assigned collector changed from nothing to IC House Collector | IC House Collector | 235660268-1 |
| 12/28/2020 4:17:25 PM | Added | Debt number 121920337 balance line item 556003736 | | 235660268-1 |
| 12/28/2020 4:17:25 PM | Updated | Current linked debt phase state ID changed from nothing to 589870247 | | 235660268-1 |
| 12/28/2020 4 08:03 PM | Updated | Status changed from Batch Entered to Active | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Debt Note | WARN NO ~ PhoneID 479843730 (0000000000) is being skipped, phone number contains invalid prefix. | | 235660268-1 |
| 12/28/2020 3:10:44 PM | Debt Note | WARN NO ~ PhoneID 479843732 (1111110002) is being skipped, phone number contains invalid prefix. | | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 147984330 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 balance line item 556027760 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 balance line item 568972761 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440135 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440136 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440137 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440138 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440139 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440140 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440141 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440142 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440112 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440113 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440114 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440115 | batchuser | 235660268-1 |

ICS014

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4-B**

| | | | | |
|---|---|---|---|---|
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440116 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440117 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440118 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440119 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440120 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440121 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440122 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440123 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440124 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440125 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440126 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440127 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440128 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440129 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440130 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440131 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440132 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440133 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 line item 1463440134 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Debt number 121920337 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Linked Debt number 1 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Consumer Sharon Dorsey Unknown Phone [Unkno████████ | ███████ | ██████ |
| ████████ | ██████ | Sharon Dorsey Bill To Address PO Box 228 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Consumer Sharon Dorsey Last Client Address Address PO BOX 228 | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Consumer Sharon Dorsey | batchuser | 235660268-1 |
| 12/28/2020 3:10:44 PM | Added | Consumer Sharon Dorsey Unknown Email DORVERT8863@GMAIL.COM | batchuser | 235660268-1 |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-B**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHARON DORSEY,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **2:22-cv-01489-ACA** |
| | ) | |
| **TRANS UNION, LLC, and I.C.** | ) | |
| **SYSTEM, INC.** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## PLAINTIFF'S EXHIBIT 3

## TO DEPOSITION OF

## CORPORATE REPRESENTATIVE OF IC SYSTEMS, INC.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-C**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHARON DORSEY,

                Plaintiff,

v.

                                  Case No.: 2:22-cv-01489-GMB

TRANS UNION, LLC and
IC SYSTEM, INC.,

                Defendants.

_____/

**DEFENDANT'S NOTICE OF SERVING
ANSWERS TO PLAINTIFF'S INTERROGATORIES**

     Defendant, I.C. SYSTEM, INC. ("Defendant" and/or "ICS"), by and

through its undersigned counsel, serves it Notice of Serving Answers to Plaintiff's

Interrogatories.

**CERTIFICATE OF SERVICE**

     I hereby certify that on this 6th day of April 2023, a true and correct copy of
the above and foregoing document has been sent by Electronic Mail to the following
parties:

Whitney Seals
filings@cochrunseals.com
Cochrun & Seals, LLC
P.O. Box 10448
Birmingham, AL 35202
Counsel for Plaintiff

John C Hubbard
jch@jchubbardlaw.com
John C. Hubbard LLC
2015 First Avenue North
Birmingham, AL 35203
Counsel for Plaintiff

Matthew W. Robinett
mrobinett@nwkt.com
Chris Weaver
cweaver@nwkt.com
Norman, Wood, Kendrick & Turner

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-C**

Ridge Park Place, Suite 3000
1130 22nd Street South
Birmingham, AL 35205
Attorneys for Defendant Trans Union LLC

M Brent Yarborough
byarborough@mauricewutscher.com
Waurice Wutscher, LLP
420 North 20th Str, Ste 2200
Birmingham, AL 35203
Co-counsel for Defendant I.C. System, Inc.

By:

/s/ Dale T. Golden
Dale T. Golden, Esq.
GOLDEN SCAZ GAGAIN, PLLC
1135 Marbella Plaza Drive
Tampa, Florida 33619
Phone: (813) 251-5500
dgolden@gsgfirm.com
*Counsel for Defendant I.C. System, Inc.*

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4-C**

**Defendant I.C. Systems, Inc.'s Answers to Plaintiff's Interrogatories**

**INTERROGATORY NO. 1:**

Identify the names, addresses, and telephone numbers of all persons who were

witness to or who have personal knowledge of any of the facts, events, or matters

that are alleged in Plaintiff's complaint, your answer, and/or defenses thereto and

describe and explain your understanding of the matters on which the persons named

have knowledge. In addition to identifying said individuals as specified in the

instructions above, please include the following:

> (a) Please state whether each such person is affiliated with,
> or related to, or employed by any party (or its agents,
> servants, officers, or employees) to this lawsuit;
> (b) If any of the persons so listed in response to this
> interrogatory do not fit the characterization in subpart (a)
> above, please describe the nature of their involvement in
> this lawsuit;
> (c) Please explain and describe your understanding of their
> knowledge of such facts.

**RESPONSE: Defendant identifies the following individuals that may have
knowledge of facts relevant to the claims and/or defenses in this matter:**

> **Corporate Representative of Defendant I.C. SYSTEM, INC.**
> **Barbara Hauke, employee of Defendant**
> **Lori Bagniewski, employee of Defendant**
> **c/o Dale Thomas Golden, Esq.**
> **(Admitted *pro hac vice*)**
> **Golden Scaz Gagain, PLLC**
> **1135 Marbella Plaza Drive**
> **Tampa, FL 33619**
> **(813) 251-5500**
> **dgolden@gsgfirm.com**
> *Attorneys for I.C. System, Inc.*

- **ICS is a Defendant and has general knowledge related to Plaintiff's**

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-C**

claims identified in the Complaint, knowledge of ICS's collection efforts of the subject ATT U-verse account and knowledge of ICS's general business practices. As reflected in the Account History and Account Summary produced by ICS in Response to Plaintiff's First Requests for Production, the following ICS employees were involved in collection and investigation of Plaintiff's account:

- On or about March 3, 2021, ICS was first contacted by the Plaintiff via an incoming call from 205-601-1146. ICS representative Barbara Hauke then spoke with the individual on the call, who identified herself as Sharon Dorsey. *See*, Call Recording dated March 3, 2021 (13 minutes).
- Based on the substance of the conversation, Barbara Hauke updated the account notes to indicate that the Plaintiff disputed the debt. *See*, ICE Summary at 3/3/2021 (2:09:54 PM).
- On November 1, 2021, ICS representative Lori Bagniewski placed a call to 205-601-1146 and spoke with an individual who identified herself as Sharon Dorsey. *See*, Call Recording dated November 1, 2021 (9 minutes, 4 seconds).

## INTERROGATORY NO. 2:

Please state whether you have reported the IC System account relating to

the Plaintiff to any entity, including, but not limited to, any credit bureau and,

in connection with your response, please identify the recipients of such reports,

the manner reported, the identifying data connected with the report, and explain

and describe the manner and identifiers under which you received the

information.

**RESPONSE:** Defendant electronically reported the account to TransUnion, Experian, and Innovis using the social security number it received from ATT U-Verse. When the Plaintiff disputed owing the account during the March 3, 2021 telephone call with I.C. System employee Barbara Hauke, Ms. Hauke updated the account to indicate the Plaintiff's dispute. The credit reporting on the account was thereafter automatically updated to include the Plaintiff's dispute.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-C**

## INTERROGATORY NO. 3:

State all of the facts and describe all actions you took, including, but not

limited to, correspondence and communications with any consumer reporting

agency, creditor or potential creditor, or the Plaintiff, with regard to or which in

any way references the Plaintiff and/or the IC System Account for the two years

prior to the lawsuit.

**RESPONSE**: Defendants only contact with any "creditor or potential
creditor" regarding the Plaintiff involved the ATT U-Verse communication
of information related to the account on December 12, 2020, and when
Defendant closed the account on February 20, 2022.

Defendant reported the account to TransUnion, Experian, and Innovis
using the social security number it received from ATT U-Verse. When the
Plaintiff disputed owing the account during the March 3, 2021 telephone
call with I.C. System employee Barbara Hauke, Ms. Hauke updated the
account to indicate the Plaintiff's dispute. The credit reporting on the
account was thereafter automatically updated to indicate the Plaintiff's
dispute.

Defendant thereafter submitted information to TransUnion, Experian, and
Innovis indicating the Plaintiff disputed the account. Defendant submitted
a request for deletion of the credit reporting on the account on October 29,
2022.

On October 6, 2021, Defendant received an ACDV from TransUnion with
an E-Oscar code "111", which means "claims company will delete." Ms.
Hauke investigated the issue and, based upon the results of that
investigation, verified the accuracy of Defendant's credit reporting.

On May 23, 2022, Defendant received an ACDV from TransUnion with the
E-Oscar code "001", which means "not mine." An I.C. System employee
confirmed that certain personal identifying information included in the
ACDV matched the information that ATT U-Verse had provided

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-C**

**Defendant when it referred the account and, because the information matched, verified the accuracy of Defendant's credit reporting.**

### INTERROGATORY NO. 4:

State whether you have reported data on the Plaintiff's consumer reports which is inaccurate and, if so, state why such inaccurate information was placed on his/her/their consumer report(s), state the date(s) such report(s) was (were) issued, to whom the report(s) was (were) issued, and state what you could and should have done to prevent the inaccurate data from being reported on Plaintiff's consumer report(s) for the four years prior to the lawsuit.

**RESPONSE: Defendant does not believe it reported inaccurate information regarding the ATT U-Verse account belonging to the Plaintiff to any person or entity.**

### INTERROGATORY NO. 5:

State your procedures (and identify all documents related thereto) designed to ensure the proper investigation or reinvestigation of disputed consumer data and the overall accuracy of the information in your consumer credit database and consumer reports you issued that was in use and in effect at the time of the incidents made the basis of this lawsuit.

**RESPONSE: Defendant objects to this Interrogatory on the grounds it is ambiguous, vague, and overbroad. The Interrogatory is not limited to seeking the Defendant's "procedures" that would have been implicated by the "disputes" purportedly initiated by the Plaintiff, but instead seeks information regarding any "procedure designed to ensure the proper investigation or reinvestigation of disputed consumer data and the overall accuracy of the information in your consumer credit database and consumer reports you issued that was in use and in effect at the time of the incidents made the basis of this lawsuit."**

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-C**

Defendant further objects to this Interrogatory on grounds that it seeks
confidential and proprietary information. If the Plaintiff agrees to limit the
scope of this interrogatory to policies or procedures that would have been
implicated regarding the specific dispute the Plaintiff claims to have made
with respect to the debt the Defendant was attempting to collect, the
Defendant will agree to provide responsive information if the Plaintiff will
agree to enter into an appropriate confidentiality agreement.

### INTERROGATORY NO. 6:

With regard to the Plaintiff's dispute letter, dated May 11, 2022, please

describe the process of the reinvestigation and the result of the reinvestigation as set

forth below:

      (a) List the date Plaintiff's dispute was received from Trans Union;
      (b) List the date IC System responded to the Plaintiff's dispute;
      (c) Describe the policy and procedure for investigating the dispute
including what documents are to be consulted or reviewed; what
documents are to be generated; and the identities or description of
who is to be involved in any manner with making the decisions;
      (d) For Plaintiff's dispute, describe in detail whether the above
described policy and procedure for investigating the dispute was
followed; what documents were consulted or reviewed; what
documents were generated; the identities of all persons involved in
any manner with processing or handling the dispute and/or making
the decision on the investigation; and the result of the investigation.
      (e) State what documents, if any, were received from Trans Union.

**RESPONSE**: Defendant has no knowledge of the alleged May 11, 2022
"dispute letter" nor does the Defendant have any record of receiving any
such dispute letter from TransUnion related to the Plaintiff's account.

As indicated above, on May 23, 2022, Defendant received an ACDV from
TransUnion with the E-Oscar code "001", which means "not mine." An
I.C. System employee confirmed that certain personal identifying
information included in the ACDV matched the information that ATT U-
Verse had provided Defendant when it referred the account and, because
the information matched, verified the accuracy of Defendant's credit
reporting.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4-C**

## INTERROGATORY NO. 7:

Please identify or state what information or documents IC System relied upon

in conducting the reinvestigation of Plaintiff's May 11, 2022 dispute.

> **RESPONSE:** Defendant has no knowledge of the alleged May 11, 2022
> "dispute letter" nor does the Defendant have any record of receiving any
> such dispute letter from TransUnion related to the Plaintiff's account.
>
> As indicated above, on May 23, 2022, Defendant received an ACDV from
> TransUnion with the E-Oscar code "001", which means "not mine." An
> I.C. System employee confirmed that certain personal identifying
> information included in the ACDV matched the information that ATT U-
> Verse had provided Defendant when it referred the account and, because
> the information matched, verified the accuracy of Defendant's credit
> reporting.

## INTERROGATORY NO. 8:

Please state why IC System confirmed or reported to Trans Union that the

Account was accurate and that it belonged to Plaintiff after reinvestigating the

Plaintiff's May 11, 2022 dispute.

> **RESPONSE:** Defendant has no knowledge of the alleged May 11, 2022
> "dispute letter" nor does the Defendant have any record of receiving any
> such dispute letter from TransUnion related to the Plaintiff's account.
>
> As indicated above, on May 23, 2022, Defendant received an ACDV from
> TransUnion with the E-Oscar code "001", which means "not mine." An
> I.C. System employee confirmed that certain personal identifying
> information included in the ACDV matched the information that ATT U-
> Verse had provided Defendant when it referred the account and, because
> the information matched, verified the accuracy of Defendant's credit
> reporting.

## INTERROGATORY NO. 9:

Please identify by name and job title each person at IC System that

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-C**

conducted any part of the reinvestigation of Plaintiff's May 11, 2022 dispute.

**RESPONSE:** Defendant has no knowledge of the alleged May 11, 2022 "dispute letter" nor does the Defendant have any record of receiving any such dispute letter from TransUnion related to the Plaintiff's account.

As indicated above, on May 23, 2022, Defendant received an ACDV from TransUnion with the E-Oscar code "001", which means "not mine." An I.C. System employee confirmed that certain personal identifying information included in the ACDV matched the information that ATT U-Verse had provided Defendant when it referred the account and, because the information matched, verified the accuracy of Defendant's credit reporting.

## INTERROGATORY NO. 10:

Please state each and every person or company that IC System or its agents or employees contacted in the course of reinvestigating the Plaintiff's May 11, 2022 dispute of the IC System trade line. For each and every such contact, please state:

    a. The date of the contact;
    b. The time of the contact;
    c. The manner or method of the contact;
    d. The name of the person or company contacted; and
    e. The contents of any communication with any person or company contacted as part of IC System's reinvestigation of Plaintiff's dispute.

**RESPONSE:** Defendant has no knowledge of the alleged May 11, 2022 "dispute letter" nor does the Defendant have any record of receiving any such dispute letter from TransUnion related to the Plaintiff's account.

As indicated above, on May 23, 2022, Defendant received an ACDV from TransUnion with the E-Oscar code "001", which means "not mine." An I.C. System employee confirmed that certain personal identifying information included in the ACDV matched the information that ATT U-Verse had provided Defendant when it referred the account and, because the information matched, verified the accuracy of Defendant's credit reporting.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4-C**

## INTERROGATORY NO. 12:

Did you use, hire or otherwise engage the services of any third party in conducting the reinvestigation of Plaintiff's dispute dated May 11, 2022? If so, please identify the name of the company or companies and person or persons who conducted the reinvestigation of Plaintiff's dispute at the direction of or on behalf of IC System.

> **RESPONSE:** Defendant has no knowledge of the alleged May 11, 2022 "dispute letter" nor does the Defendant have any record of receiving any such dispute letter from TransUnion related to the Plaintiff's account.
>
> As indicated above, on May 23, 2022, Defendant received an ACDV from TransUnion with the E-Oscar code "001", which means "not mine." An I.C. System employee confirmed that certain personal identifying information included in the ACDV matched the information that ATT U-Verse had provided Defendant when it referred the account and, because the information matched, verified the accuracy of Defendant's credit reporting.

As to objections:

/s/ Dale T. Golden
Dale T. Golden
Counsel for Defendant I.C. System, Inc.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-C**

## VERIFICATION OF
## RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

I, Michelle K. Dove, as an authorized representative of I.C. SYSTEM, INC.

believe, based on reasonable inquiry, that the foregoing answers are true and correct

to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.


Signature: _Michelle K. Dove_____

Printed Name: _Michelle K. Dove_____

Date: _April 4, 2023_____


**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-C**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHARON DORSEY,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **2:22-cv-01489-ACA** |
| | ) | |
| **TRANS UNION, LLC,  and I.C.** | ) | |
| **SYSTEM, INC.** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## PLAINTIFF'S EXHIBIT 4

## TO DEPOSITION OF

## CORPORATE REPRESENTATIVE OF IC SYSTEMS, INC.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-D**

VIA CERTIFIED MAIL

TransUnion Consumer Relations
P. O. Box 2000
Chester, PA 19022-2000

To Whom it May Concern:

My name is Sharon Dorsey. My address is ███████████████████████████████████████
My birthdate is ████████████ The last four digits of my social security number are ██████ I am
enclosing a copy of my Alabama drivers license so that you know it is me writing you about this
issue. I am writing because there is false or inaccurate information that is being reported on my
credit report that I want investigated and removed please.

When I moved to my current address in 2018, I wanted to have AT&T service for phone and
internet. I was told it was $101.00 per month for AT&T Uverse bundled service so I applied. After
I applied for that service, I learned that AT&T Uverse service was not available at my address. To
this day it is still not available and I have not had that service at my current home. I got bills for
AT&T Uverse (even though it was not available to me at my address) which I did not owe since I
couldn't even get the service and now a collection company called IC Systems is reporting on my
credit that I owe ATT Uverse $151.00. I do not owe this money as I have never had this service and
this service was never available for me to have at my home. This debt that is being reported by IC
Systems is false and inaccurate.

This false information that IC Systems is reporting has caused me to get denied for a Kohl's
credit card and a Belk card. The fact that this company is reporting a debt that is false and is hurting
my credit when I do not owe it has caused me much stress and anxiety. Please get this off my credit.

It is my understanding that you are required by the Fair Credit Reporting Act to investigate
the entry on my credit report from IC Systems about the Uverse debt and respond to me after you
investigate. I believe that AT&T will tell you that I cannot even get Uverse service at my house and
so there's no way I owe money for a service I cannot even get. Please mail any response to my letter
to my mailing address:

Sharon Dorsey


If you need more information from me. You can call me at 205-601-1146 or write me and
I will try my best to give you whatever information you need. If this account is not being reported
on my credit report, please let me know that as well as I am concerned that this account is being
reported even though I don't owe this debt and never have owed the debt.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-D**

I look forward to hearing back from you.

Sincerely,

*Sharon Dorsey*

Sharon Dorsey

Enclosure

RECEIPT
9214 '000 0001 0005 0024 14

FROM:
Ms. Sharon Dorsey
RE: Dispute TransUnion

SEND TO:
TransUnion Consumer Relations
PO Box 2000
Chester PA 19022

FEES:
| | |
|---|---|
| Postage | 0.83 |
| Certified Fee | 3.75 |
| Return Receipt | 3.03 |
| Restricted | |

TOTAL       $ 7.33

POSTMARK OR DATE

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**EXHIBIT 4-D**



**DEFENDA████████████████████ Y JUDGMENT**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHARON DORSEY,                    )
                                  )
        PLAINTIFF,                )
                                  )
v.                                )        2:22-cv-01489-ACA
                                  )
TRANS UNION, LLC,  and I.C.       )
SYSTEM, INC.                      )
                                  )
        DEFENDANTS.               )

PLAINTIFF'S EXHIBIT 5

TO DEPOSITION OF

CORPORATE REPRESENTATIVE OF IC SYSTEMS, INC.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHARON DORSEY,

                Plaintiff,

v.

                                    Case No.: 2:22-cv-01489-GMB

TRANS UNION, LLC and
IC SYSTEM, INC.,

                Defendants.
_____/

**AMENDED RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSIONS**

        Defendant, I.C. SYSTEM, INC. ("Defendant" and/or "ICS"), by and

through its undersigned counsel, serves it Amended Responses to Plaintiff's Request

for Admissions, and states:

        1. Admit or deny that Plaintiff did not owe the Account that IC System was

attempting to collect and that IC System reported to TransUnion.

**RESPONSE:  Defendant objects to this Request because it asks the Defendant to
admit facts that require first-hand knowledge of the Plaintiff's purported debt
owed to a third party, to wit, ATT U-Verse. Defendant lacks sufficient
knowledge or information to admit or deny this Request. While the Plaintiff
claims she does not owe the debt, ATT U-Verse referred the account to the
Defendant as validly due and owing and has never indicated otherwise to the
Defendant.**

        2. Admit or deny that IC System wrongly verified to Trans Union the

information disputed by Plaintiff in her May 11, 2022 dispute was accurate.

**RESPONSE: (amended per May 2, 2023 letter from W. Whitney Seals, counsel
for the Plaintiff, stating, as relevant here: "In response to RFAs 2-5 ICS objected
that 'Plaintiff's May 11, 2022 dispute' was ambiguous. We are asking about the**

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-E**

**May 2022 dispute that ICS allegedly investigated that is made the basis of this lawsuit.") Denied.**

3. Admit or deny that IC System's employees or agents who processed Plaintiff's May 11, 2022 dispute of the IC System Collection Service, Inc. item on her credit report complied with all relevant IC System policies or procedures in and about reinvestigating Plaintiff's May 11, 2022 dispute of the IC System Collection Service, Inc. item on her credit report.

**RESPONSE: (amended per May 2, 2023 letter from W. Whitney Seals, counsel for the Plaintiff, stating, as relevant here: "In response to RFAs 2-5 ICS objected that 'Plaintiff's May 11, 2022 dispute' was ambiguous. We are asking about the May 2022 dispute that ICS allegedly investigated that is made the basis of this lawsuit.") Admitted.**

4. Admit or deny that IC System is required to comply with the requirements of the Fair Credit Reporting Act when it processes disputes such as Plaintiff's May 11, 2022 dispute of the IC System Collection Service, Inc. item on her credit report.

**RESPONSE: (amended per May 2, 2023 letter from W. Whitney Seals, counsel for the Plaintiff, stating, as relevant here: "In response to RFAs 2-5 ICS objected that 'Plaintiff's May 11, 2022 dispute' was ambiguous. We are asking about the May 2022 dispute that ICS allegedly investigated that is made the basis of this lawsuit.") Admitted that I.C. System is required to comply with requirements of the FCRA implicated in processing consumer disputes related to I.C. System's credit reporting of accounts.**

5. Admit or deny that IC System did not rely on any source of information other than IC System's own internal records in the reinvestigation of Plaintiff's May 11, 2022 dispute.

**RESPONSE: (amended per May 2, 2023 letter from W. Whitney Seals, counsel for the Plaintiff, stating, as relevant here: "In response to RFAs 2-5 ICS objected that 'Plaintiff's May 11, 2022 dispute" was ambiguous. We are asking about the**

May 2022 dispute that ICS allegedly investigated that is made the basis of this lawsuit.") Denied.

  /s/Dale T. Golden
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of May 2023, a true and correct copy of the above and foregoing document has been sent by Electronic Mail to the following parties:

Whitney Seals
filings@cochrunseals.com
Cochrun & Seals, LLC
P.O. Box 10448
Birmingham, AL 35202
Counsel for Plaintiff

John C Hubbard
jch@jchubbardlaw.com
John C. Hubbard LLC
2015 First Avenue North
Birmingham, AL 35203
Counsel for Plaintiff

Matthew W. Robinett
mrobinett@nwkt.com
Chris Weaver
cweaver@nwkt.com
Norman, Wood, Kendrick & Turner
Ridge Park Place, Suite 3000
1130 22nd Street South
Birmingham, AL 35205
Attorneys for Defendant Trans Union LLC

M Brent Yarborough
byarborough@mauricewutscher.com
Waurice Wutscher, LLP
420 North 20th Str, Ste 2200
Birmingham, AL 35203
Co-counsel for Defendant I.C. System, Inc.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-E**

By:

/s/ Dale T. Golden
Dale T. Golden, Esq.
GOLDEN SCAZ GAGAIN, PLLC
1135 Marbella Plaza Drive
Tampa, Florida 33619
Phone: (813) 251-5500
dgolden@gsgfirm.com
*Counsel for Defendant I.C. System, Inc.*

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-E**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHARON DORSEY,

               Plaintiff,

v.

                                  Case No.: 2:22-cv-01489-GMB

TRANS UNION, LLC and
IC SYSTEM, INC.,

               Defendants.

_____/

## AMENDED RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSIONS

Defendant, I.C. SYSTEM, INC. ("Defendant" and/or "ICS"), by and

through its undersigned counsel, serves it Amended Responses to Plaintiff's Request

for Admissions, and states:

1. Admit or deny that Plaintiff did not owe the Account that IC System was

attempting to collect and that IC System reported to TransUnion.

**RESPONSE: Defendant objects to this Request because it asks the Defendant to
admit facts that require first-hand knowledge of the Plaintiff's purported debt
owed to a third party, to wit, ATT U-Verse. Defendant lacks sufficient
knowledge or information to admit or deny this Request. While the Plaintiff
claims she does not owe the debt, ATT U-Verse referred the account to the
Defendant as validly due and owing and has never indicated otherwise to the
Defendant.**

2. Admit or deny that IC System wrongly verified to Trans Union the

information disputed by Plaintiff in her May 11, 2022 dispute was accurate.

**RESPONSE: (amended per May 2, 2023 letter from W. Whitney Seals, counsel
for the Plaintiff, stating, as relevant here: "In response to RFAs 2-5 ICS objected
that 'Plaintiff's May 11, 2022 dispute' was ambiguous. We are asking about the**

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-E**

**May 2022 dispute that ICS allegedly investigated that is made the basis of this lawsuit.") Denied.**

3. Admit or deny that IC System's employees or agents who processed Plaintiff's May 11, 2022 dispute of the IC System Collection Service, Inc. item on her credit report complied with all relevant IC System policies or procedures in and about reinvestigating Plaintiff's May 11, 2022 dispute of the IC System Collection Service, Inc. item on her credit report.

**RESPONSE: (amended per May 2, 2023 letter from W. Whitney Seals, counsel for the Plaintiff, stating, as relevant here: "In response to RFAs 2-5 ICS objected that 'Plaintiff's May 11, 2022 dispute' was ambiguous. We are asking about the May 2022 dispute that ICS allegedly investigated that is made the basis of this lawsuit.") Admitted.**

4. Admit or deny that IC System is required to comply with the requirements of the Fair Credit Reporting Act when it processes disputes such as Plaintiff's May 11, 2022 dispute of the IC System Collection Service, Inc. item on her credit report.

**RESPONSE: (amended per May 2, 2023 letter from W. Whitney Seals, counsel for the Plaintiff, stating, as relevant here: "In response to RFAs 2-5 ICS objected that 'Plaintiff's May 11, 2022 dispute' was ambiguous. We are asking about the May 2022 dispute that ICS allegedly investigated that is made the basis of this lawsuit.") Admitted that I.C. System is required to comply with requirements of the FCRA implicated in processing consumer disputes related to I.C. System's credit reporting of accounts.**

5. Admit or deny that IC System did not rely on any source of information other than IC System's own internal records in the reinvestigation of Plaintiff's May 11, 2022 dispute.

**RESPONSE: (amended per May 2, 2023 letter from W. Whitney Seals, counsel for the Plaintiff, stating, as relevant here: "In response to RFAs 2-5 ICS objected that 'Plaintiff's May 11, 2022 dispute" was ambiguous. We are asking about the**

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-E**

**May 2022 dispute that ICS allegedly investigated that is made the basis of this lawsuit.") Denied.**


 /s/Dale T. Golden
*Counsel for Defendant*


## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of May 2023, a true and correct copy of the above and foregoing document has been sent by Electronic Mail to the following parties:

Whitney Seals
filings@cochrunseals.com
Cochrun & Seals, LLC
P.O. Box 10448
Birmingham, AL 35202
Counsel for Plaintiff

John C Hubbard
jch@jchubbardlaw.com
John C. Hubbard LLC
2015 First Avenue North
Birmingham, AL 35203
Counsel for Plaintiff

Matthew W. Robinett
mrobinett@nwkt.com
Chris Weaver
cweaver@nwkt.com
Norman, Wood, Kendrick & Turner
Ridge Park Place, Suite 3000
1130 22nd Street South
Birmingham, AL 35205
Attorneys for Defendant Trans Union LLC

M Brent Yarborough
byarborough@mauricewutscher.com
Waurice Wutscher, LLP
420 North 20th Str, Ste 2200
Birmingham, AL 35203
Co-counsel for Defendant I.C. System, Inc.


**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-E**

By:

/s/ Dale T. Golden
Dale T. Golden, Esq.
GOLDEN SCAZ GAGAIN, PLLC
1135 Marbella Plaza Drive
Tampa, Florida 33619
Phone: (813) 251-5500
dgolden@gsgfirm.com
*Counsel for Defendant I.C. System, Inc.*

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-E**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| SHARON DORSEY, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | 2:22-cv-01489-ACA |
| | ) | |
| TRANS UNION, LLC, and I.C. | ) | |
| SYSTEM, INC. | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## PLAINTIFF'S EXHIBIT 6

## TO DEPOSITION OF

## CORPORATE REPRESENTATIVE OF IC SYSTEMS, INC.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## EXHIBIT 4-F



AT&T
11760 US HWY 1, SUITE 300
NORTH PALM BEACH FL 33408

(800) 635-6840
(888) 938-4715 (Fax)


DECLARATION OF AUTHENTICITY OF AT&T RECORDS


STATE OF FLORIDA
COUNTY OF PALM BEACH

GLDC FILE NUMBER: 3705371

I, Brian Dacosta, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by AT&T, and my title is Legal Compliance Analyst.  After a thorough search of the documents relied on in the course of my duties as Custodian of Records and Compliance Security Analyst, I was unable to find any information responsive to your request.

Pursuant to 28 U.S.C. Sec.1746, I declare, under penalty of perjury, that the foregoing is true and correct.


*Brian Dacosta*

06-27-2023
Date

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-F**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHARON DORSEY,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **2:22-cv-01489-ACA** |
| | ) | |
| **TRANS UNION, LLC,  and I.C.** | ) | |
| **SYSTEM, INC.** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## PLAINTIFF'S EXHIBIT 7

## TO DEPOSITION OF

## CORPORATE REPRESENTATIVE OF IC SYSTEMS, INC.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-G**



Looks like AT&T Internet isn't available at your address.

Need help? Call us. 866.396.4017



**Your address**

Already have an AT&T account? Sign in for special offers. Sign in

**Other available options**

AT&T Internet is not available at your address.

INTERESTED IN AT&T FIBER®?
**Get notified about AT&T Fiber**

We're still rolling out our faster internet experience. Get on our list so we can notify you if AT&T Fiber becomes available at your address.

Notify me

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
EXHIBIT 4-G**