FILED

2023 Dec-20  PM 03:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHARON DORSEY,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **2:22-cv-01489-ACA** |
| | ) | |
| **TRANS UNION, LLC,  and I.C.** | ) | **OPPOSED** |
| **SYSTEM, INC.** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

---

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT, I. C. SYSTEMS, INC.'S, MOTION FOR SUMMARY JUDGMENT

---

W. Whitney Seals, Esq.
**COCHRUN & SEALS, LLC**
P. O. Box 10448
Birmingham, AL 35202-0448
T: (205) 323-3900
F: (205) 323-3906
E: filings@cochrunseals.com


John C. Hubbard, Esq.
**JOHN C. HUBBARD, LLC**
PO Box 953
Birmingham, AL 35201
(205) 410-6491
jch@jchubbardlaw.com
**ATTORNEYS FOR PLAINTIFF**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.............................................................................. ii

INTRODUCTION ........................................................................................1

STATEMENT OF UNDISPUTED FACTS .............................................................3

    A. Response to Statement of Undisputed Facts................................................3

    B. Additional Undisputed Facts...................................................................4

ARGUMENT ...............................................................................................5

    A. Fair Credit Reporting Act .......................................................................5

    B. Fair Debt Collections Practices Act ........................................................14

CONCLUSION .........................................................................................21

# TABLE OF AUTHORITIES

## Cases

*Allen v. Checkredi of Ky., LLC*
No. 09-103-DLB, 2010 U.S. Dist. LEXIS 122301
(E.D. Ky. Nov. 17, 2010) ......................................................................17

*Ball v. Navient Sols., L.L.C.*
2018 WL 1413393 (M.D. Ala. Jan. 19, 2018) ........................................13

*Belcher v. Cent. Credit Servs.*
No. 6:10-CV-00338-LSC, 2011
U.S. Dist. LEXIS 168747 (N.D. Ala. June 22, 2011) .............................15

*Brim v. Midland Credit Mgmt., Inc.*
795 F. Supp. 2d 1255 (N.D. Ala. 2011) .................................................13

*Bruce v. First U.S.A. Bank*,
103 F. Supp. 2d 1135, 1143–1144 (E.D. Mo. 2000) .................................8

*Carter v. Capital Link Mgmt. LLC*
614 F. Supp. 3d 1038 (N.D. Ala. 2022) .............................................17,18

*Chiang v. Verizon New Eng., Inc.*
595 F.3d 26 (1st Cir. 2010) ...............................................................5,11

*Coleman v. Experian Info. Sols.*, Inc.,
No. 1:21-cv-01095-CAP-CMS, 2022 U.S. Dist.
LEXIS 232686 (N.D. Ga. Nov. 9, 2022) .................................................11

*Creager v. Columbia Debt Recovery, LLC*
No. 2:21-cv-00431-BJR, 2021
U.S. Dist. LEXIS 141124(W.D. Wash. July 28, 2021) ...........................15

*Dickman v. Verizon Commc'ns, Inc.*,
876 F. Supp. 2d 166 (E.D.N.Y. 2012) ..................................................13

*Felts v. Wells Fargo Bank, Nat'l Ass'n*
893 F.3d 1305 (11th Cir. 2018) ............................................................12

*Gilmore v. Account Mgmt.*
Civil Action No. 1:08-CV-1388-JOF-LTW, 2009
U.S. Dist. LEXIS 79508 (N.D. Ga. Apr. 27, 2009) ...................................................15

*Gonzales v. Arrow Fin. Servs., LLC*
660 F.3d 1055, 1062 (9th Cir. 2011) .......................................................................15

*Gorman v. Wolpoff & Abramson, LLP,*
584 F.3d 1147 (9th Cir. 2009) ...............................................................................6,8

*Gross v. CitiMortgage, Inc.*
33 F.4th 1246 (9th Cir. 2022) ..................................................................................10

*Hinkle v. Midland Credit Mgmt., Inc.*
827 F.3d 1295, 1301-02 (11th Cir. 2016).........................................................5,6,7,13

*Hopkins v. I.C. Sys*.
No. 18-2063, 2020 U.S. Dist. LEXIS 88905 (E.D. Pa. May 19, 2020).............10,14

*Hunt v. JPMorgan Chase Bank*
770 Fed. Appx. 452 (11th Cir. 2019) .......................................................................10

*Jeter v. Credit Bureau*
760 F.2d 1168, 1179 (11th Cir. 1985) .......................................................................15

*Laura v. Experian Info. Sols., Inc*.
No. 20-cv-01573, 2022 U.S. Dist. LEXIS 48445 (N.D. Ill. Mar. 18, 2022) ...........11

*LeBlanc v. Unifund CCR Partners*
601 F.3d 1185, 1190 (11th Cir. 2010) .......................................................................14

*Long v. Pendrick Capital Partners II, LLC*
374 F. Supp. 3d 515 (D. Md. 2019) ...........................................................................8

*Lowery v. Ala. Power Co*.
483 F.3d 1184, 1204 (11th Cir.2007) .........................................................................7

*Mayberry v. Trans Union, LLC*
No. 18-3262, 2019 U.S. Dist. LEXIS 241077 (E.D. Pa. Oct. 8, 2019) ...................19

*Mraz v. I.C. Sys.*
No. 2:18-cv-254-FtM-38NPM, 2019
U.S. Dist. LEXIS 233779 (M.D. Fla. Aug. 7, 2019) ................................................16

*Owen v. I.C. Sys., Inc.*
629 F.3d 1263, 1270 (11th Cir. 2011) ........................................................14,16,17,18

*Pongsai v. Am. Express Co.*
2020 U.S. Dist. LEXIS 198104, at *8 (C.D. Cal. Oct. 23, 2020)............................6

*Rivas v. Midland Funding, LLC*, 842 F. App'x 483 (11th Cir. 2021)......................19

*Serhan v. Hyundai Capital Am.*
No. EDCV 23-1054 JGB (SPx), 2023
U.S. Dist. LEXIS 160721 (C.D. Cal. Sep. 7, 2023) ................................................11

*Sessa v. TransUnion, L.L.C.,*
No. 22-87 (2d Cir. May 5th 2022) ........................................................................9,10

*In re Software Toolworks Inc.,*
50 F.3d 615, 621 (9th Cir. 1994) ................................................................................6

*Solis v. Am. Express Nat'l Bank*,
No. 5:23-cv-208-JSM-PRL, 2023
U.S. Dist. LEXIS 145274 (M.D. Fla. Aug. 18, 2023) ............................................10

## Other Authorities

Fair Credit Reporting Act "FCRA"
15 U.S.C. §§ 1681-1681x ................................................................2,9,10,11,12,14

Fair Debt Collection Practices Act "FDCPA"
15 U.S.C. §§ 1692–1692p.................................................... 2,3,5,14,15,16,18,19,20

Reg. F § 1006.14(a)...................................................................................................20

Reg. F Official Interpretations § 2(d)-1 ...................................................................19

## I.    INTRODUCTION

Plaintiff's claims arise out of the Defendant I.C. System's (hereinafter referred to as "Defendant IC") collection of an AT&T debt. Plaintiff requested U-Verse internet service from AT&T, but AT&T determined the service was unavailable at her residence. The problem developed when AT&T billed, and continued to bill, Plaintiff for the U-Verse service that was not provided. AT&T sent the account to Defendant IC for collection.

While it is disputed at what point Defendant IC first learned that the service was not installed, it is undisputed it had direct knowledge of the fact from the Plaintiff on March 3, 2021. Defendant IC continued with collection attempts and continued to report the account to Trans Union dispute never having any evidence that countered Plaintiff's disputes. This led to Plaintiff being denied credit, a shingles outbreak, as well as substantial and understandable mental suffering.

Plaintiff disputed the account with Trans Union two (2) times. There is no record of Plaintiff's first dispute to Trans Union – only the Trans Union communication to Defendant IC. However, Plaintiff's second dispute, which was done in writing, clearly set out the U-Verse service was not installed and therefore the debt was not owed. These disputes failed. Defendant IC persisted in its collection attempts which eventually led to this lawsuit.

Plaintiff's claims are under two district federal statutes – the Federal Credit Reporting Act (hereinafter referred to as "FCRA"). Under the FCRA, Plaintiff claims Defendant failed to conduct a reasonable investigation after receiving notice of the dispute from Trans Union. Basically, Defendant IC did a "date conformity" procedure to make sure their personal identifying data matched the dispute. This had nothing to do with the Plaintiff's dispute. Plaintiff did not claim it was the wrong person. She claimed the service was not provided and therefore she did not owe the debt. Nothing Defendant IC did helped with her dispute. As such, the reasonableness of Defendant IC's investigation and Plaintiff's damages should proceed to a jury.

Fair Debt Collection Practices Act's (hereinafter referred to as "FDCPA") claims are that Defendant IC collected a debt that was not owed, and the continued multi-year nature of Defendant IC collection attempts were abusive and oppressive. The FDCPA is a strict liability statute. This means that if Defendant IC collected a debt that is not owed, it violates the Act. This is different from a reasonableness standard. It is undisputed that the service was not provided, and the debt was not owed. Therefore, Defendant IC can only attempt to argue that it falls under an exception – like the bona fide error rule. This exception fails for the same reason as Defendant IC's FCRA investigation fails. It did not do anything that

helped answer the question as to whether the debt it was collecting was valid.

Likewise, Plaintiff's FDCPA claims should go forward to a jury.

Overall, the main point of Plaintiff's claims are that she did not owe the debt and Defendant IC did nothing to investigate or validate the substance of her disputes to verify it was collecting a valid debt. At no time did Defendant IC have evidence that countered what Plaintiff repeatedly told it. However, it still persisted in collecting in violation of the law. Defendant IC's Motion for Summary Judgment should be denied in its entirety and Plaintiff's claims should proceed to trial.

## II.    STATEMENT OF UNDISPUTED FACTS

### A.    Plaintiff Response to Defendant IC's Statement of Undisputed Facts.

17.    IC never received a letter from the Plaintiff and no such letter has been produced in this case. See, Doc. 47-2 at p. 3 (¶ 11).

RESPONSE:        To be clear, Plaintiff's testimony is that she "returned the letter that they sent me with my dispute attached to that letter, telling them that it was a debt I did not owe." Doc. 47-1, 15:22-16:3.

36.    Plaintiff also sent a letter to TransUnion in which she provided the same backstory she had provided to IC during telephone calls in 2021, namely that she had moved into a new residence and purchased the

AT&T U-Verse service, but later she came to understand the service was not available at the address to which she was moving. *Id.* at p. 7 (¶ 30).

RESPONSE:    The letter sent to TransUnion was her dispute and the only communication sent to TransUnion. Plaintiff does not draft or code any e-Oscar communications or Automated Credit Dispute Verification (hereinafter referred to as "ACDV"s) between TransUnion and IC.

**B.    Plaintiff's Additional Undisputed Facts**

1.    The purported AT&T debt arose out of Plaintiff attempting to have the U-Verse service installed at her resident. Doc 47-1; 17:9-17.

2.    U-Verse was unavailable, and Plaintiff eventually chose another provider. Doc 47-11 16:5-18.

3.    Despite not providing Plaintiff with the service, AT&T began to bill Plaintiff. Doc 47-1; 18:2-9.

4.    Plaintiff called AT&T monthly to dispute the debt. Doc. 19:1-7.

5.    As a result of Defendant IC's actions, Plaintiff claims sleep loss, tears, a shingles outbreak, and feelings of hopelessness, helplessness, embarrassment, and humiliation. Doc. 47-1; 58:15-59:13.

6.      In addition, Plaintiff claims she was denied a credit card at Belk and a credit card at Kohl's due to Defendant IC reporting the debt on her credit report. *Id*.

7.      No one at Defendant IC at any time specifically contacted AT&T about Plaintiff's account, other than the automated interactions. Doc 47-4; 120:12-20.

8.      The AT&T website showed that internet is not available at Plaintiff's address. *Id.* 113:2-13.

9.      As policy, Defendant IC does not require additional validation of debts outside of the thirty (30) day window prescribed by the FDCPA in order to continue to collect debts. *Id.* 58:5-21.

## III.    ARGUMENT

### A.    FEDERAL CREDIT REPORTING ACT

### 1.    Whether Defendant IC conducted a reasonable investigation of the May 2022 dispute is a question for the jury.

Upon receipt of a dispute, the furnisher must conduct a "reasonable investigation" into the information's accuracy. *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1301-02 (11th Cir. 2016).

"[W]hat constitutes a 'reasonable investigation' will vary depending on the circumstances of the case…" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016) citing to *Chiang v. Verizon New Eng., Inc.,* 595 F.3d 26 (1st Cir.

2010); and, *Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147 (9th Cir. 2009)*.

The Eleventh Circuit explained that 15 U.S.C. "§ 1681s-2(b) requires some degree

of careful inquiry by furnishers of information. *Hinkle*, 2016 U.S. App. LEXIS

12661, at *17. However, "[s]ummary judgment is generally an inappropriate way

to decide questions of reasonableness because 'the jury's unique competence in

applying the 'reasonable man' standard is thought ordinarily to preclude summary

judgment.'" *Pongsai v. Am. Express Co.*, 2020 U.S. Dist. LEXIS 198104, at *8

(C.D. Cal. Oct. 23, 2020) citing *Gorman*, 584 F.3d at 1157; and *In re Software

Toolworks Inc.*, 50 F.3d 615, 621 (9th Cir. 1994).

    After a reasonable investigation, section 1681s-2(b) contemplates three

potential ending points to an investigation: verification of accuracy, a

determination of inaccuracy or incompleteness, or a determination that the

information "cannot be verified." *Hinkle*, 827 F.3d at 1302. The first option is to

satisfy § 1681s-2(b) by conducting an investigation, verifying the disputed

information, and reporting to the Credit Reporting Agencies (hereinafter referred to

as "CRAs") that the information has been verified. *Id*. at 1303. The second way for

a furnisher to satisfy § 1681s-2(b) is to conduct an investigation and conclude,

based on that investigation, that the disputed information is unverifiable. *Id.* The

final way to satisfy § 1681s-2(b) is to conduct an investigation and conclude that

the disputed information is "inaccurate or incomplete." *Id*. at 1304. This

framework reflects the fact that §1681s-2(b) is designed not only to exclude false information from credit reports, but also to prevent the reporting of unverifiable information. *Id*. Any other reading would render meaningless the "cannot be verified" option in § 1681s-2(b)(1)(E). *See Lowery v. Ala. Power Co*., 483 F.3d 1184, 1204 (11th Cir.2007) ("[W]e must construe [a] statute to give effect, if possible, to every word and clause").

Defendant IC's first argument is that it is entitled to summary judgment because the May 2022 dispute was the second dispute of the debt. Furnishers must conduct a reasonable investigation unless they deem the dispute to be irrelevant or frivolous. *Hinkle* at 1220. Plaintiff's dispute was not irrelevant or frivolous and there was no indication that it was ever classified in that manner by any entity that handled it. Therefore, Defendant IC must conduct a reasonable investigation. As the *Hinkle* Court addresses, logic dictates that if a consumer is repeatedly sending in the exact same dispute, it would be become reasonable to do less than the initial investigation. The problem here is that a copy of the October 2021 dispute has not been produced by any entity. It is unclear what information was conveyed to Defendant IC from Trans Union. It is also unclear the reasons why Trans Union chose to code the dispute with different types of disputes. Therefore, it is a factual determination as to if the disputes were identical. Nevertheless,  Defendant IC conducted the same inadequate investigation in May 2022 as it did with the

October 2021 dispute. Namely, Defendant IC's "automated review process confirmed the balance due on the account" and Defendant IC "compared the name, social security number, and address on the dispute to ensure it match the same information provided by AT&T." These steps do not address Plaintiff's dispute at all. Her dispute was that the service was not – and could not – be provided. Comparing internal notes to ensure the information matches does not shed any additional light to the issue.

In *Long v. Pendrick Capital Partners II, LLC*, 374 F. Supp. 3d 515 (D. Md. 2019), the Court discusses the inadequacies of cursory reviews when a furnisher's investigation is limited to reviewing its internal policies. *Id.* ("When Defendant Ability received ACDVs from the CRAs, like the defendant in *Wood*, it merely compared the personal information listed on the disputes with the information associated with the Ability account."). As here, Defendant IC failed to take any steps that would help in determining if Plaintiff received the service – thus creating a valid debt.

Finally, there is a guidance that if a furnisher relies on a previous investigation, the initial investigation must be reasonable. *See Gorman,* 584 F.3d 1147, 1160 (9th Cir. 2009), cert. denied, 2010 WL 1047483 (Oct. 4, 2010) (noting that reliance on prior investigation can be unreasonable, although prior investigation in this case was not deficient), citing *Bruce v. First U.S.A. Bank*, 103

F. Supp. 2d 1135, 1143–1144 (E.D. Mo. 2000). Here, Defendant IC never conducted a reasonable investigation in the first dispute. It did not take any actions that would indicate that the debt was not owed as Plaintiff stated. Therefore, any reliance on the first dispute would be improper. For these reasons, Plaintiff's claims should proceed to trial.

> **2.    Plaintiff's dispute was "factual" in nature and not "legal" because there is nothing for the Court to legally determine.**

Defendant IC's second argument is that it is entitled to summary judgment because the dispute is a "legal dispute" and not "factual."  Most importantly, it is an easy inquiry as to whether the service was provided. There is no legal analysis, judicial review, or determination needed. The service was not provided, and that fact could have been found out with a factual inquiry. However, no inquiry was ever conducted.

There is no "factual" or "legal" dispute distinction found in the FCRA. The Consumer Financial Protection Bureau's (hereinafter referred to as "CFPB") and Federal Trade Commission (hereinafter referred to as "FTC") have taken the position in an amicus brief filed in the Second Circuit, maintaining that the FCRA does not contain an exception for legal disputes and urging rejection of any distinction between factual and legal inaccuracies. *Sessa v. TransUnion, L.L.C.*, No. 22-87 (2d Cir. May 5th 2022). This position seems to be causing a trend away from the legal dispute exemption. Consequently, the Second Circuit rejected the

distinction. "We conclude that section 1681e(b) does not incorporate a threshold inquiry as to whether an alleged inaccuracy is "legal" or "factual" in nature." *Sessa*, 74 F.4th 38 (2d Cir. 2023). The Ninth Circuit has explicitly rejected applying the legal dispute exception to furnishers, stating that the "FCRA will sometimes require furnishers to investigate, and even to highlight or resolve, questions of legal significance." *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246 (9th Cir. 2022). Further, "The distinction between "legal" and "factual" issues is ambiguous, potentially unworkable, and could invite furnishers to "evade their investigation obligation by construing the relevant dispute as a 'legal' one."" *Id.* This legal dispute distinction leads furnishers, and specifically Defendant IC, the argue that "any time a plaintiff disputes that they owe the underlying debt, that dispute is necessarily legal. But that argument oversimplifies the inquiry." *Hopkins v. I.C. Sys.*, No. 18-2063, 2020 U.S. Dist. LEXIS 88905 (E.D. Pa. May 19, 2020). The *Hopkins* Court found the consumer's dispute that she was the wrong debtor and had already settled the debt to be factual inaccuracies and left the question of reasonableness of the investigation to a jury. *Id.*

Prior to the FTC and CFPB opposite position, the Eleventh Circuit has extended the legal dispute exemption to furnishers to a certain extent. *Hunt v. JPMorgan Chase Bank*, 770 Fed. Appx. 452 (11th Cir. 2019). However, that extent is limited. *Solis v. Am. Express Nat'l Bank*, No. 5:23-cv-208-JSM-PRL, 2023 U.S.

Dist. LEXIS 145274 (M.D. Fla. Aug. 18, 2023) ("[H]ere, the plaintiff is disputing the accuracy of the furnished information, arguing he never even incurred the debts that the furnishers are reporting. Hence, it seems that even considering *Chiang*, identity theft presents more than a "legal question" and can underlie an FCRA claim."); Court rejects Experian's argument that updating discharged accounts requires a legal determination that CRAs are not obligated to make. *Coleman v. Experian Info. Sols.*, *Inc.*, No. 1:21-cv-01095-CAP-CMS, 2022 U.S. Dist. LEXIS 232686 (N.D. Ga. Nov. 9, 2022) (citing *Laura v. Experian Info. Sols., Inc.*, No. 20-cv-01573, 2022 U.S. Dist. LEXIS 48445 (N.D. Ill. Mar. 18, 2022).

Similarly, in *Serhan v. Hyundai Capital Am.*, No. EDCV 23-1054 JGB (SPx), 2023 U.S. Dist. LEXIS 160721 (C.D. Cal. Sep. 7, 2023), the Court found that a consumer disputing he did not owe a purported car lease balance to be a factual determination and rejected it was a legal dispute. *Id.* As here, there is no legal analysis that needs to be conducted. The service was not provided. The service could not have been provided. That is undisputed. That fact can be ascertained through a factual investigation and does not need any type of legal determination or resolution.

### 3.    A reasonable investigation would have uncovered that the AT&T service was not provided, and the reporting was inaccurate.

Finally, under the FCRA section, Defendant IC argues that a "reasonable investigation" would not have revealed an inaccuracy. In other words, even if

Defendant IC would have taken reasonable steps to determine if the AT&T was provided, it would have been unable to do so.

Defendant IC relies heavily on *Felts v. Wells Fargo Bank, Nat'l Ass'n*, 893 F.3d 1305 (11th Cir. 2018). It is important to note the *Felts* Court noted "the information Wells Fargo reported was not inaccurate as a matter of law." Accuracy has always been a threshold issue in FCRA cases. The *Felts* Court states that a plaintiff must identify some facts that the furnisher could have discovered, which would have revealed that the reportedly inaccurate information was actually inaccurate. See *Id.* ("[A] plaintiff cannot demonstrate that a reasonable investigation would have resulted in the furnisher concluding that the information was inaccurate or incomplete without identifying some facts the furnisher could have uncovered that establish that the reported information was, in fact, inaccurate or incomplete."). This is an easy burden to reach in this case. The fact in this case is that Defendant IC could have, and should have, discovered that the service was not provided and thus it was reporting inaccurate information as stated by the Plaintiff in her dispute.

Instead of doing anything of substance to make this determination, Defendant relied on a "data conformity" examination that consisted of an "automated review process" and a check on the "name, social security number, and address on the dispute to ensure it match the same information provided by

AT&T."  Courts consistently hold that this examination violates the furnisher's duty to conduct a reasonable investigation. *See, e.g., Dickman v. Verizon Commc'ns, Inc.*, 876 F. Supp. 2d 166 (E.D.N.Y. 2012) (denying summary judgment where furnisher contended that it "conducted a satisfactory investigation" because it "confirmed the accuracy of plaintiff's name, address and social security number, as well as the account opening date, closing date and outstanding amount owed");  *Brim v. Midland Credit Mgmt., Inc.*, 795 F. Supp. 2d 1255 (N.D. Ala. 2011) (approving jury's verdict for consumer; "[T]he defendant's system, when a consumer disputes a debt, 95% of such disputes are checked by a computer merely making sure the disputed debt is the same as the information defendant has in its system already. Upon such review, defendant then asserts the debt is valid each and every time."); *Ball v. Navient Sols., L.L.C.*, 2018 WL 1413393 (M.D. Ala. Jan. 19, 2018) (denying furnisher summary judgment; "Here, Plaintiff claims her identity was stolen, and yet the only process of verification was to confirm whether the social security number, date of birth, and name were hers. There was never an issue that the personal information was incorrect."); *Hinkle,* 827 F.3d 1295 (11th Cir. 2016) (reversing summary judgment for furnisher where furnisher's investigation of mistaken identity dispute was limited to simply confirming the very information in its records that was being challenged).

Remarkably, in *Hopkins v. I.C. Sys.*, No. 18-2063, 2020 U.S. Dist. LEXIS 88905 (E.D. Pa. May 19, 2020), Defendant IC, in response to the ACDV, "confirmed the identifying information [in the dispute] (i.e., name and address) matched the information it had on the account" and reported the account as "verified." *Id.* Defendant IC is making the same argument here that the *Hopkins* Court rejected the finding the question of reasonableness was for the jury. *Id.*

Defendant IC never had any evidence to counter Plaintiff's claim. A reasonable investigation would have uncovered the service was never installed. However, Defendant IC failed to conduct a reasonable investigation and her FCRA claims should proceed to trial.

## B.    FAIR DEBT COLLECTION PRACTICES ACT

### 1.    Defendant IC has not proved it is entitled to the bona fide error defense.

The FDCPA differs from the FCRA in that it is a strict liability statute. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (per curiam) ("The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute."). The FDCPA "typically subjects debt collectors to liability even when violations are not knowing or intentional." *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).

Plaintiff's claims under the FDCPA are pursuant to 15 U.S.C § 1692e(2), 15 U.S.C § 1692e(10), and 15 U.S.C. § 1692d. Section 1692e(2) of the FDCPA

prohibits debt collectors from making false representations of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Section 1692e(10) of the FDCPA has been described as a "catchall" provision that prohibits a debt collector's "use of any false representation or deceptive means to collect or attempt to collect any debt." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011). 15 U.S.C. § 1692d prohibits any conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." The Eleventh Circuit has indicated that "claims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse." *Belcher v. Cent. Credit Servs.*, No. 6:10-CV-00338-LSC, 2011 U.S. Dist. LEXIS 168747 (N.D. Ala. June 22, 2011) (citing *Jeter v. Credit Bureau*, 760 F.2d 1168, 1179 (11th Cir. 1985)).

Collecting a debt that is not owed is a violation of 15 U.S.C § 1692e. *Gilmore v. Account Mgmt.*, Civil Action No. 1:08-CV-1388-JOF-LTW, 2009 U.S. Dist. LEXIS 79508 (N.D. Ga. Apr. 27, 2009) (consumer billed for lawn services after cancelling service), aff'd per curiam in relevant part, 357 F. App'x 218 (11th Cir. 2009); *Creager v. Columbia Debt Recovery, LLC*, No. 2:21-cv-00431-BJR, 2021 U.S. Dist. LEXIS 141124 (W.D. Wash. July 28, 2021) ("a debt collector may be held liable under the FDCPA for attempting to collect a debt that a consumer

does not owe, even if the debt collector is attempting to collect the amount of debt assigned by the original creditor.).

Plaintiff claims that she never owed AT&T because the service was not provided. Defendant IC attempted to collect the debt anyway. Defendant IC never addresses the substance of Plaintiff's claims. Instead, it attempts to list excuses as to why it should escape liability for attempting to collect a debt that was not owed.

The first reason is that Defendant agues it should not be held liable due to the bona fine error defense. Section 1692k(c) provides a narrow exception "to the general rule of strict liability, known as the 'bona fide error' defense." *Mraz v. I.C. Sys.*, No. 2:18-cv-254-FtM-38NPM, 2019 U.S. Dist. LEXIS 233779 (M.D. Fla. Aug. 7, 2019). This is an affirmative defense, and the debt collector must prove by a preponderance of the evidence that its FDCPA violation "(1) was not intentional; (2) was a bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error." *Id*. (internal quotation marks and citation omitted). In *Owen*, the Eleventh Circuit acknowledged that debt collectors have no duty to independently investigate and verify a debt to qualify for the bona fide error defense. *Id*. at 1276. But to use the defense, a "debt collector has an affirmative statutory obligation to maintain procedures reasonably adapted to avoid readily discoverable errors." *Id*. at 1276-77. And debt collectors do "not fulfill this affirmative obligation by delegating it entirely to creditors." *Id.* at 1277.

The error in this case is collecting a debt that was not owed. Defendant IC continued to collect by sending letters, communicating over the phone, and by placing the account on Plaintiff's credit report. Therefore, Defendant IC has the burden to show this error was unintentional, a bona fide error, and occurred despite the maintenance of procedures reasonably adapted to avoid any such error.

While most case law deals with the third prong, there is some guidance on what it meant on how unintentional acts are defined. At no point did Defendant IC mistakenly attempt to collect the debt. Every single action was intentional. And the actions that took place after the March 3, 2021, phone call in which Plaintiff explained the service was not provided were done with actual knowledge of the dispute. Some Courts have found that the acts themselves need to be unintentional for the exception to apply. *See Allen v. Checkredi of Ky., LLC*, No. 09-103-DLB, 2010 U.S. Dist. LEXIS 122301 (E.D. Ky. Nov. 17, 2010).

Most importantly, Defendant fails to satisfy the third prong, just as it did in *Owen*. The Eleventh Circuit in *Owen* held that Defendant IC's policies that it only collects debts represented by the original creditor as "validly due and owing" does not meet the burden of the third prong. *Owen*, 629 F.3d 1263.

The most analogous case, also cited by Defendant IC, is *Carter v. Capital Link Mgmt. LLC*, 614 F. Supp. 3d 1038 (N.D. Ala. 2022). *Carter* involved a debt collector collecting a debt that an original creditor had sent over for collection that

17

had been discharged in bankruptcy. The debt collector was informed by the consumer that the debt was not owed, just like in the present case, but continued to collect. The *Carter* Court ultimately found that "Debt collectors who presently maintain internal procedures to avoid FDCPA errors would be incentivized to scrap these measures altogether, since full immunity could be guaranteed by placing the onus of accuracy on creditors. This would precipitate a race to the bottom among debt collectors, rendering the FDCPA a dead letter." *Id*, (citing *Owen*, 629 F.3d at 1277.) Likewise, allowing Defendant IC to escape liability for collecting a debt that are not owed because it matched identifying data provided by the creditor goes against the public policy of FDCPA and renders it ineffective.

### 2. Plaintiff's FDCPA claims are not limited to Defendant's response to Trans Union.

Defendant IC attempts to limit Plaintiff's FDCPA claims to a single action – its ACDV response to Trans Union. This is not the only action that Plaintiff bases her FDCPA claims on. Plaintiff specifically mentions the action of placing the account with Trans Union and attempting to collect the debt through phone calls in her operative Complaint. Doc. 25; para. 15-18. Furthermore, Plaintiff expressly states in her causes of action that "Defendant I.C. System, a debt collector, attempted to collect a debt not owed by Plaintiff and, upon receipt of Plaintiff's dispute of the AT&T U-Verse debt she did not owe, verified the inaccurate AT&T U-Verse debt to Trans Union." *Id.* at para. 43.

18

Therefore, Defendant IC's response to Trans Union is not the only claimed improper action. The Court in *Mayberry v. Trans Union, LLC*, No. 18-3262, 2019 U.S. Dist. LEXIS 241077 (E.D. Pa. Oct. 8, 2019), in rejecting Defendant IC's argument, held that a plaintiff can have a claim under §1692e(2)(A) of the FDCPA when the defendant collects through credit reporting.

Likewise, Plaintiff has a claim under the cited FDCPA sections for Defendant IC's phone and mail communications. The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." *Rivas v. Midland Funding, LLC*, 842 F. App'x 483 (11th Cir. 2021) (citing15 U.S.C. § 1692a(2)). "Any medium" includes any oral, written, electronic, or other medium. For example, communication may occur in person or by telephone, audio recording, paper document, mail, email, text message, social media, or other electronic media. Reg. F Official Interpretations § 2(d)-1.

Plaintiff has clearly included Defendant IC actions in her operative complaint outside of Defendant IC's response to Trans Union. Even if that response is not actionable, the other collection attempts are actionable. Therefore, all of Plaintiff's FDCPA claims should proceed to trial.

### 3.  Plaintiff has not brought a stand-alone claim for the Ms. Hauke false statement.

Plaintiff has not brought a stand-alone claim for the false statements made by Ms. Hauke regarding credit reporting. While an actionable claim, this action took place over one year prior to the Plaintiff filing her original complaint and thus falls outside of the one-year statute of limitations. The statements were added to the operative Complaint in connection to Plaintiff's "harass, oppress, or abuse" claims under 15 U.S. Code § 1692d because of those actions did occur within the one year prior to Plaintiff filing her original complaint.

§ 1692d prohibits "conduct the natural consequence of which is to harass, oppress, or abuse any person."  15 U.S.C. § 1692d. *See also* Reg. F § 1006.14(a). These terms are not defined by the FDCPA. In  everyday use, the term "harass" means "to annoy persistently" and "oppress" means "to crush or burden by abuse of power or authority" and "to burden spiritually or mentally, weigh heavily upon." Merriam-Webster.com (2021), https://www.merriam-webster.com. Plaintiff's claim is that Defendant IC's continuation to collect a debt that was not owed while doing nothing to validate or otherwise determine the validity of it, constitutes a violation of § 1692d. Since these actions were intentional, the bona fide error exception would not apply.

## IV.    CONCLUSION

Plaintiff did not owe the debt. Defendant IC never had any evidence to show that she did. Despite that, Defendant IC continued to collect the debt, report the debt to Trans Union, and even twice verified the debt in response to Trans Union. As a result, Plaintiff offered clear undisputed evidence of her claims and the suffered harm. As such, genuine issues of material fact exist such that summary judgment is not proper and should be denied.

Respectfully submitted by:

/s/ W. Whitney Seals
W. Whitney Seals,
Attorney for the Plaintiff

**OF COUNSEL:**

**COCHRUN & SEALS, LLC**
P. O. Box 10448
Birmingham, AL 35202-0448
T: (205) 323-3900
F: (205) 323-3906
E: filings@cochrunseals.com

/s/ John C. Hubbard
John C. Hubbard,
Attorney for the Plaintiff

**OF COUNSEL:**

**JOHN C. HUBBARD, LLC**
P. O. Box 953
Birmingham, AL 35201
T: (205) 378-8121
E: jch@jch-law.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHARON DORSEY,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **2:22-cv-01489-ACA** |
| | ) | |
| **TRANS UNION, LLC, and I.C.** | ) | **OPPOSED** |
| **SYSTEM, INC.** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

---

## CERTIFICATE OF SERVICE

---

I hereby certified on December 20, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

M Brent Yarborough, Esq.
**WAURICE WUTSCHER, LLP**
420 North 20th Str, Ste 2200
Birmingham, AL 35203
T: (205) 451-0389
E: yarborough@mauricewutscher.com

*and*

Dale T. Golden, Esq.
**GOLDEN SCAZ GAGAIN, PLLC**
1135 Marbella Plaza Drive
Tampa, FL 33619
T: (813) 251-5500
F: (813) 251-3675
E: dgolden@gsgfirm.com
*Attorneys for I C System Inc.*

/s/ W. Whitney Seals
OF COUNSEL