# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **SHARON DORSEY,** | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CASE NO. 2:22-cv-01489-ACA |
| | ) |
| **TRANS UNION, LLC, and** | ) |
| **I.C. SYSTEM, INC.;** | ) |
| | ) |
|     Defendant. | ) |

## DEFENDANT I.C. SYSTEM, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Respectfully submitted by:

Dale T. Golden (Pro Hac Vice)
Martin, Golden, Lyons, Watts & Morgan
410 Ware Boulevard
Suite 806
Tampa, Florida 33619
Phone: (813) 251-3632
Email: dgolden@mgl.law

M. Brent Yarborough
MAURICE WUTSCHER LLP
420 Twentieth Street North
Suite 2200
Birmingham, Alabama 35205
Phone: (205) 451-0389
Email: byarborough@mauricewutscher.com

### I. Undisputed Facts Relevant to Supplemental Briefing

1. The Plaintiff opened an account with AT&T. *See*, Doc. 47-1, at p. 6, 7 (transcript 18:11-12, 18:22, 23:19-24:19).

2. The Plaintiff ultimately stopped paying AT&T's bills, and claims the service wasn't available in her area. *Ibid.* at p. 16 (transcript 16:6-18, 18:2-9).

3. The Plaintiff testified that she had telephone conversations with AT&T employees regarding the account, including conversations during which she was told she didn't owe the debt. But during the Plaintiff's last conversation with an AT&T employee regarding the account on November 27, 2018, she was told that she "owe[s] it and [has] to pay it." *Id.* at p. 7 (transcript 23:19-24:19).

4. When asked at deposition if it seemed as though AT&T had a tough time deciding if she truly owed the money, the Plaintiff testified: "Well, seems the final straw was that I did owe the debt." *Id.* at p. 13 (transcript 49:17-18).

5. On or about December 28, 2020, more than two years after the Plaintiff's last telephone conversation with AT&T, AT&T referred the Plaintiff's debt to IC. *See*, Doc. 47-2 at pp. 2 (¶¶ 6, 11, and 23).

6. On or about February 28, 2021, IC electronically reported the AT&T account to Experian, Innovis, and TransUnion using the social security number it received from AT&T. *See* Doc. 47-3 at pp. 4 (¶¶ 14, 26).

7. On March 3, 2021, an individual who identified herself as Sharon

Dorsey called IC and spoke with IC representative Barbara Hauke. *See* Doc. 47-2 at pp. 4 (¶ 15), 27-38 (transcript of call recording); Doc. 47-3 at p. 4 (¶ 13).

8.   After the call, Ms. Hauke updated IC's account notes to summarize the call and updated the AT&T account with a dispute code event in IC's database, which automatically triggered a dispute flag on the account and communicated the dispute information to AT&T. *See*, Doc. 47-2 at pp. 5 (¶ 19), 15; Doc. 47-3 at p. 4 (¶ 13).

## II.   Argument

### A. The Eleventh Circuit's Decision in *Holden* Requires Plaintiff to Show that the Alleged Inaccuracy was Objectively and Readily Verifiable.

On April 24, 2024, while IC's motion for summary judgment was pending, the United States Court of Appeals for the Eleventh Circuit issued an opinion in the consolidated appeal of two cases that presented "the question of what amounts to an actionable inaccuracy under the FCRA." *Holden v. Holiday Inn Club Vacations Inc.*, Nos. 22-11014, 22-11734, 2024 U.S. App. LEXIS 9986, *3, _F.4th_, 2024 WL 1759143 (11th Cir. Apr. 24, 2024). The consumer-plaintiffs in those cases entered into purchase agreements for timeshares with Holiday Inn Club Vacations Inc. ("Holiday"), but subsequently stopped making monthly payments. *Id*. at *3, 4-5, 7. When Holiday reported the consumers' debts to Experian, the consumers disputed the accuracy of the information furnished by Holiday on the grounds that they had

2

cancelled the purchase agreements. *Id*. at 5, 6-8. The issue of whether the purchase agreements were cancelled, and thus whether the consumers' debts were accurately reported, turned on the application of a purchaser's default provision contained within the purchase agreements. *Id*. at *5-6, 7-8.

In both cases, the District Courts found that the inaccuracies alleged by the consumers were legal disputes that were not actionable under the FCRA and granted summary judgment for Holiday. Id. at *6-7, 8. On appeal, the consumers argued that the District Courts erred in finding that legal disputes are not actionable and further argued that the District Court decisions should be reversed because "the FCRA does not distinguish between factual and legal disputes." *Id*. at *9-10. For its part, Holiday argued that the District Court decisions should be affirmed because "the existence of a legal conclusion about the invalidity of the debt is a necessary condition precedent to an FCRA claim of this type." *Id*. at *10. The Eleventh Circuit affirmed the District Courts' decisions, but in doing so "decline[d] to impose a bright-line rule 'that only purely factual or transcription errors are actionable under the FCRA.'" Id. at *16 (*quoting Sessa v. Trans Union, LLC*, 74 F.4th 38, 43 (2d Cir. 2023)). Instead, the Court held that "'…in determining whether a claimed inaccuracy is potentially actionable under [§ 1681s-2], a court must determine, *inter alia*, whether the information in dispute is "objectively and readily verifiable."'" *Id*. at *16 (*quoting Mader v. Experian Info. Sols., Inc*., 56 F.4th 264, 271 (2d Cir. 2023)).

3

### B. Plaintiff's Claims Fail as a Matter of Law Because She Lacks Evidence Necessary to Show that the Information in Dispute was Objectively and Readily Verifiable.

In Holden, the Eleventh Circuit explained the burden that a plaintiff must meet when bringing an FCRA claim:

> To succeed on an FCRA claim, a plaintiff must establish (at least) two things. First, a plaintiff must identify inaccurate or incomplete information that the furnisher provided to the reporting agency. And second, to prove an investigation was unreasonable, a plaintiff must point out some facts the furnisher could have uncovered that establish that the reported information was, in fact, inaccurate or incomplete.

*Holden*, 2024 U.S. App. LEXIS 998 at *12 (internal quotations and citations omitted). These elements were not newly established[1] in *Holden*, but *Holden* clarified that the "inaccurate or incomplete information" identified by the plaintiff has to be "objectively and readily verifiable." *Id*. at *4, 16. Furthermore, whether the plaintiff's alleged inaccuracy is "objectively and readily verifiable" bears on whether the furnisher could have uncovered facts that establish that the information was inaccurate or incomplete. *Id*. at *15.

Importantly, because Plaintiff bears the burden on these elements, IC is entitled to summary judgment if it "point[s] out to the district court [] that there is

---

[1] IC previously argued that a "reasonable investigation" would not have revealed an inaccuracy, and it does not seek here to expand upon that argument except to show how the Eleventh Circuit's decision in *Holden* affects a plaintiff's burden of proof in bringing a claim under the FCRA.

4

an absence of evidence to support the [Plaintiff's] case." *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2554 (1986). Stated another way, IC doesn't have to prove a reasonable investigation *would not have* revealed an inaccuracy, Plaintiff must prove that a reasonable investigation *would have* revealed an inaccuracy. And because the Plaintiff must ultimately prove that the Defendant failed to conduct a "reasonable investigation" of her credit reporting dispute, to defeat the Defendant's Motion for Summary Judgment Plaintiff is required to provide *evidence* that would be sufficient to withstand a motion for directed verdict at trial on that element of her FCRA claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) ("summary judgment should be granted where the evidence is such that it 'would require a directed verdict for the moving party.'") (internal quotations omitted). Plaintiff has submitted no admissible evidence showing that the information she disputed was "objectively and readily identifiable" such that IC, had IC conducted a reasonable investigation, would have learned that it was inaccurately reporting her AT&T account as "owed, but disputed."

Plaintiff has not shown that ICS possessed information from which it could have objectively and readily identified that she was not obligated to AT&T. Instead, she presupposes that ICS could have learned this from AT&T. However, Plaintiff admitted that during her final call with AT&T, she was told her that she "owe[s] [the debt] and [has] to pay it." *See*, Doc. 47-1 at p. 7 (transcript 23:19-24:19). While

Plaintiff testified that AT&T representatives told her at other times that she didn't owe the debt, this is inadmissible hearsay that cannot be relied upon to defeat summary judgment. *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996) (a party cannot use inadmissible hearsay to defeat summary judgment when that hearsay will not be reducible to admissible form at trial). Plaintiff did depose an AT&T representative and she therefore cannot show that this hearsay can be presented as admissible evidence at trial.

While the alleged statements of AT&T proffered by Plaintiff are clearly inadmissible, at most they could show some "conflicting conclusions" as to whether AT&T maintained that Plaintiff owed the debt. But when asked at deposition whether it seemed as though AT&T, in fact, had a tough time deciding if she owed money to it, Plaintiff testified: "Well, seems **the final straw was that I did owe the debt**." *See*, Doc. 47-1 at p. 13 (transcript 49:17-18) (emphasis added). When examining whether the application of the default provision in the timeshare purchase agreements at issue in *Holden* was sufficiently straightforward, the Eleventh Circuit noted that "Florida state courts…have come to conflicting conclusions about whether the default provisions excused a consumer's obligation to keep paying." *Holden*, 2024 U.S. App. LEXIS 9986 at *15-16 (citations omitted). Just as the consumers in *Holden* could not use conflicting court decisions to show that their disputes were "objectively and readily verifiable," Plaintiff cannot demonstrate from

6

AT&T's allegedly conflicting conclusions that the question of her obligation was "objectively and readily verifiable" through an inquiry to AT&T. *Id.* at *14-16. This is especially true given that AT&T continued to collect on that obligation, as evidenced by its placement with IC, more than two years after the aforementioned "final straw" conversation between Plaintiff and AT&T. *See*, Doc. 47-2 at pp. 2 (¶¶ 6, 11, and 23); Doc. 47-1, at p. 13 (Transcript 49:17-18).

Nor can Plaintiff rely upon the conclusory and unsupported statements made in her Opposition Brief. In that Brief, Plaintiff asserted with no evidentiary support that: "There is no legal analysis, judicial review, or determination needed. The service was not provided, and that fact could have been found out with a factual inquiry." *See* Doc. 49 at p. 9. Plaintiff also argued, without evidence, that: "The fact in this case is that Defendant IC could have, and should have, discovered that the service was not provided and thus it was reporting inaccurate information as stated by the Plaintiff in her dispute." *Id*. at p. 12. Similarly, Plaintiff claimed that "Defendant IC never had any evidence to counter Plaintiff's claim. A reasonable investigation would have uncovered the service was never installed." *Id*. at p. 13. None of these statements is supported by admissible evidence showing that the disputed information was "objectively and readily identifiable."

The only other purported evidence cited by the Plaintiff in her Response brief was pulled from the deposition of IC's corporate representative. *See* Doc. 49 at Sec.

7

(II)(B)(2). But the only portion cited was not testimony by the witness, but instead a statement by Plaintiff's counsel. In her Response, the Plaintiff specifically cited Doc. 47-4 at page 113:2-13, which consists of the following statement from her attorney:

> I plugged in my client's address on the AT&T website yesterday asking what services were available. There's her address [ ] and it just says AT&T internet is not available at your address. Does I.C. System have any reason to dispute that this is correct, that this AT&T internet is not available at her home as of at least yesterday?

*See* Doc. 47-4 at p. 29 (Transcript 113:2-13).

There are several distinct defects in the Plaintiff's reliance on her attorney's statement as evidence, the most glaring being that "statements of counsel are not evidence." *United States v. Jaberi*, 97 F.4th 1310, 1328 (11th Cir. 2024). Plus, the alleged website not only lacked authentication, but by counsel's own admission, he conducted the search November 19, 2023 (the day before the deposition), which was ***more than five years*** after the time the Plaintiff contracted with AT&T for service. The Plaintiff's failure to present any actual evidence of inaccuracy that was "objectively and readily identifiable" dooms her FCRA claims.

Plaintiff is clearly locked in a dispute with AT&T with respect to whether she owes the subject debt. The existence of that dispute leaves her unable to produce evidence showing that any alleged inaccuracy in information furnished by IC was "objectively and readily identifiable" by IC, either on its own or through an inquiry to AT&T. It is also worth noting that *Holden*, unlike this case, involved FCRA

8

claims against the *creditor* not a *debt collector*. And as recently recognized by Judge Huffaker in *Walker v I.C. System*, "the creditor, was in the best position to determine whether the account was [owed] and [] ICS had no right to relieve Plaintiff of her obligation to AT&T." *Id.*, 2024 U.S. Dist. LEXIS 56129, at *16 (M.D. Ala. Mar. 28, 2024) (citations and brackets omitted).

    Finally, in *Holden*, the Eleventh Circuit recognized that while consumers may be "frustrat[ed]" by negative entries on their credit reports, they "are not without recourse." *Id.* at 16. Relying on Judge Rosenbaum's concurring opinion in its 2023 ruling in *Milgram v Chase Bank*, the Court held that consumers:

> …could sue a furnisher for a declaration that they no longer owed a debt. With that declaration in hand, a consumer would have a much strong cudgel with which to force a furnisher to stop reporting a debt to a reporting agency. Or a consumer could go directly to the reporting agency with the declaration and get the reporting agency to take it off his or her credit history.

*Holden*, 2024 U.S. App. LEXIS 9986 at *16 (*quoting Milgram v. Chase Bank USA*, N.A., 72 F.4th 1212, 1221-22 (11th Cir. 2023)) (internal citations and quotations omitted).

    Plaintiff could have filed a declaratory action against AT&T. Had she prevailed, the judgment from that declaratory action would evidence a dispute that was "objectively and readily verifiable." Or perhaps she could have used discovery in this case to develop admissible evidence, if any exists, showing that her dispute

9

was objectively and readily verifiable upon inquiry by IC to AT&T. But she didn't and, as a result, she lacks admissible evidence sufficient to create a jury question at trial. IC is therefore entitled to summary judgment on her FCRA claims.

Respectfully submitted by:

/s/ Dale T. Golden
**Martin Golden Lyons Watts & Morgan**
Dale T. Golden, Esquire
FBN: 0094080
410 South Ware Blvd.
Suite 806
Tampa, FL 33619
Phone: 813-251-3632
Email: dgolden@mgl.law

and

/s/ M. Brent Yarborough
M. Brent Yarborough
MAURICE WUTSCHER LLP
420 20th Street N., Suite 2200
Birmingham, Alabama 35203
Telephone: (205) 451-0389
Email: byarborough@mauricewutscher.com

*Attorneys for Defendant I.C. System, Inc.*

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing was filed on May 15, 2024, via CM/ECF, which will electronically notify all counsel of record.

/s/ M. Brent Yarborough
M. Brent Yarborough
